Robert E. Shapiro (application for *pro hac vice* admission to be filed)
Wendi E. Sloane (application for *pro hac vice* admission to be filed)
Owen H. Smith (OS 4180)
BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP
200 W. Madison Street, Suite 3900
Chicago, Illinois 60606
(312) 984-3100
(312) 984-3150 (facsimile)
rob.shapiro@bfkn.com
wendi.sloane@bfkn.com
owen.smith@bfkn.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LOUIS VUITTON MALLETIER, S.A., | ) | |
| | ) | |
| | ) | No. 14-cv-3419 (JMF) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MY OTHER BAG, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Louis Vuitton Malletier, S.A. ("**Louis Vuitton**"), by and through its attorneys, for its complaint alleging violations of the Lanham Act, the Copyright Act, and New York law against Defendant My Other Bag Inc. ("**My Other Bag**") alleges and states as follows:

## NATURE OF THE DISPUTE

1. These claims arise out of My Other Bag's knowing and intentional infringement and dilution of Louis Vuitton's world-famous Toile Monogram, Stylized Flower, Damier, and Monogram Multicolore trademarks, and its intentional infringement of copyright in the Louis Vuitton Multicolore designs.

2.      My Other Bag is manufacturing, marketing and selling products, namely, tote bags, that display renderings of Louis Vuitton products bearing close simulations and studied imitations of Louis Vuitton's Toile Monogram, Stylized Flower, Damier, and Multicolore designs.   My Other Bag is selling these products throughout the country, including, on information and belief, to consumers in this District.   These activities constitute federal trademark infringement, false designation of origin, and dilution under the Lanham Act; copyright infringement under the Copyright Act; and dilution under New York state law.

3.      My Other Bag's misuse of Louis Vuitton's intellectual property is intentional. My Other Bag is using Louis Vuitton's famous trademarks with the intent to create an association with Louis Vuitton in the minds of consumers.   For example, My Other Bag concedes that "designer handbags are 100% the inspiration behind its product line" and that My Other Bag put the images of designer handbags "on a product that other women can relate to and love as well."  As such, My Other Bag's infringement and dilution are willful.

4.      By this action, Louis Vuitton seeks to permanently enjoin and restrain My Other Bag from manufacturing, marketing, distributing and selling products that infringe and dilute Louis Vuitton's trademarks and infringe its copyrights.   Louis Vuitton also seeks monetary damages resulting from My Other Bag's infringement and dilution of Louis Vuitton's valuable intellectual property.   Because My Other Bag has knowingly appropriated Louis Vuitton's intellectual property for its own commercial benefit, and without regard for Louis Vuitton's rights, its infringement and dilution are willful.   Accordingly, Louis Vuitton also seeks, and is entitled to, an award of treble damages, costs, and attorneys' fees.

## PARTIES

5.     Plaintiff Louis Vuitton is a French *société anonyme* duly organized and existing under the laws of France with a principal place of business at 2 Rue du Pont Neuf, Paris, France. Louis Vuitton is engaged, *inter alia*, in the manufacture, importation, sale and distribution in interstate and foreign commerce, including within this judicial district, of prestigious luxury merchandise including, without limitation, handbags, tote bags, luggage, apparel, shoes, eyewear, jewelry, watches, and other fashion accessories.  Louis Vuitton maintains an office within this judicial district at 1 East 57th Street, New York, New York 10022.

6.     On information and belief, Defendant My Other Bag is a corporation organized and existing under the laws of the state of California, with its principal place of business located at 724 Manhattan Beach Boulevard, Apt. B, Manhattan Beach, California 90266.  On further information and belief, My Other Bag has been and is doing business in this District by, among other things, advertising, promoting and selling its products — including products bearing the infringing and diluting marks and designs that are the subject of this Complaint — to consumers in this District over the Internet, including through its publicly accessible, interactive website at www.myotherbag.com.

## JURISDICTION AND VENUE

7.     This action is based on Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114, Sections 43(a) and (c) of the Lanham Act, 15 U.S.C. § 1125(a) and (c), Section 501 of the Copyright Act, 17 U.S.C. § 501, and Section 360-*l* of the New York General Business Law.

8.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 with respect to the claims arising under federal law.  Jurisdiction is also proper pursuant to 28 U.S.C. § 1338 with respect to the claims arising under the Lanham Act and 28 U.S.C. § 501 with

respect to the claim arising under federal copyright laws.   The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for the claims arising out of the violation of Section 360-*l* of the New York General Business Law.

9.   This Court has personal jurisdiction over My Other Bag because its products that infringe and dilute Louis Vuitton's valuable intellectual property are sold over the Internet, and on information and belief, in this judicial district.   On information and belief, My Other Bag directs its business activities to New York, transacts business within New York and this judicial district, and is thus subject to personal jurisdiction in New York.   Personal jurisdiction over My Other Bag is therefore proper in this judicial district.

10.   Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the acts giving rise to the claims occurred in this jurisdiction.   Specifically, My Other Bag has marketed and, on information and belief, sold its infringing products to consumers in this District over the Internet, including through its publicly accessible, interactive website at www.myotherbag.com.

**FACTUAL BACKGROUND**

I.   **Louis Vuitton's Intellectual Property Rights.**

11.   Founded in Paris in 1854, Louis Vuitton is one of the premier luxury fashion houses in the world.   Originally known for its custom-made luggage and trunks, today Louis Vuitton is well known for its high quality handbags, luggage, apparel, eyewear, jewelry, watches and many other fashion and luxury goods.

12.   In order to protect and maintain the image of the brand, Louis Vuitton products are sold exclusively through company owned and operated boutiques, some of which are located within high-end retail stores such as Neiman Marcus and Saks Fifth Avenue, and through the Louis Vuitton website at www.louisvuitton.com.

4

13.     On occasion, Louis Vuitton also partners with celebrities, but only to enhance consumer recognition of its trademarks and the exclusivity and prestige of the Louis Vuitton brand.  Louis Vuitton meticulously selects the celebrities with which it chooses to associate its invaluable brand.   For example, global icons like Angelina Jolie, Sean Connery, Mikhail Gorbachev, and Bono have been at the forefront of Louis Vuitton's Core Values advertising campaign.

A.     **The Louis Vuitton Trademarks**.

14.     Louis Vuitton is the owner of numerous world-famous trademarks, including, *inter alia*, the "Toile Monogram" design — a repeating pattern featuring the interlocking, stylized letters "L" and "V" and three distinctive stylized flower designs shown below (the "**Toile Monogram Trademark**") — which Louis Vuitton first adopted and used in 1896.



15.     As a result of over a century of use in conjunction with a wide variety of high-quality products, including, but not limited to, luggage, handbags, shoulder bags, tote bags, briefcases, and other accessories, and Louis Vuitton's substantial investment in the marketing and advertising of products bearing this mark, the Toile Monogram Trademark has become uniquely and exclusively identified in the minds of consumers with Louis Vuitton.  Indeed, the Toile Monogram Trademark is widely regarded as one of the most iconic and memorable fashion logos ever created.

16.     The Toile Monogram Trademark is most commonly used with the stylized designs appearing in gold against a chestnut brown background (as shown above), but is also used without contrasting color (*e.g.*, when embossed on leather) and in a multicolored design (as further described below).

17.     Louis Vuitton owns a number of United States trademark registrations for the Toile Monogram Trademark for use in conjunction with a wide variety of goods, including, *inter alia*, handbags.   Attached as **Exhibit A** are copies of the registration certificates for U.S. Trademark Reg. Nos. 297,594; 1,770,131; 1,875,198; 2,399,161; and 4,192,541 issued by the U.S. Patent and Trademark Office.

18.     Louis Vuitton has separately registered its rights in each of the stylized flower design elements of the Toile Monogram Trademark shown below (the "**Stylized Flower Trademarks**").   Attached as **Exhibit B** are copies of the registration certificates for U.S. Trademark Reg. Nos. 2,177,828 and 3,021,231 (flower design); 2,773,107 and 3,051,235 (diamond with an inset flower design); and 2,181,753 and 3,023,930 (circle with an inset flower design) issued by the U.S. Patent and Trademark Office.



19.     All of the aforementioned registrations for the Toile Monogram Trademark and Stylized Flower Trademarks are in full force and effect and, with the exception of U.S. Trademark Reg. No. 4,192,541, have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.   These registrations constitute conclusive evidence of the validity of the Toile Monogram Trademark and Stylized Flower Trademarks, of Louis Vuitton's ownership of these marks, and of its exclusive right to use these marks in connection with the listed goods.

20.    Louis Vuitton is also the owner of its world-famous and federally-registered "Damier" design — consisting of a distinctive checkered pattern of light and dark colors, with unusual contrast of weft and warp shown below (the "**Damier Trademark**") — which was first adopted and used by Louis Vuitton in 1888.



21.    As a result of over a century of use in conjunction with a wide variety of high-quality products, including, but not limited to, luggage, handbags, shoulder bags, tote bags, briefcases, and other accessories, and Louis Vuitton's substantial investment in the marketing and advertising of products bearing this mark, the Damier Trademark has become uniquely and exclusively identified in the minds of consumers with Louis Vuitton.

22.    The Damier Trademark is most commonly used with contrasting light and dark brown colors (the "**Damier Ebene**") (as shown above), but is also used, among other ways, in a combination of off-white and blue (the "**Damier Azure**") and a combination of black and gray (the "**Damier Graphite**") as shown below.

          

23.    Louis Vuitton owns a number of United States trademark registrations for the Damier Trademark for use in conjunction with a wide variety of goods, including, *inter alia*, handbags.  Attached as **Exhibit C** are copies of the registration certificates for U.S. Trademark

Reg. Nos. 2,255,321; 2,421,618; 2,378,388; and 3,576,404 issued by the U.S. Patent and Trademark Office.

24.     All of the aforementioned registrations for the Damier Trademark are in full force and effect and, with the exception of U.S. Trademark Reg. No. 3,576,404, have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.  These registrations constitute conclusive evidence of the validity of the Damier Trademark, of Louis Vuitton's ownership of the mark, and of its exclusive right to use the marks in connection with the listed goods.

25.     In addition, Louis Vuitton owns common law rights in and for its highly distinctive and successful Monogram Multicolore designs, which consist of Louis Vuitton's Toile Monogram set in thirty-three difference colors and arranged on a white or black background (the "**Monogram Multicolore Trademarks**") as shown below.

 

26.     Louis Vuitton's Monogram Multicolore Trademarks are the product of collaboration between Marc Jacobs, Louis Vuitton's well-known former head designer, and the Japanese artist Takashi Murakami.  Louis Vuitton launched the Monogram Multicolore collection on October 7, 2002, at the Louis Vuitton Spring 2003 Fashion Show in Paris. Products bearing the Monogram Multicolore Trademarks were wildly popular and became an overnight success.  Products bearing the Monogram Multicolore Trademarks continue to be an important and distinctive part of the Louis Vuitton product line.

27.     As described above, the Toile Monogram Trademark, the Stylized Flower Trademarks, the Damier Trademark, and the Monogram Multicolore Trademarks shall hereinafter be referred to collectively as the "**Louis Vuitton Trademarks**."

28.     The Louis Vuitton Trademarks are strong and unique, inherently distinctive and protectable without proof of secondary meaning.

29.     Louis Vuitton has invested millions of dollars and decades of time and effort to create consumer recognition of the Louis Vuitton Trademarks, and to ensure that the public, not only in the United States but throughout the world, associates the Louis Vuitton Trademarks with high quality, luxury goods emanating exclusively from Louis Vuitton.

30.     As a result of the wide renown acquired by the Louis Vuitton Trademarks, Louis Vuitton's worldwide reputation for high quality and luxury goods, and the extensive sales of various products featuring the Louis Vuitton Trademarks, the Louis Vuitton Trademarks have acquired secondary meaning, fame and significance in the minds of the purchasing public.  The purchasing public immediately identifies the products offered under the Louis Vuitton Trademarks with a single source.  The Louis Vuitton Trademarks, and the goodwill associated therewith, are of inestimable value to Louis Vuitton.

31.     To reinforce the fame, recognition, and reputation that the Louis Vuitton Trademarks have attained for the Louis Vuitton brand, Louis Vuitton continues to spend millions of dollars every year advertising products bearing these marks.

**B.     The Louis Vuitton Copyrights.**

32.     Louis Vuitton also owns registered copyrights in the United States Copyright Office for certain of its designs and patterns, including, *inter alia*, its Monogram Multicolore designs.   Specifically, Louis Vuitton owns one registered copyright for the Monogram

Multicolore on a black background and another registered copyright for the Monogram Multicolore on a white background (collectively, the "**Louis Vuitton Multicolore Designs**"). Attached hereto as **Exhibit D** are copies of Copyright Reg. Nos. VA 1-250-121 (supplemented by VA 1-365-644) and VA 1-250-120 (supplemented by VA 1-365-645) for the Louis Vuitton Multicolore Designs, which are in full force and effect.

33.     The Louis Vuitton Multicolore Designs are wholly original with Louis Vuitton and, as fixed in various tangible media, including, without limitation, merchandise, are copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*

34.     Louis Vuitton has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to the Louis Vuitton Multicolore Designs.

35.     Products featuring the Louis Vuitton Multicolore Designs have been manufactured, sold, and distributed in conformity with the provisions of copyright laws.  Louis Vuitton has complied with its obligations under the copyright laws and Louis Vuitton has at all times been the sole proprietor or otherwise authorized to enforce all right, title, and interest in and to the copyrights in the Louis Vuitton Multicolore Designs.

**C.     Louis Vuitton Bags and Tote Bags.**

36.     Casual tote bags are one of the core parts of Louis Vuitton's business.  In recent years, Louis Vuitton has had overwhelming success with its NEVERFULL® and TOTALLY™ tote bags, and seasonal tote bags, including, most recently, a "Cabas" bag for the Summer 2014 season, are regularly included as part of Louis Vuitton's product offerings.  Photographs of examples of Louis Vuitton casual tote bags are attached hereto as **Exhibit E**.

37.     Notably, among the various casual tote bags that Louis Vuitton has produced over the years is the Cabas Monogram Eponge, a limited edition bag which Louis Vuitton introduced

in 2005 as part of its cruise collection.  The Cabas Monogram Eponge displays the Toile Monogram in red or blue and also includes, on one of its two large exterior surfaces, an artistic rendering of a Louis Vuitton handbag:





Exhibit E at 4.

## II.   My Other Bag's Infringing Use of the Louis Vuitton Trademarks and the Louis Vuitton Multicolore Designs.

38.     Upon information and belief, My Other Bag was founded by Tara Martin in December 2011.  Since its founding, My Other Bag has been and continues to be in the business of manufacturing, marketing and selling canvas tote bags of various sizes, each featuring renderings of widely recognized and famous designer handbags, including several Louis Vuitton handbags bearing slightly altered or virtually identical versions of the Louis Vuitton Trademarks and Louis Vuitton Multicolore Designs.

39.     My Other Bag has systematically targeted Louis Vuitton by developing numerous tote bag styles bearing designs that infringe and/or dilute the Louis Vuitton Trademarks and the

Louis Vuitton Multicolore Designs.  My Other Bag's unauthorized and damaging activities are designed to trade on Louis Vuitton's extensive goodwill for My Other Bag's financial gain.

40.    Specifically, My Other Bag has designed, manufactured, promoted, offered for sale, and sold, and is continuing to manufacture, promote, offer for sale, and sell its "London" line of tote bags, which bear designs that infringe and/or dilute the Louis Vuitton Trademarks and the Louis Vuitton Multicolore Designs, as shown below:

| My Other Bag Product | Louis Vuitton Product |
|---|---|
| <br>London – Carry All | <br>Louis Vuitton SHARLEEN™<br>Multicolore Monogram |
| <br>London – Tonal Brown | <br>Louis Vuitton NEVERFULL®<br>Damier Ebene |



| London - Nautical | Louis Vuitton NEVERFULL®<br>Damier Azure |

41.     Further, My Other Bag's "Zoey" line of tote bags also bear designs that infringe and/or dilute the Louis Vuitton Trademarks and the Louis Vuitton Multicolore Designs, as shown below:



| My Other Bag Product | Louis Vuitton Product |
|---|---|
| Zoey– Tonal Brown | Louis Vuitton SPEEDY®<br>Toile Monogram |
| Zoey – Multi | Louis Vuitton SPEEDY®<br>Multicolore Monogram |



| Zoey – Multi Black | Louis Vuitton SPEEDY® Multicolore Monogram |

42.     Finally, My Other Bag's "Beckham" style tote bag also bears a design that infringes and/or dilutes the Louis Vuitton Trademarks, as shown below:



| My Other Bag Product | Louis Vuitton Product |
|---|---|
| Beckham – Carry All | Louis Vuitton KEEPALL® Damier Graphite |

The London, Zoey, and Beckham styles shown above shall hereinafter be referred to as the "**Offending Products**."

43.     As shown above, in addition to adopting the Louis Vuitton Trademarks and Louis Vuitton Multicolore Designs for use on the Offending Products, My Other Bag has presented the infringing and diluting designs on renderings of bag types that are associated with Louis Vuitton.

For example, the London style shown above depicts Louis Vuitton's NEVERFULL® tote bag, while My Other Bag's Zoey style depicts Louis Vuitton's SPEEDY® handbag, and the Beckham style depicts Louis Vuitton's KEEPALL® bag.

44.     The similarities inherent in the foregoing comparisons of the Offending Products and the Louis Vuitton Trademarks and Louis Vuitton Multicolore Designs as they appear on genuine Louis Vuitton products clearly evince My Other Bag's deliberate intent to copy Louis Vuitton's intellectual property.   Moreover, My Other Bag has openly acknowledged that its infringing designs were "taken" from widely recognized and famous designer handbags, including Louis Vuitton's.

45.     For example, on My Other Bag's website, Ms. Martin describes her products as "a reflection of my passion for handbags," explaining:

> My Other Bag is an ***ode to handbags women love, bags that are the fabric of our culture and history***.  Every woman has her go to bag, her dream bag, her going out bag.  ***My Other Bag is a perfect complement to these bags we love!***  Carry it ***in addition to your designer handbag*** or alone as you tackle your day's "To Do List."  The grocery store, the gym, errands, hopping on a plane, packing for a weekend away.  It's the perfect other bag!

*See* www.myotherbag.com/pages/behind-the-bag (emphasis added).

46.     Similarly, in a recent marketing video posted to YouTube, Ms. Martin openly acknowledged that the designs appearing on My Other Bag's products were appropriated from third parties' designer handbags:

> Designer handbags is [sic] 100% the inspiration behind this [product] line and it has just . . . been such an honor for me to be able ***to take something*** that I love and  . . . am so inspired by and put it on a product that other women can relate to and love as well. . . .
>
> The original idea behind My Other Bag was to be a cute fashion reusable tote bag for grocery shopping.  But now what I've loved about watching the company grow is, you know, women have used it in all different arenas . . . . They are great carry-ons for the plane, it's a cute pool bag, a beach bag.  To me, it's been great to

see how many different women from all different age groups and all different walks of life are using their My Other Bag.

*See* Vault, *My Other Bag* (Feb. 3, 2014), http://www.youtube.com/watch?v=t9nvAcVZJIs (emphasis added).

47.     Moreover, My Other Bag's marketing strategy invokes and emphasizes the fashionable character of its products and its intent to create an association with Louis Vuitton. Through its website and various social media websites, including My Other Bag's self-curated Facebook, Pinterest, and Twitter web pages, My Other Bag associates itself with the vocabulary and imagery of high fashion, luxury, and celebrity trends.  My Other Bag also selects distribution channels associated with high fashion and luxury.  For example, My Other Bag has made its products available for sale through a members-only website called "Vault," which markets itself as "[a] place where the most sought after designers and brands have been hand-picked by the biggest names in fashion."  *See* http://www.shopvault.com/aboutus.

48.     Press statements and consumer comments indicate that the public at large views My Other Bag as a purveyor of fashion products.

49.     For example, an issue of Life & Style magazine included a feature on "Stars' Fabulous Lives" which, under the heading "Bag Beautiful," describes My Other Bag's product line:  "Love designer purses but still want to be [eco-chic]?  My Other Bag, a line adored by [celebrity actresses] Katie Holmes and Jessica Biel, offers 100 percent cotton totes printed with colorful, iconic bags by Chanel, Goyard and other lux labels.  And at $24.99, they're just a fraction of the cost."  www.myotherbag.com/pages/press.

50.     Likewise, a California fashion blogger, "CA Fashion Darling," in a December 2013 post titled "'My Other Bag' Is So Hot," explained:

Since living in L.A, I was always in search for the perfect way to look stylish even when I go groceries shopping [*sic*].  I just found out about "My Other Bag"

16

Eco friendly company not long ago on Instagram and I'm already obsessed with all the cute, fashionable, unique tote bags they have to offer.  I'm so happy that someone thought about making our life's [*sic*] easier and stylish at the same time. ***The amazing designs that looks [sic] like you're [sic] really expensive hand bags like Celine, Louis Vuitton to name a few, gives a special touch to your average tote bag***.

*See* http://www.cafashiondarling.com/bag-hot/ (emphasis added).

51.    Despite Louis Vuitton having previously notified My Other Bag of its objections to the Offending Products and demanded that My Other Bag cease marketing and distributing the Offending Products, My Other Bag has refused to do so.  In fact, after first receiving notice from Louis Vuitton in August 2013, My Other Bag not only continued to produce, market, and sell products that infringe the Louis Vuitton Trademarks and Louis Vuitton Multicolore Designs, it has introduced new infringing and diluting products.  Included among these new products are the "Zoey - Multi Black" and "Beckham - Carry All," which, upon information and belief, were not available for sale until after Louis Vuitton first contacted My Other Bag.

52.    My Other Bag's continued production, marketing and sale of Offending Products is intentional and constitutes a willful violation of Louis Vuitton's intellectual property rights.

53.    The goodwill that Louis Vuitton has built up in the Louis Vuitton Trademarks through decades of substantial investment and effort is put at risk as a result of My Other Bag's use and imitation of these trademarks.

54.    Specifically, My Other Bag's use and imitation of the Louis Vuitton Trademarks is likely to create confusion in the marketplace, as consumers are likely to believe that the Offending Products are authorized or endorsed by Louis Vuitton, or that My Other Bag's products are somehow associated, affiliated with, or sponsored by Louis Vuitton or Louis Vuitton-brand products.  Moreover, Louis Vuitton lacks any control over the quality of My Other Bag's products bearing the Louis Vuitton Trademarks.

55.     My Other Bag's use and imitation of the Louis Vuitton Trademarks is likely to blur the distinctiveness of those trademarks.  The Offending Products present substantially similar imitations of the Louis Vuitton Trademarks, and are therefore likely to harm the ability of those trademarks to serve as an identifier of source for Louis Vuitton products.  If My Other Bag's conduct is not enjoined, it will continue to injure the value of the Louis Vuitton Trademarks and interfere with the ability of those trademarks to indicate goods emanating from a single source.

56.     My Other Bag's use and imitation of the Louis Vuitton Trademarks is also likely to tarnish those trademarks by associating Louis Vuitton with the lower quality, less reputable, and less luxurious Offending Products.

57.     My Other Bag's unauthorized acts as described herein — including without limitation the unauthorized use of Louis Vuitton's trademarks and copyrights — have caused and will continue to cause irreparable damage to Louis Vuitton's business and goodwill unless permanently restrained by this Court.  Further, My Other Bag's conduct is intentional, willful, and undertaken in bad faith, as evidenced by, among other things, My Other Bag's introduction and sale of new and previously unavailable Offending Products after being put on notice of Louis Vuitton's objections.  My Other Bag has undertaken the marketing, distribution, and sale of the Offending Products with the intent to reap the benefit of the goodwill, fame, and notoriety of Louis Vuitton's brand.  The harm to Louis Vuitton's goodwill, prestige, and reputation is both substantial and irreparable.  As a result, Louis Vuitton has no adequate remedy at law.

**COUNT I**
**Trademark Infringement (15 U.S.C. § 1114(1))**
**(The Toile Monogram, Stylized Flower, and Damier Trademarks)**

58.     Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 57, above.

59.     Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits any person from using in commerce, without the consent of the registrant, a trademark or any reproduction, counterfeit, copy or colorable imitation thereof in connection with the marketing, advertising, distribution, or sale of goods or services which is likely to result in confusion, mistake, or deception.

60.     Without the authorization of Louis Vuitton, My Other Bag has used and continues to use or causes to be used marks that are confusingly similar to the Toile Monogram Trademark, the Stylized Flower Trademarks, and the Damier Trademark to market and sell the Offending Products in commerce.

61.     My Other Bag's conduct is causing and will continue to cause a likelihood of confusion, mistake, and deception in the mind of the public, leading the public to believe that My Other Bag's products emanate or originate from Louis Vuitton, that My Other Bag is Louis Vuitton, or that Louis Vuitton has approved, sponsored or otherwise associated itself with My Other Bag or its infringing products.

62.     Through the unauthorized use of copies of the Toile Monogram Trademark, the Stylized Flower Trademarks, and the Damier Trademark, My Other Bag is unfairly benefiting from Louis Vuitton's advertising and promotion of those marks.  This has resulted in substantial and irreparable injury to the public, Louis Vuitton, its trademarks, its business reputation and goodwill.

63.     My Other Bag's conduct constitutes infringement of the registered Toile Monogram, Stylized Flower, and Damier Trademarks in violation of Louis Vuitton's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

64.     My Other Bag's use of marks confusingly similar to the Toile Monogram Trademark, the Stylized Flower Trademarks, and the Damier Trademark has damaged Louis Vuitton's goodwill in its trademarks, prestige, and reputation of its premium quality fashion products and, unless permanently enjoined, will continue to damage Louis Vuitton's goodwill, prestige, and reputation.  The harm to Louis Vuitton's goodwill, prestige, and reputation is both substantial and irreparable.  As a result, Louis Vuitton has no adequate remedy at law.

65.     In manufacturing, marketing, offering for sale, distributing and/or selling products under marks confusingly similar to the Toile Monogram, Stylized Flower, and Damier Trademarks, My Other Bag has acted willfully, in bad faith, and in reckless disregard of Louis Vuitton's rights.  Specifically, My Other Bag knew of the existence of the Toile Monogram, Stylized Flower, and Damier Trademarks, and intended the designs on each of the Offending Products to closely resemble one or more of those trademarks.

66.     To the extent My Other Bag has derived a profit from the sale of the Offending Products, it has been unjustly enriched at Louis Vuitton's expense.  Louis Vuitton is therefore entitled to an accounting and disgorgement of all profits gained by My Other Bag resulting from the sales of the Offending Products.

**COUNT II**
**False Designation of Origin/Unfair Competition (15 U.S.C. § 1125(a)(1)(A))**
**(The Louis Vuitton Trademarks)**

67.     Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 57, above.

68.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits, *inter alia*, the use by a person of a false or misleading designation of origin or representation in connection with the offering for sale and sale of goods which is likely to cause confusion, mistake or deception as to the affiliation, connection, or association of such person with another person, or

which is likely to cause confusion, mistake, or deception as to the origin, source, sponsorship or approval of such goods.

69.     By making unauthorized use in interstate commerce of the Louis Vuitton Trademarks, My Other Bag has used in commerce a false designation of origin that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of My Other Bag with Louis Vuitton, or as to the origin, sponsorship, or approval by Louis Vuitton of My Other Bag's goods, services, or commercial activities.  Consumers are likely to be misled into believing that My Other Bag is somehow associated with Louis Vuitton and that My Other Bag and the Offending Products are sponsored by, licensed by, or otherwise approved by Louis Vuitton.

70.     My Other Bag was on actual and constructive notice of Louis Vuitton's exclusive rights in the Louis Vuitton Trademarks.  My Other Bag's use of imitations of the Louis Vuitton Trademarks is willful and in bad faith, was done with full knowledge of the goodwill and reputation associated with those trademarks, and was done with full knowledge that My Other Bag has no right, license, or authority to use the Louis Vuitton Trademarks or any other trademarks confusingly similar thereto.

71.     My Other Bag's actions are intended to reap the benefit of the goodwill that Louis Vuitton has created in the Louis Vuitton Trademarks and constitute false designation of origin and unfair competition under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

72.     My Other Bag's conduct has caused and is causing immediate and irreparable injury to Louis Vuitton and will continue to both damage Louis Vuitton and to deceive the public unless enjoined by this Court.  Louis Vuitton has no adequate remedy at law.

## COUNT III
## Trademark Dilution (15 U.S.C. § 1125(c))
## (The Louis Vuitton Trademarks)

73.     Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 57, above.

74.     The Louis Vuitton Trademarks are famous and well known throughout the United States, within the meaning of 15 U.S.C. § 1125(c).   As a result of use over many decades, extensive advertising and promotion, and widespread sales of products bearing the Louis Vuitton Trademarks, such marks have become uniquely and exclusively associated in the United States with Louis Vuitton and its products.

75.     As a result of its marketing and sale of the Offending Products, My Other Bag is and/or has been engaged in the use of marks that are studied imitations of the Louis Vuitton Trademarks in commerce.   On information and belief, My Other Bag intended to create an association with the famous Louis Vuitton Trademarks.   On information and belief, consumers actually associate My Other Bag's marks with Louis Vuitton and the Louis Vuitton Trademarks.

76.     My Other Bag's activities have caused a likelihood of dilution of the Louis Vuitton Trademarks.   Moreover, My Other Bag's activities have caused, and unless enjoined will continue to cause, a likelihood of disparagement, damage and lessening of the distinctiveness of the Louis Vuitton Trademarks by both blurring and tarnishing each of those trademarks.

77.     My Other Bag's unauthorized imitations of the Louis Vuitton Trademarks featured on the Offending Products are likely to dilute the distinctive quality of each of Louis Vuitton's famous trademarks by lessening their capacity to identify and distinguish Louis Vuitton exclusively as the source of goods bearing those trademarks, in violation of 15 U.S.C. § 1125(c).

78.     My Other Bag's unauthorized use of imitations of the Louis Vuitton Trademarks featured on the Offending Products is also likely to dilute each of Louis Vuitton's famous trademarks by tarnishing their inestimable value through impermissible association with products of inferior quality and reputation, which would reflect negatively on Louis Vuitton in violation of 15 U.S.C. § 1125(c).

79.     My Other Bag's actions were and continue to be willful and intentional, or with reckless disregard for, or willful blindness to, Louis Vuitton's rights, and were and are for the express purpose of trading on Louis Vuitton's reputation and diluting the Louis Vuitton Trademarks.

80.     My Other Bag's conduct, unless permanently enjoined, will cause irreparable harm to Louis Vuitton and to its goodwill and reputation.

**COUNT IV**
**Copyright Infringement (17 U.S.C. § 501)**
**(The Louis Vuitton Multicolore Designs)**

81.      Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 57, above.

82.     The copyright registrations for the Louis Vuitton Multicolore Designs are valid, subsisting, and in full force and effect.

83.     Louis Vuitton is entitled the exclusive use of the Louis Vuitton Multicolore Designs in commerce.

84.     Without the authorization of Louis Vuitton, My Other Bag has used and continues to use or causes to be used designs that have been copied from and are substantially similar to the Louis Vuitton Multicolore Designs and has sold Offending Products bearing those designs in commerce.

85.    My Other Bag's infringement of Louis Vuitton's exclusive rights in the Louis Vuitton Multicolore Designs has caused and is continuing to cause Louis Vuitton damage, and My Other Bag has profited, and will continue to profit, from said infringement.  My Other Bag's infringing conduct has been knowing and willful.

86.    My Other Bag's conduct has caused Louis Vuitton irreparable harm and will continue to do so unless enjoined by this Court.  Louis Vuitton has no adequate remedy at law.

**COUNT V**
**Trademark Dilution Under New York Law (N.Y. Gen. Bus. Law § 360-*l*)**
**(The Louis Vuitton Trademarks)**

87.    Louis Vuitton repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 57, above.

88.    The Louis Vuitton Trademarks are famous and well known throughout New York, within the meaning of New York General Business Law § 360-*l*.  As a result of use over many decades, extensive advertising and promotion, and widespread sales of products bearing the Louis Vuitton Trademarks, such marks have become uniquely and exclusively associated in New York and elsewhere with Louis Vuitton and its products.

89.    My Other Bag, as a result of the marketing and sale of the Offending Products, is and/or has been engaged in the use of marks that are confusingly similar to the Louis Vuitton Trademarks in commerce.  My Other Bag's unauthorized use of marks confusingly similar to the Louis Vuitton Trademarks commenced after the Toile Monogram, Stylized Flower, and Damier Trademarks were federally registered, and after all of the Louis Vuitton Trademarks had become famous and distinctive in New York.

90.    My Other Bag's activities are likely to cause dilution.  Moreover, My Other Bag's activities have caused, and unless enjoined will continue to cause, disparagement, damage, and

lessening of the distinctiveness of the Louis Vuitton Trademarks by blurring and tarnishing the marks.  Such conduct violates New York General Business Law § 360-*l*.

91.     In using the Louis Vuitton Trademarks, My Other Bag acted in bad faith and with the intent to copy those trademarks.  My Other Bag knew of the existence of the Louis Vuitton Trademarks and intended the designs on each of the Offending Products to closely resemble one or more of those trademarks.  My Other Bag's actions were and continue to be deliberate and willful, and were and are for the express purpose of trading on Louis Vuitton's reputation and diluting the Louis Vuitton Trademarks.

92.     My Other Bag's conduct, unless permanently enjoined, will cause immediate and irreparable harm to Louis Vuitton and to its goodwill and reputation.  Louis Vuitton has no adequate remedy at law.

**WHEREFORE**, Louis Vuitton prays:

A.     For judgment that Defendant My Other Bag, Inc.:

    (i)     infringed the Toile Monogram Trademark, the Stylized Flower Trademarks, and the Damier Trademark in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a);

    (ii)     violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

    (iii)     diluted the Louis Vuitton Trademarks in violation Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c);

    (iv)     infringed the Louis Vuitton Multicolore Designs in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501; and

    (iv)     diluted the Louis Vuitton Trademarks in violation of Section 360-*l* of the New York General Business Law;

B.     That a preliminary and permanent injunction be issued enjoining and restraining My Other Bag, and its officers, agents, servants, employees and attorneys and all those in active concert or participation with them, from:

(i)     Using the Louis Vuitton Trademarks or any other reproduction, counterfeit, copy or colorable imitation of the Louis Vuitton Trademarks or the Louis Vuitton Multicolore Designs on or in connection with any goods or services;

(ii)    Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Louis Vuitton's business reputation or dilute the distinctive quality of the Louis Vuitton Trademarks;

(iii)   Using any false designation or representation of origin in connection with the offering for sale or sale of goods or false description or representation including words or other symbols tending falsely to describe or represent My Other Bag as Louis Vuitton or associated with or connected to Louis Vuitton, or My Other Bag's goods or their packaging as being those of Louis Vuitton, or sponsored by or as being associated with Louis Vuitton, and from offering such goods into commerce;

(iv)    Using any simulation, reproduction, counterfeit, copy or colorable imitation of the Louis Vuitton Trademarks or the Louis Vuitton Multicolore Designs in connection with the promotion, advertisement, display, sale, offer for sale, manufacture, production, importation, circulation or distribution of any products or their packaging;

(v)     Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products imported, manufactured, distributed, advertised, promoted, offered for sale or sold by My Other Bag are in any manner associated or connected with Louis Vuitton, or that My Other Bag is Louis Vuitton or is associated with or connected to Louis Vuitton;

(vi)    Destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importation, manufacture, production, distribution, circulation, sale, marketing, offer for sale, advertising, promotion, rental or display of all unauthorized products which infringe the Louis Vuitton Trademarks or the Louis Vuitton Multicolore Designs; and

(vii)   Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (vi).

C.     For the entry of an order directing My Other Bag to deliver up for destruction to Louis Vuitton all products, advertisements, promotional materials, and packaging in its possession or under its control bearing any of the Louis Vuitton Trademarks or the Louis Vuitton Multicolore Designs, or any simulation, reproduction, counterfeit, copy or colorable imitations thereof, or any false designation of origin, and all screens, plates, molds, matrices and other means of production of same pursuant to 15 U.S.C. § 1118.

D.     For the entry of an order directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that My Other Bag, or any products or associated packaging manufactured, imported, distributed, advertised, promoted, offered for sale, sold or otherwise handled by My Other Bag, are authorized by Louis Vuitton or related in any way to Louis Vuitton's products or to Louis Vuitton.

E.     For an award to Louis Vuitton of:

   (i)     the damages suffered by Louis Vuitton and My Other Bag's profits, under Section 35 of the Lanham Act 15 U.S.C. § 1117, arising out of My Other Bag's infringement of the registered Toile Monogram Trademark, the Stylized Flower Trademarks, and the Damier Trademark and violations of Section 43(a) of the Lanham Action;

   (ii)    the damages suffered by Louis Vuitton and My Other Bag's profits, under Sections 43(c)(5) and 35 of the Lanham Act, 15 U.S.C. § 1125(c)(5) and § 1117, arising out of My Other Bag's willful dilution of the Louis Vuitton Trademarks;

   (iii)   the damages suffered by Louis Vuitton and My Other Bag's profits arising out of My Other Bag's violation of Section 501 of the Copyright Act, or alternatively, statutory damages, under 17 U.S.C. § 504(c);

   (iv)    the damages suffered by Louis Vuitton and My Other Bag's profits, under § 360-*l* of the New York General Business Law;

(v)    a trebling of Louis Vuitton's damages under Section 35 of the Lanham Act, 15 U.S.C. § 1115, for My Other Bag's willful and intentional (a) infringement of the registered Toile Monogram Trademark, the Stylized Flower Trademarks, and the Damier Trademark, (b) violations of Section 43(a) of the Lanham Action, and (c) willful and intentional dilution of the Louis Vuitton Trademarks; and

(vi)   its costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117; Section 504 of the Copyright Act, 17 U.S.C. § 505, and/or N.Y. Gen. Bus. Law § 360-*m*.

F.     For such other and further relief as the Court shall deem appropriate.

Dated:  May 9, 2014                         Respectfully Submitted,


By: _____
Robert E. Shapiro (application for *pro hac vice*
admission to be filed)
Wendi E. Sloane (application for *pro hac vice*
admission to be filed)
Owen H. Smith (OS 4180)
BARACK FERRAZZANO KIRSCHBAUM
    & NAGELBERG LLP
200 West Madison, Suite 3900
Chicago, Illinois 60606
Tel. (312) 984-3100
Fax. (312) 984-3150
rob.shapiro@bfkn.com
wendi.sloane@bfkn.com
owen.smith@bfkn.com