KOPPEL PATRICK HEYBL & PHILPOTT
Brian J. Philpott (CA Bar No. 241,450; admitted *pro hac vice*)
Corey A. Donaldson (CA Bar No. 280,383; admitted *pro hac vice*)
2815 Townsgate Road, Suite 215
Westlake Village, California  91361
Telephone: (805) 373-0060
bphilpott@koppelip.com
cdonaldson@koppelip.com

MILLER KORZENIK SOMMERS RAYMAN LLP
David S. Korzenik
Terence P. Keegan
488 Madison Avenue, Suite 1120
New York, New York 10022
Telephone: (212) 752-9200
dkorzenik@mkslex.com
tkeegan@mkslex.com

PAUL ALAN LEVY
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, D.C. 20009
Telephone: (202) 588-7725
plevy@citizen.org

Attorneys for Defendant My Other Bag, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOUIS VUITTON MALLETIER, S.A. | CASE NO. 1:14-cv-03419(JMF) |
| Plaintiff | ECF CASE |
| vs. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR AWARD OF ATTORNEY FEES AND EXPENSES** |
| MY OTHER BAG, INC. | |
| Defendant. | |

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF THE CASE…...................................................................................5

ARGUMENT ................................................................................................................6

I.      IN THIS EXCEPTIONAL CASE, FEES SHOULD BE AWARDED

      UNDER THE LANHAM ACT ...........................................................................6

        A.      *The Supreme Court's* Octane Fitness *Rule Governs Lanham Act Fee Awards* .......6

        B.      *The Court Should Find This Case "Exceptional" Under the Lanham Act* ...........11

             1.      Louis Vuitton's Positions Were Legally Untenable ..................................11

             2.      Louis Vuitton's Claims Were Factually Untenable ..................................14

             3.      Louis Vuitton Litigated This Case in an Unreasonable Manner................15

             4.      Fees Should Be Awarded To Advance Considerations Of

                  Compensation And Deterrence ................................................................17

II.     MOB SHOULD BE AWARDED FEES FOR DEFENDING

      THE COPYRIGHT CLAIM ...........................................................................21

III.    FEES AND EXPENSES SHOULD BE AWARDED

      IN THE AMOUNT OF $802,939.05 ...............................................................25

CONCLUSION ...........................................................................................................30

# TABLE OF AUTHORITIES

## CASES

*Ale House Mgmt. v. Raleigh Ale House,*
205 F.3d 137 (4th Cir. 2000) .........................................................................18

*Alliance for Water Efficiency v. Fryer,*
No. 14-CV-115, 2017 U.S. Dist. WL 201358 (N.D. Ill. Jan. 18, 2017) ...........................23

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Albany,*
522 F.3d 182 (2d Cir. 2007)..........................................................................26

*Baker v. DeShong,*
821 F.3d 620, 624 (5th Cir. 2016) ....................................................................8

*Beastie Boys v. Monster Energy Co.,*
112 F. Supp. 3d 31, (S.D.N.Y. 2015)...............................................................8, 11

*BMW of N. Am., LLC v. Cuhadar,*
No. 6:14-CV-40, 2014 WL 5420133 (M.D. Fla. July 10, 2014) .......................................8

*Briarpatch Limited L.P. v. Geisler Roiberdeau,*
2009 U.S. Dist. WL 4276966 (S.D.N.Y. Nov. 30, 2009) ............................................23

*Cadle Co., II, Inc. v. Chasteen,*
991 F.2d 805 (10th Cir. 1993) .......................................................................26

*Campbell v. Acuff-Rose Music,*
510 U.S. 569 (1994)................................................................................2, 23

*Cross Commerce Media v. Collective,*
No. 13-CV-2754, 2014 WL 7323419 (S.D.N.Y. Dec. 16, 2014) .......................................8

*Central States Pension Fund v. C. Cartage Co.,*
76 F.3d 114, (7th Cir. 1996) ........................................................................26

*Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.,*
782 F.2d 329 (2d Cir. 1986).........................................................................11

*Donovan v. CSEA Local Union 1000,*
784 F.2d 98 (2d Cir. 1986)..........................................................................26

*Door Systems v. Pro-Line Door Systems,*
126 F.3d 1028 (7th Cir. 1997) .......................................................................18

*Dunkin' Donuts Inc. v. Mercantile Ventures, Inc.*,
   No. 91-CV-154, 1994 WL 720236 (W.D. Tex. Aug. 11, 1994)........................27

*Earth Flag Ltd. v. Alamo Flag Co.*,
   154 F. Supp. 2d 663 (S.D.N.Y. 2001) ............................................................23

*Essence Communications. v. Singh Industries*,
   703 F. Supp. 261 (S.D.N.Y. 1988) ................................................................15

*Emanuel v. Griffin*, No. 13-CV-1806,
   2015 WL 1379007 (S.D.N.Y. March 25, 2015) .............................................17

*Fair Wind Sailing v. Dempster*,
   764 F.3d 303 (3d Cir. 2014)......................................................................6, 7

*Faraci v. Hickey-Freeman*,
   607 F.2d 1025 (2d Cir. 1979).........................................................................25

*Feist Publ'ns, Inc. v. Rural Tel. Ser. Co.*,
   499 U.S. 340 (1991).........................................................................................23

*Florida Van Rentals v. Auto Mobility Sales*,
   No. 8:13-CV-1732, 2015 WL 4887550 (M.D. Fla. Aug. 17, 2015) ..................8

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994)..........................................................................7, 9, 22, 25

*Fresh Del Monte Produce Inc. v. Del Monte Foods*,
   No. 15-CV-6820, 2016 WL 8379326 (S.D.N.Y. Mar. 25, 2016) ......................8

*Georgia-Pac. Consumer Prods v. von Drehle Corp.*,
   781 F.3d (4th Cir. 2015) ...................................................................................8

*Harper & Row Publishers, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985)....................................................................................2, 23

*Harrell v. van der Plas*,
   No. 08-CV-8252, 2009 WL 3756327 (S.D.N.Y. Nov. 9, 2009).......................29

*High Tech Pet Prods., Inc. v. Shenzhen Jianfeng Elec. Pet Prod. Co.*,
   No. 6:14-CV-759, 2015 WL 926023 (M.D. Fla. March 4, 2015) .....................8

*Islamic Ctr. of Miss. v. City of Starkville, Miss.*,
   876 F.2d 465 (5th Cir. 1989) ..........................................................................26

*Interfaith Community Org. v. Honeywell Int'l*,
    726 F.3d 403 (3d Cir. 2013)..................................................................28

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*,
    820 F. Supp. 2d 569 (S.D.N.Y. 2011)....................................................22

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    136 S. Ct. 1979 (2016)................................................................... 21-25

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    No. 08-CV-7834, 2016 WL 7392210 (S.D.N.Y. Dec. 21, 2016) ............... 21-25

*Klinger v. Conan Doyle Estate*,
    761 F.3d 789 (7th Cir. 2014) .............................................................23

*Leibovitz v. Paramount Pictures Corp.*,
    No. 94-CV-9144 2000 WL 1010830, (S.D.N.Y. July 21, 2000)......................25

*Littel v. Twentieth Century-Fox Film Corp.*,
    No. 89-CV-8526, 1996 WL 18819, (S.D.N.Y. Jan. 18, 1996),
    aff'd sub nom. *DeStefano v. Twentieth Century Fox Film Corp.*, 100 F.3d 943 (2d Cir.
    1996) ............................................................................................25

*Lotus Development Corp. v. Borland Int'l.*,
    140 F.3d 70 (1st Cir. 1998)................................................................19

*Louis Vuitton Malletier v. Hyundai Motor Am.*,
    No. 10-CV-1611, 2012 WL 1022247 (S.D.N.Y Mar. 22, 2012)............................2, 12, 15

*Louis Vuitton Malletier v. Akanoc Solutions, Inc.*,
    591 F. Supp. 2d 1098 (N.D. Cal. 2008) ..............................................15

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*,
    No. 04-CV-2644, 2004 WL 1161167 (S.D.N.Y. May 24, 2004) ....................14

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
    561 F. Supp. 2d 368 (S.D.N.Y. 2008)........................................2, 3, 12, 13, 14, 28

*Louis Vuitton Malletier v. Haute Diggity Dog, LLC*,
    507 F.3d 252 (4th Cir. 2007) ......................................................3, 12, 13, 19

*Louis Vuitton v. Ly, Inc.*,
    676 F.3d 83 (2d Cir. 2012)..................................................................28

*Louis Vuitton Malletier v. LY USA*,
    No. 06-CV-13463, 2008 WL 5637161 (S.D.N.Y. Oct. 3, 2008)......................27

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
   156 F. Supp. 3d (S.D.N.Y. 2016) ..............................................................................1, 2, 4

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
   No. 16-241-cv, 2016 WL 7436489 (2d Cir. Dec. 22, 2016)..................................1, 2, 11

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*,
   211 F. Supp. 2d 567 (E.D. Pa. 2002) ..............................................................................15

*Louis Vuitton Malletier v. Warner Bros. Entertainment*,
   868 F. Supp. 2d 172, 184 (S.D.N.Y. 2012).................................................................4, 20

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
   209 F. Supp. 3d 612 (S.D.N.Y. 2016)..............................................................................15

*Mattel v. Azrak-Hamway Int'l*,
   724 F. 2d 357 (2d Cir. 1983)............................................................................................15

*Mattel, Inc. v. Walking Mountain Prods.*,
   No. 99-CV-8543, 2004 WL 1454100 (C.D. Cal. June 21, 2004) .....................................24

*Millea v. Metro-N. R. Co.*,
   658 F.3d 154, (2d Cir. 2011)............................................................................................26

*Moseley v. V Secret Catalogue, Inc.*,
   537 U.S. 418 (2003).........................................................................................................13

*Nightingale Home Healthcare v. Anodyne Therapy*,
   626 F.3d 958 (7th Cir. 2010) .....................................................................................10, 18

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*,
   771 F.2d 521 (D.C. Dir. 1985)....................................................................................9, 18

*Octane Fitness v. Icon Health & Fitness*, 134 S. Ct. 1749 (2014) ....................................... *passim*

*Penshurst Trading Inc. v. Zodax LP*,
   No. 14-CV-2710, 2015 WL 4716344 (S.D.N.Y. Aug. 7, 2015),
   *aff'd sub nom. Penshurst Trading Inc. v. Zodax L.P.*, 652 F. App'x 10 (2d Cir. 2016) ......8

*Prods v. von Drehle Corp.*,
   781 F.3d 710 (4th Cir. 2015) ............................................................................................8

*Regulatory Fundamentals Grp. v. Governance Risk Mgmt. Compliance*,
   No. 13-CV-2493, 2014 WL 4792082 (S.D.N.Y. Sept. 24, 2014).....................................27

*River Light V, L.P. v. Lin & J Int'l, Inc.*,
    No. 13-CV-3669, 2015 WL 3916271 (S.D.N.Y. June 25, 2015) ...................................8, 27

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989)..................................................................................................24

*Rus, Inc. v. Bay Indus.*,
    322 F. Supp. 2d 302, 307 (S.D.N.Y. 2003)...........................................................................16

*Salazar ex rel. Salazar v. D.C.*,
    809 F.3d 58, 65 (D.C. Cir. 2015) ..........................................................................................28

*Save Our Cumberland Mountains v. Hodel*,
    857 F.2d 1516 (D.C. Cir.1988) (en banc) .............................................................................26

*Sierra Club v. U.S. Army Corps of Eng'rs*,
    776 F.2d 383 (2d Cir. 1985)..................................................................................................11

*Slep-Tone Entm't Corp. v. Karaoke Kandy Store*,
    782 F.3d 313 (6th Cir. 2015) ..................................................................................................8

*SOFA Entm't v. Dodger Prods.*,
    709 F.3d 1273 (9th Cir. 2013) ..............................................................................................24

*Solid 21, Inc. v. Hublot of Am.*,
    109 F. Supp. 3d 1313 (C.D. Cal. 2015) ................................................................................15

*SunEarth v. Sun Earth Solar Power Co.*,
    839 F.3d 1179 (9th Cir. 2016) ................................................................................................8

*Toliver v. County of Sullivan*,
    957 F.2d 47 (2d Cir. 1992).....................................................................................................25

*Torah Soft Ltd. v. Drosnin*,
    No. 00-CV-5650, 2001 WL 1506013 (S.D.N.Y. Nov. 27, 2001)...........................................25

*Toys 'R' Us v. Abir*,
    No. 97-CV-8673, 1999 WL 61817 (S.D.N.Y. Feb. 10, 1999)...........................................26

*Trichilo v. Sec'y of Health & Human Servs.*,
    823 F.2d 702, 708 (2d Cir.), *supplemented*, 832 F.2d 743 (2d Cir. 1987).........................26

*Twin Peaks Prod. v. Publ'ns Intern.*,
    996 F.2d 1366 (2d Cir. 1993).................................................................................................6

*U.S. v. $28,000.00 in U.S. Currency*,
   802 F.3d 1100 (9th Cir. 2015) ........................................................................29

*U.S. v. Overseas Shipholding Group*,
   625 F.3d 1 (1st Cir. 2010) ...............................................................................29

*Varda, Inc. v. Ins. Co. of N. Am.*,
   45 F.3d 634 (2d Cir. 1995) ...............................................................................17

*VIDIVIXI, LLC v. Grattan*,
   No. 15-CV-7364, 2016 WL 4367972 (S.D.N.Y. Aug. 13, 2016) ........................8

*Wal-Mart Stores v. Samara Bros.*
   529 U.S. 205 (2000) ........................................................................................10

*Woodhaven Homes & Realty v. Hotz*,
   396 F.3d 822, (7th Cir. 2005) ..........................................................................10

## LEGISLATIVE MATERIALS AND RULES

Copyright Act
   17 U.S.C. § 505 ...............................................................................................29

Lanham Act
   15 U.S.C. § 1117(a) ......................................................................................6, 8
   15 U.S.C. § 1117(b) .........................................................................................10
   15 U.S.C. § 1117(c) .........................................................................................10
   15 U.S.C. § 1117(d) .........................................................................................10

Patent Code, *Patent Office–Filing Oppositions*, S. REP. NO. 93-1400, pt. 2 (1974),
   *as reprinted in* 1974 U.S.C.C.A.N. 7132 (1974) ..............................................9

## MISCELLANEOUS

Alison Frankel, *Louis Vuitton and Penn Offer Unintended Lesson in Trademark law*,
   REUTERS (Mar. 9, 2012), http://blogs.reuters.com/alison-frankel/2012/03/09/louis-
   vuitton-and-penn-offer-unintended-lesson-in-trademark-law/ .........................19

*Artist wins case against Louis Vuitton*, RNW MEDIA, https://www.rnw.org/archive/artist-wins-
   case-against-louis-vuitton (last visited Apr. 6, 2017) ......................................19

Irina Makarova, *Louis Vuitton's Discriminating Support for Contemporary Art*,
Art Asia Pacific, http://artasiapacific.com/Magazine/70/LouisVuittonSDiscriminatingSupportFor
ContemporaryArt ...........................................................................................................20

Kenneth L. Port, *Trademark Extortion: The End of Trademark Law*,
  65 Wash. & Lee L. Rev. 585 (2008)..............................................................10

Kimiya Shams, *As Louis Vuitton Knows All Too Well, Counterfeiting is a Costly Bargain*,
  FORBES (June 25, 2015) ..................................................................18

Leah Chan Grinvald, *Shaming Trademark Bullies*,
2011 Wis. L. Rev. 625, 678 (2011)..............................................................18

Letter from Michael Pantalony, Director of Civil Enforcement, North America, Louis Vuitton
Malletier, to Dean Michael A Fitts, Dean, University of Pennsylvania Law School (Feb. 29,
2012)(available at https://www.law.upenn.edu/fac/pwagner/DropBox/lv_letter.pdf) ............ 20-21

Letter from Robert F. Firestone, Associate General Counsel, University of Pennsylvania to
Michael Pantalony, Director of Civil Enforcement, North America, Louis Vuitton Malletier
(Mar. 2, 2012) (available at
https://www.law.upenn.edu/fac/pwagner/DropBox/penn_ogc_letter.pdf) ...................................21

*Mitsuhiro Okamoto: Batta Mon Returns*, DESIGNBOOM (Nov. 19, 2010),
http://www.designboom.com/art/mitsuhiro-okamoto-batta-mon-returns/....................................20

Raymund Flandez, *Tiny Firm Wins 'Chewy Vuiton' Suit, But Still Feels a Bite*,
  PITTSBURGH POST-GAZETTE (Nov. 28, 2006), http://www.post-
  gazette.com/business/businessnews/2006/11/28/Tiny-firm-wins-Chewy-Vuiton-suit-but-
  still-feels-a-bite/stories/200611280148............................................................19

*Simple Living & Darfurnica*, PLESNER, http://www.nadiaplesner.com/simple-living--darfurnica1
(last visited Apr. 6, 2017) ..................................................................19

Summary Judgment Memorandum of Law, *LVL XIII v. Louis Vuitton*, 15-CV-04869, DN 108
(S.D.N.Y. Jan. 22, 2016)…………………………………………………………………………23

William T. Gallagher, *Trademark and Copyright Enforcement in the Shadow of IP Law*,
  28 Santa Clara Comput. & High Tech. L.J. 453, 487 (2012) ...........................................10

## PRELIMINARY STATEMENT

Just two weeks after oral argument, the Second Circuit unanimously affirmed what this Court found "obvious"[1]: "Parody of LV's luxury image is the very point" of MOB's tote bags.[2] Moreover, the Second Circuit firmly agreed that "obvious differences in MOB's mimicking of LV's mark, the lack of market proximity between the products at issue, and minimal, unconvincing evidence of consumer confusion compel[led] a judgment in favor of MOB." Cir. Op. at *1.

What makes this case exceptional, and LV's position objectively unreasonable – warranting an award of fees and expenses under the Lanham and Copyright Acts – is the fact that LV did not file and pursue this lawsuit to win on the merits (manifestly lacking as they were). The reality is that LV sued MOB to economically browbeat a defendant whose message it didn't like and to signal to others that it will be costly even if they were to prevail:

- LV admitted in its papers and argument before the Second Circuit that consumers were not likely to be confused, yet it pursued a trial on trademark infringement anyway. *Infra* at 14.

- LV pursued its trademark infringement claim despite admitting in discovery that it had no evidence of any lost sales or decrease in sales as a result of MOB's products. *Infra* at 14.

- LV pursued its trademark dilution claim despite its representative admitting it had no evidence of any loss of the LV brand's iconic status as a result of MOB's products. *Infra* at 14.

- LV chose to offer no expert testimony and no survey of consumers despite the absence of evidence of trademark harm. Circuit Judge Gerard E. Lynch took note of this absence, pointing

---

[1] *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425 (S.D.N.Y. 2016) ("Dist. Op.").

[2] *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, No. 16-241-cv, --- F. App'x ----, 2016 WL 7436489, at *1 (2d Cir. Dec. 22, 2016) ("Cir. Op.") (affirming for "substantially the reasons stated by the district court in its thorough and well reasoned opinion"), *reh'g en banc denied* (2d Cir. Feb. 13, 2017), No. 16-241-cv, Docket Number ("Cir. Doc.") 143.

out that LV no doubt could have afforded to conduct a survey here. Keegan Decl. Ex. A, Transcript of Oral Argument ("Tr.") at 4:22-5:15, audio at 00:02:03-00:02:30.[3] *Infra* at 15.

- LV, in an attempt to compensate for its lack of evidence, "mischaracterized" deposition testimony, as this Court recognized and the Second Circuit specifically affirmed. *Infra* at 15; Dist. Op. at 438; Cir. Op. at *2 ("Our review of the transcript does not suggest otherwise.").

- LV, after pressing the decision in its case against Hyundai *passim* at the district level, did not cite *Hyundai* a single time in its appellate papers in an effort to preserve the case as a cudgel for future demand letters against others. LV knew that *Hyundai* decision was inapplicable under both Second Circuit law and the facts.[4] *Infra* at 12.

- LV, in its appellate brief, presented as a "rule," which this Court purportedly "ignored," the Supreme Court's observation in *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) that "[E]very commercial use of copyrighted material is presumptively … unfair." Cir. Doc. 66 at 64. In fact, the Supreme Court in *Campbell v. Acuff-Rose Music, Inc.* overturned this "rule" 23 years ago, stating that "Congress could not have intended such a rule." *Infra* at 23; 510 U.S. 569, 584 (1994).

LV has made such overreaching attempts at trademark and copyright enforcement its *modus operandi*. LV has achieved a rare position among the royalty of fashion; it is one of the world's leading brands. And as a cultural icon, it is not surprising that LV is often the subject of comment, not all of it favorable. Often such comment takes the form of parody or humorous

---

[3] MOB is separately submitting audio copies of the argument before the Second Circuit on disc. Additionally, the argument audio is available at http://www.ca2.uscourts.gov/decisions/ isysquery/64234f67-a517-4cf8-b863-8206838bd5c0/31-40/list/.

[4] *See* Dist. Op. at 435-36, *citing Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*, No. 10-CV-1611, 2012 WL 1022247 (S.D.N.Y. Mar. 22, 2012).

observation. But instead of responding to its critics with noblesse oblige, it treats parody as lèse majesté. Indeed, its history of legal threats and lawsuits has earned LV a reputation as a trademark bully. Judge Lynch recognized this: "You just want to bully them [MOB] into having to spend the money on a trial." Tr. at 76:15-23, audio at 01:00:17-01:00:33. The present case only enhances LV's well-earned bully reputation:

- In 2002, LV sued parody dog toy maker Haute Diggity Dog over its "Chewy Vuiton" dog chew toys. Haute Diggity Dog's summary judgment victory was upheld by the Fourth Circuit, *Louis Vuitton Malletier v. Haute Diggity Dog*, 507 F.3d 252, 270 (4th Cir. 2007), but the defendant had to spend hundreds of thousands of dollars only to wind up in the same position it was in before the lawsuit. According to the company's co-owner, it did not have a choice because it had to "fight back" or "go out of business." *Infra* at 12-13, 19.

- In 2004, LV sued Dooney & Bourke over bags that were allegedly similar to those of LV. Many years prior to the filing of this case, LV was told in no uncertain terms by a court in this district that "evidence demonstrat[ing] that 'consumers mentally associate the junior user's mark with a famous mark … is not sufficient to establish actionable dilution,'" and that de minimis evidence "fails to demonstrate that this 'association,' which Louis Vuitton disdains, amounts to consumer confusion." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 393, 387 (S.D.N.Y. 2008). *Infra* at 13-14.

- In 2008, LV sued Danish artist Nadia Plesner over a t-shirt with a Darfurian child holding an LV bag, and in 2011 again filed suit for her painting "Darfurnica" featuring the same image. Plesner fought for and won the right to display both works. *Infra* at 19.

- In 2010, LV sent a cease and desist letter to the Kobe Fashion Museum over sculptures called "BATTA Mon" (batta-mon means "knockoff"), which incorporated allegedly counterfeit LV

bags. The museum removed the sculptures to avoid a legal dispute. *Infra* at 19-20.

- In 2011, LV sued Warner Brothers over the appearance in *The Hangover: Part II* film of a third party's knock-off bag, claimed by one character to be a "Lewis Vuitton." Warner Brothers won on a motion to dismiss, with the court ruling that "in a case such as this one, no amount of discovery will tilt the scales in favor of the mark holder at the expense of the public's right to free expression." *Louis Vuitton Malletier v. Warner Bros. Entm't*, 868 F. Supp. 2d 172, 184 (S.D.N.Y. 2012). *Infra* at 20.

- In 2012, LV sent a cease and desist letter to the dean of the University of Pennsylvania Law School demanding removal of posters for a fashion law symposium – which included an "egregious" parody of the LV toile monogram, employing an interlocking "TM" in lieu of "LV," and a "©" symbol in lieu of LV's. After a lengthy response from the university, LV declined to file suit. *Infra* at 20-21.

- In 2014, despite it having been advised by MOB counsel months prior of the groundlessness of its claims against it—in a response to LV's initial cease and desist letter that presaged this Court's decision—LV sued MOB. Philpott Decl. ¶ 4, Ex. C.

This case has the hallmarks of unreasonable litigation tactics, where a big company sues a tiny one, disregards the governing law, disregards the lack of factual merits, and runs up the costs of defense. LV knew that MOB was a one-woman business that lacked the resources to resist a complex dilution, trademark infringement, and copyright infringement attack. Indeed, plaintiff's reading was not far off: MOB resisted only because her counsel viewed LV's tactics as unusually oppressive and did not insist on being promptly paid. The chilling impact of LV's litigation strategy, not just here but across the board, tells LV's critics, "don't even think about it" – because the cost of defending one's rights will be so prohibitive. And that strategy works, unless this Court

says it should not.

This Court should award attorney fees and expenses to MOB because 1) LV's case lacked objective legal merit, 2) LV's case lacked objective factual merit, 3) LV litigated this case in a vexatious and overreaching manner, and 4) LV's long line of unreasonably aggressive enforcement actions merits deterrence.

## STATEMENT OF THE CASE

This case involves canvas tote bags made by a small company that poked fun at fashion giant LV by placing the scrawled words "My Other Bag . . ." on one side of the tote, and parodic and cartoonish versions of famous LV designs on the other side, with the initials "MOB" replacing the intertwined initials "LV." As the Court explained, the totes and the company name represent

> a play on the classic "my other car . . ." novelty bumper stickers, which can be seen on inexpensive, beat up cars across the country informing passersby — with tongue firmly in cheek — that the driver's 'other car' is a Mercedes (or some other luxury car brand). [These] bumper stickers are, of course, a joke — a riff . . . on wealth, luxury brands, and the social expectations of who would be driving luxury and non-luxury cars. MOB's totes are just as obviously a joke, and one does not necessarily need to be familiar with the [bumper stickers] to get the joke or to get the fact that the totes were meant to be taken in jest.

Dist. Op. at 430.

But LV "cannot take a joke." *Id.* Instead of laughing, it sued MOB for trademark dilution, trademark infringement, and copyright infringement. The complaint sought injunctive relief including destruction of MOB's products, awards of compensatory, treble, and statutory damages, and attorney fees. For a company the size of MOB, just litigating this case, not to speak of the prospect of paying damages and attorney fees, could have meant destruction of the company. It could defend only because it found counsel who were willing to assume the defense of the litigation without demanding prompt payment of the level of legal fees that it takes to litigate an intellectual property case in federal court in New York, Korzenik Decl. ¶ 6, Philpott Decl. ¶ 7.

Following discovery and cross-motions for summary judgment, this Court held that none of LV's claims were tenable as a matter of law. But LV was not done with its bullying. LV appealed to the Second Circuit, where at argument the panel frankly accused LV of utilizing a bullying litigation strategy. Tr. at 76:9-23, audio at 01:00:12-01:00:33. The Second Circuit unanimously affirmed a mere 15 days after oral argument, signaling that LV had presented no significant legal issues or debatable objections. LV then sought *en banc* review, which was promptly denied. Cir. Doc. 144. LV urged this Court to defer ruling on attorney fees for a second time pending a promised petition for a writ of certiorari. Recognizing "the probability of the Supreme Court granting certiorari, let alone reversing the Second Circuit" to be low, the Court allowed MOB to proceed with this fee application. District Court Docket Number ("DN") 140.

## ARGUMENT

## I.  IN THIS EXCEPTIONAL CASE, FEES SHOULD BE AWARDED UNDER THE LANHAM ACT.

### A. The Supreme Court's *Octane Fitness* Rule Governs Lanham Act Fee Awards.

Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." MOB is the prevailing party and now seeks attorney fees on the ground that this case is exceptional.

Although the Second Circuit has been one of a small number of circuits that required evidence of "fraud or bad faith" before a Lanham Act case can be found "exceptional" and hence subject to an award of attorney fees, *Twin Peaks Prod. v. Publ'ns Intern.*, 996 F.2d 1366, 1383 (2d Cir. 1993), that bad faith requirement has been superseded by the Supreme Court's 2014 decision in *Octane Fitness v. Icon Health & Fitness*, 134 S. Ct. 1749 (2014). That case was presented to the Supreme Court as an example of the problem of so-called patent trolls, who obtain patents more for the purpose of exploiting the patents by threatening litigation than for use in industry.

Pet. for Writ of Certiorari, *Octane Fitness*, No. 12-1184, 2013 WL 1309080 (U.S.), at \*19, 24. The Court responded with a sharp rejection of the Federal Circuit's "bad faith" standard for attorney fee awards under the Patent Code. The Supreme Court recognized first that the selection of a standard turned on the proper meaning of the term "exceptional," which means no more than "out of the ordinary course," "unusual" or "special." *Octane Fitness*, 134 S. Ct. at 1756. Consequently, the Court held:

> an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.

*Id.* The Supreme Court also referenced the *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, n.19 (1994) copyright attorney fee factors, of "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence" as useful in district courts' "case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756 n. 6, 1756.

Recognizing that the Supreme Court's reasoning applies equally to defining the term "exceptional" in the Lanham Act, the Third, Fourth, Fifth, Sixth, and Ninth Circuits, and several district courts, have applied *Octane Fitness* to trademark fee motions. For example, the Third Circuit held that *Octane Fitness* implicitly overruled that Court's prior "bad faith" requirement for attorney fees in the Lanham Act, in that *Octane Fitness* "controls our interpretation of § 35(a) of the Lanham Act." *Fair Wind Sailing v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014). The court noted that the "exceptional case" language of both the Patent Code and Lanham Act are identical, that the legislative history of the Lanham Act's attorney fees provision referred to the Patent Code's fees provision, and that previous Third Circuit panels had looked to patent cases in

construing the attorney fees provision of the Lanham Act. *Id.* at 313-15. The Fifth Circuit, another court that had applied a bad faith requirement, also now accepts that *Octane Fitness* requires a lesser standard. *Baker v. DeShong*, 821 F.3d 620, 624 (5th Cir. 2016) ("In light of the Supreme Court's clear guidance under § 285 and—given the parallel purpose, structure, and language of § 1117(a) to § 285—we join our sister circuits in their reading of 'exceptional' under *Octane Fitness* and construe the same meaning here."). The Fourth, Sixth, and Ninth Circuits have likewise applied the *Octane Fitness* standard to the Lanham Act. *SunEarth v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016); *Slep-Tone Entm't Corp. v. Karaoke Kandy Store*, 782 F.3d 313, 317-18 (6th Cir. 2015); *Georgia-Pac. Consumer Prods v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir. 2015) (fees may be awarded if there is a "need in particular circumstances to advance considerations of compensation and deterrence") (quoting *Octane Fitness* at 1756 n. 6).

Moreover, several district courts in circuits previously adhering to a bad faith requirement have held that *Octane Fitness* requires a lesser standard, including courts in the Eleventh Circuit[5] and in this district.[6] For instance, District Judge Engelmayer applied the *Octane Fitness* standard to Lanham Act fees, *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 46 (S.D.N.Y. 2015), saying, "courts should consider whether a given case 'stands out from others' based on [the

---

[5] *BMW of N. Am., LLC v. Cuhadar*, No. 14-CV-40, 2014 WL 5420133 at *3 (M.D. Fla. July 10, 2014); *High Tech Pet Prods., Inc. v. Shenzhen Jianfeng Elec. Pet Prod. Co.*, No. 14-CV-759, 2015 WL 926023 at *1-2 (M.D. Fla. March 4, 2015); *Florida Van Rentals v. Auto Mobility Sales*, No. 13-CV-1732, 2015 WL 4887550 at *2 (M.D. Fla. Aug. 17, 2015).

[6] *VIDIVIXI, LLC v. Grattan*, No. 15-CV-7364, 2016 WL 4367972, at *3 (S.D.N.Y. Aug. 13, 2016); *Fresh Del Monte Produce Inc. v. Del Monte Foods*, No. 15-CV-6820, 2016 WL 8379326, at *1 (S.D.N.Y. Mar. 25, 2016); *Cross Commerce Media v. Collective*, No. 13-CV-2754, 2014 WL 7323419 at *3 (S.D.N.Y. Dec. 16, 2014), *vacated on other grounds*; *River Light V, L.P. v. Lin & J Int'l, Inc.*, No. 13-CV-3669, 2015 WL 3916271 at *10 (S.D.N.Y. June 25, 2015); *Penshurst Trading Inc. v. Zodax LP*, No. 14-CV-2710, 2015 WL 4716344 at *2 (S.D.N.Y. Aug. 7, 2015), *aff'd sub nom. Penshurst Trading Inc. v. Zodax L.P.*, 652 F. App'x 10 (2d Cir. 2016) (independent of standard, case was not exceptional).

*Fogerty*] factors, or based on a finding of willfulness or bad faith." *Id.*

This Court should apply the *Octane Fitness* standard here not just to avoid a conflict within the Southern District, but also because the reasoning is sound. In 1974, the Patent Code's "exceptional cases" phrase was imported into the Lanham Act, *Patent Office–Filing Oppositions*, S. REP. NO. 93-1400, pt. 2, at 7133 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 7132, 7135-7136 (1974). The Senate Committee recognized the need to bring the Lanham Act into line with "[t]he federal patent and copyright statutes [in] expressly provid[ing] for reasonable attorney fees," 1974 U.S.C.C.A.N. at 7135, and said that just as plaintiffs should be protected by having fee awards available as an encouragement to enforce trademark rights when needed to "prevent[] purchaser confusion," *id.* at 7136, allowing defendants to recover fees in exceptional cases "would provide protection against unfounded suits brought by trademark owners for harassment and the like." *Id.*

In *Octane Fitness*, the Supreme Court relied in part on Lanham Act authority in deciding the meaning of "exceptional cases" in the Patent Code, twice citing *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 771 F.2d 521 (D.C. Cir. 1985), a case where, in an opinion by then-Judge Ginsburg joined by then-Judge Scalia, the D.C. Circuit was "interpreting the term 'exceptional' in the Lanham Act's identical fee-shifting provision . . . to mean 'uncommon' or 'not run-of-the-mill.'" *Octane Fitness*, 134 S. Ct. at 1756, 1757. The mutual reliance on trademark authority in patent fee cases and vice versa supports the application of the Supreme Court's standard for fees for prevailing defendants in patent cases to govern fee awards in trademark cases.

Moreover, the need for a fee standard that prevents patent trolls from chilling innovation through meritless or abusive litigation tactics is matched by a need in the trademark arena for means to combat the significant problem of trademark bullying—the threatening or bringing of meritless trademark claims in the hope of quashing criticism or suppressing competition by new

9

entrants. Tellingly, a review of 7500 published decisions concluded that such litigation has become widespread, Kenneth L. Port, *Trademark Extortion: The End of Trademark Law*, 65 Wash. & Lee L. Rev. 585 (2008), while a study based on interviews with copyright and trademark lawyers suggested a need for greater deterrent to the bringing of weak cases because "aggressive and bullying enforcement tactics can work and are sometimes part of the IP owner's overall enforcement strategy. They are effective, in part, because many targets do not have the resources to defend a trademark or copyright claim on the legal merits in court." William T. Gallagher, *Trademark and Copyright Enforcement in the Shadow of IP Law*, 28 Santa Clara Comput. & High Tech. L.J. 453, 487 (2012). The Supreme Court has noted the need to craft legal rules that head off the danger of the "anticompetitive strike suit" in trademark litigation. *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 214 (2000). Applying the *Octane Fitness* standard in Lanham Act cases can be a good step in that direction. Indeed, the Seventh Circuit has recognized the special need for awards of attorney fees to encourage defendants in intellectual property cases to stand up for their own rights and thus, implicitly, for the public domain. *See Nightingale Home Healthcare v. Anodyne Therapy*, 626 F.3d 958, 963 (7th Cir. 2010) (expressing concern about misuse of litigation by large, profitable businesses against smaller, more vulnerable ones to drive the defendant out of business); *Woodhaven Homes & Realty v. Hotz*, 396 F.3d 822, 824 (7th Cir. 2005) ("[W]ithout the prospect of such [a fee] award, [a defendant] might be forced into a nuisance settlement or deterred all together from exercising his rights") (citation omitted). After all, plaintiffs have built-in statutory incentives to pursue claims that might lead to an award of damages, including treble damages or even statutory damages in some trademark cases, 15 U.S.C. § 1117(b), (c) & (d), but defendants cannot recover damages from which attorney fees can be paid.

Moreover, as was true of the Patent Code attorney fee provision considered in *Octane*

*Fitness*, limiting the application of the Lanham Act's "exceptional cases" provision to cases of bad faith would make the provision superfluous. In the trademark arena as in patent law, courts' inherent power to impose sanctions for abusive litigation misconduct, and the "bad faith" exception to the American Rule, already give the federal courts authority to award attorney fees to defendants who are victimized by litigation brought or maintained in bad faith. *Sierra Club v. U.S. Army Corps of Eng'rs,* 776 F.2d 383, 390 (2d Cir. 1985); *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 344 (2d Cir. 1986). It makes little sense to read a statute allowing attorney fees as granting the same power that a court inherently already has. This Court should follow its sister district court in *Beastie Boys* and apply the *Octane Fitness* standard to the Lanham Act.

**B. The Court Should Find This Case "Exceptional" Under The Lanham Act**.

LV's suit against MOB "stands out from other cases" both in its groundlessness and in the manner in which it was litigated. It was unreasonable 1) "considering . . . the governing law," 2) "considering … the facts of the case," and 3) in "the unreasonable manner in which the case was litigated"; and here also, 4) the Court's "equitable discretion should be exercised" in light of the need for compensation and deterrence. *Octane Fitness* at 1756, n. 6.

**1. Louis Vuitton's Positions Were Legally Untenable.**

On plaintiff's dilution claim, the Court granted summary judgment on two alternate grounds: a) fair use, and b) lack of dilution (because MOB's products reinforced LV's mark's stature as separate and distinctive marks, rather than blurring uniqueness). Dist. Op. at 438, 440. Moreover, there were multiple **additional** grounds which this Court did not reach, such as the requirement that defendant's use be "as a mark," *Id.* at n.2, the First Amendment's protections for communicative uses, and the statutory defense of non-commercial use. The Court also granted summary judgment against LV's trademark infringement claim, concluding that not a single one

11

of the *Polaroid* factors weighed in LV's favor. Indeed, one of the remarkable features of the summary judgment decision here is that **not a single one of the factors** that courts use to help assess dilution, **or** infringement, **or** copyright fair use favored the plaintiff: at best, there were a few neutral factors. *Id.* at 441-43. That makes this case quite unusual.

On appeal, the Second Circuit affirmed by summary order "for substantially the reasons stated by the district court in its thorough and well reasoned opinion." Cir. Op. at *1. In fact, the Second Circuit issued its unanimous order a mere 15 days after its Dec. 7, 2016 oral argument, further signaling that it did not find the appeal to present even a close case. *See* Cir. Docs. 131, 133. The legal groundlessness of the case alone makes it exceptional under the Lanham Act.

LV might have drawn some comfort in filing this case from a hope that its non-precedential win in *Louis Vuitton v. Hyundai Motor*, No. 10-CV-1611, 2012 WL 1022247 (S.D.N.Y Mar. 22, 2012), might make its dilution theory in this litigation at least **appear** colorable. But apart from the fact that *Hyundai* has itself been a heavily criticized decision, *see* Dist. Op. at 435-36 and n. 4, *Hyundai* at best aided plaintiff's response to MOB's fair use defense. Plaintiff's win in *Hyundai* was based on an admission that Hyundai **never meant to comment** on LV. Dist. Op. at 436. But when discovery was complete in this case, LV knew that it had no such evidence, and no doubt knew that this case was "easily distinguished on its facts." *Id*. LV **knew** that *Hyundai* was inapplicable. Indeed, instead of asking the Second Circuit to reject this Court's decision in light of *Hyundai*, LV did not even cite *Hyundai* on appeal. *See generally* Cir. Doc. 66. LV likely withdrew *Hyundai* to protect the ruling from appellate scrutiny which LV knows it could not withstand, and to continue to use it as a cudgel in future cease and desist letters.

Two cases far more pertinent than *Hyundai* are cases of which LV was undoubtedly aware—because it lost both. *Louis Vuitton Malletier v. Haute Diggity Dog,* 507 F.3d 252 (4th Cir.

2007); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368 (S.D.N.Y. 2008). In *Haute Diggity Dog*, defendant produced dog chew toys that called to mind various luxury brands, including toys "that are labeled 'Chewy Vuiton' and that mimic Louis Vuitton Malletier's LOUIS VUITTON handbags," such as by using patterns similar in some respects to LV's  toile monogram trademark and its multicolore design. 507 F.3d 252 at 256. Haute Diggity Dog won its motion for summary judgment and on appeal because LV badly misconstrued dilution law and because none of the relevant likelihood of confusion factors weighed in favor of LV—a result strikingly similar to this Court's summary judgment holding. *Id.* at 266-68.

LV was further instructed by the 2008 summary judgment in *Dooney & Bourke*, a case where LV's claims were again found to be without merit. LV premised its case on the assertion that the presence of an association between its famous marks and fashion accessory company Dooney & Bourke's products inherently resulted in dilution, a view squarely rejected by this Court and the Second Circuit. 561 F. Supp. 2d at 391-92; *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 119 (2d Cir. 2006). After arguing its flawed theory against Dooney & Bourke, LV was told in no uncertain terms that "evidence demonstrat[ing] that 'consumers mentally associate the junior user's mark with a famous mark . . . is not sufficient to establish actionable dilution'" (561 F. Supp. 2d at 380) (quoting *Moseley v. Secret Catalogue*, 537 U.S. 418, 433 (2003)), that "the junior user's mark (calling) to mind the senior user's famous mark … is not sufficient for a likelihood of confusion" (*id.* at 387); that "calling to mind may indicate that the mind is distinguishing rather than being confused" (*id.*); and that de minimis evidence "fails to demonstrate that this 'association,' which Louis Vuitton disdains, amounts to consumer confusion" (*id.*). LV was clearly put on notice by the decisions in *Haute Diggity Dog* and *Dooney & Bourke* that federal courts reject this plain misconstruction of the law. The courts have been

clear: association is not enough to prove dilution. That requirement was reiterated by the Second

Circuit panel, with Circuit Judge Reena Raggi noting to LV's counsel at argument, "[Y]ou seem

to think that association [between the marks at issue] is all you need, and I think there's a second

step, which is *blurring* of the mark, and I don't understand where you think you've got blurring of

the mark here." Tr. 31:4-9, audio at 00:22:02-00:22:16.

### 2. Louis Vuitton's Claims Were Factually Untenable.

Even more blatant than the lack of legal merit to LV's case was the complete lack of factual

merit. Neither this Court nor the Second Circuit (whether conducting review deferentially or *de*

*novo*) found that a single factor favored LV. Dist. Op. at 441-43; Cir. Op. at *1. Indeed, LV's

appellate brief went so far as to **admit** that consumers were not confused:

> The consumer often *knows* that the junior use is from a different source, but wants
> the fame the trademark conveys while buying the junior user's products. This is
> exactly what happened here.

Cir. Doc. 66 at 35 (emphasis in original). This appellate admission was not a one-off or a drafting

error. Well before LV forced MOB to brief the issue of confusion to the Second Circuit, its North

American Director of Intellectual Property, Civil Enforcement could not point to any loss of sales

attributable to MOB's products or, for that matter, to any facts demonstrating that LV's brand was

any less iconic as a result of MOB's products. *See* DN 60 at ¶ 7, Ex. J (deposition excerpt of John

Maltbie) (filed under seal). LV's case was factually untenable well before summary judgment

briefing. It was untenable upon filing.

Given the lack of actual facts supporting its positions, LV could have been expected to

muster at least the semblance of a case by utilizing expert testimony, as it has done in a number of

its non-counterfeit trademark suits.[7] LV knows well that a "failure to offer a survey showing the

---

[7] *See Dooney & Bourke, Inc.,* 525 F. Supp. 2d 558, 605 (S.D.N.Y. 2007); *Louis Vuitton Malletier*
*v. Burlington Coat Factory Warehouse Corp.,* No. 04-CV-2644, 2004 WL 1161167 (S.D.N.Y.

existence of confusion is evidence that the likelihood of confusion cannot be shown." *Essence Communications. v. Singh Industries*, 703 F. Supp. 261, 269 (S.D.N.Y. 1988), citing *Mattel v. Azrak-Hamway Int'l*, 724 F. 2d 357, 361 (2d Cir. 1983). Indeed, as a trademark *defendant*, LV recently acknowledged that "a consumer study or survey evidence" was "[t]he most important factor for showing secondary meaning." Summary Judgment Memorandum of Law, *LVL XIII v. Louis Vuitton*, 15-CV-04869, DN 108 at 2 (S.D.N.Y. Jan. 22, 2016). Yet here, only MOB bore the expense of securing expert testimony. DN 61.

No evidence; no data; no survey; no expert; no empirical basis of any kind. It is reasonable to require a plaintiff to have *some* facts to bring forth to support its claims, and indeed the typical plaintiff has such facts. LV had none. Its assertions in this case were decidedly unreasonable, and stand out from the standard Lanham Act lawsuit. This warrants an award of fees to MOB.

### 3. Louis Vuitton Litigated This Case In An Unreasonable Manner.

As this Court and the Second Circuit recognized, LV mischaracterized record evidence in an unsuccessful attempt to at least make its case seem plausible. Dist. Op. at 438; Cir. Op. at *2. While the Court pointed to the mischaracterization of internet posts, this was but one of many instances of such mischaracterizations. For instance, LV asserted on pages 4 and 5 of its response memorandum to MOB's summary judgment motion, DN 86, that MOB principal Tara Martin made two so-called "admissions." DN 86. There, LV misquoted a separated portion of deposition testimony once, and then properly quoted the deposition transcript thereafter to give the

---

May 24, 2004) (S.D.N.Y. May 24, 2004); *Solid 21, Inc. v. Hublot of Am.*, 109 F. Supp. 3d 1313 (C.D. Cal. 2015); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d 1098 (N.D. Cal. 2008); *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567 (E.D. Pa. 2002); *Malletier v. Hyundai Motor Am.*, No. 10-CV-1611, 2012 WL 1022247 (S.D.N.Y. Mar. 22, 2012); *LVL XIII Brands v. Louis Vuitton Malletier*, 209 F. Supp. 3d 612 (S.D.N.Y. 2016). *See also Louis Vuitton Malletier v. Haute Diggity Dog*, 464 F. Supp. 2d 495 (E.D. Va. 2006) (where LV did not retain an expert).

appearance of two separate portions of testimony.[8] Mischaracterizations of this type were rampant in LV's papers. *See, e.g.*, DN 90 at 1, 13, 15-18; DN 103 at 1; DN 104 at 6-8; Cir. Doc. 80 (Aug. 8, 2016) at 39-40, 43. This factor thus favors an award of attorney fees due to the "unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756.

LV's litany of litigation abuses continued. LV could not fit all of its arguments within the Court's 25-page limit for briefs, so instead of forthrightly requesting more pages it multiplied its arguments by including long passages of argument about the evidence into its response to MOB's Statement of Material Facts, DN 88 at 1-4, 10-14, and by filing separate motions to strike all of one affidavit (by MOB's expert witness), DN 82, and part of another affidavit (from MOB's principal), DN 84. Perhaps most striking is that LV filed its motion to strike MOB's expert witness, DN 82, **in addition** to filing a *Daubert* motion, DN 58. There was no legal basis for LV's motion to strike MOB's expert; indeed, LV cited but a single case supposedly supporting the striking of the declaration, and deceptively omitted the crucial bold portion of the below quote **discouraging** the striking of declarations:

> [R]ather than parsing each challenged declaration to determine which portions to strike, the Court will disregard any statements that do not comport with Rule 56(e). ***Epstein*, 210 F. Supp. 2d at 314 (disregarding portions of affidavits, rather than striking them).**

*Rus, Inc. v. Bay Indus.*, 322 F. Supp. 2d 302, 307 (S.D.N.Y. 2003); DN 82 at 6; *see also* DN 104

---

[8] Repeated portions are emphasized below, with misquotations from the record (as shown by DN 59, Ex. 3 (Martin Dep. Tr.) at 89:6-90:3) underlined:

Doc. 86 at 4: "[W]ould you agree with me that the depictions of <u>LV</u> bags are depictions, pictures, you use in order for people to understand that the product comes from you, My Other Bag?"

Compare Doc. 86 at 5: "Well, when you say people look at these things and they understand what they are, *would you agree with me that the depictions of Louis Vuitton bags* that you use on those totes that have depictions of Louis Vuitton bags *are depictions, pictures you use in order for people to understand that the product comes from you, my Other Bag*?"

at 7-8. These tactics multiplied the cost of the litigation by forcing MOB's counsel to expend more hours defending against groundless motions. LV further evaded the Court's page limits by squeezing extra text into its opposition to MOB's motion for summary judgment;[9] courts have relied on manipulations of this sort to evade page limits as part of the reason for imposing monetary sanctions.[10] LV's manipulations to increase the number of arguments to which defendant's counsel had to respond in their summary judgment papers, instead of candidly asking for extra pages and explaining why that was justified, provide an additional ground for treating this case as "exceptional" under the Lanham Act.

LV also attempted to mislead the Court by arguing it previously produced a "bag-on-bag" design, DN 65 at ¶ 31, yet failed to produce any substantive documents illustrating any such design and failed to respond when MOB pointed out to this Court that LV had actually created a "pocket-on-bag" design. *See* DN 92 at ¶ 31. Nevertheless, LV again asserted to the Second Circuit that it had produced a "bag-on-bag" design, Cir. Doc. 66 at 9,was again rebuffed by MOB, Cir. Doc. 80 at 51, and again failed to respond to MOB's assertions. LV's conduct amounts to vexatious litigation and warrants an award of fees to MOB.

### 4. Fees Should Be Awarded To Advance Considerations Of Compensation And Deterrence.

Other aspects of this litigation provide further support for an award of attorney fees. In

---

[9] On most of the pages of DN 86, including the first fourteen pages, the lines are visibly closer together and there are 26-27 lines on those pages instead of the 23-24 lines per page that are found in the parties' other briefs and the Court's opinion. Measurement with a pica ruler reveals that the line-spacing on most of the pages is less than the required double-spacing. Levy Decl. ¶ 22.

[10] *See, e.g.*, *Emanuel v. Griffin*, No. 13-CV-1806, 2015 WL 1379007 at *17 (S.D.N.Y. March 25, 2015) (imposing sanctions under Rule 16); *see also Varda, Inc. v. Ins. Co. of N. Am.*, 45 F.3d 634, 640-41 (2d Cir. 1995) (court withheld costs award from successful party on appeal as sanction, while discussing even harsher punishments that were imposed at common law).

17

2014, LV's brand was valued at between $22.5B, DN 60-6, and $25.8B, DN 60-7. Indeed, the Paris-based company boasts "an established legal department and an annual budget of €15 million earmarked for counterfeiting matters." Kimiya Shams, *As Louis Vuitton Knows All Too Well, Counterfeiting is a Costly Bargain*, FORBES (June 25, 2015). LV has a well-funded and powerful legal department designed to troll the fashion world for violations—or, more cynically, for negative commentary. In stark contrast, MOB could not even afford the cost of defending itself. LV took advantage of its huge size and litigation budget to try to grind a tiny company into submission. Following LV's initiating of the lawsuit and intimidation of wholesale customers of MOB, MOB's revenue dropped from about $925,000 in 2014; to about $360,000 in 2015, after this lawsuit was filed; and to about $330,000 in 2016. Martin Decl. at ¶¶ 3, 4. Disparity in size has repeatedly been invoked in other cases to support a finding of exceptionality in trademark law,[11] and similarly should be considered under the *Octane Fitness* endorsement of use of copyright attorney fee factors, *supra* at 7—especially when that disparity in size is purposefully used to economically stifle a defendant. This factor supports an award of attorney fees here.

Regrettably, it is not just MOB that has suffered LV's bullying tactics on display in this litigation: this company has long been identified as a shameless trademark bully, meaning that deterrence should come into consideration. *See* Leah Chan Grinvald, *Shaming Trademark Bullies*, 2011 Wis. L. Rev. 625, 678 (2011); Alison Frankel, *Louis Vuitton and Penn Offer Unintended Lesson in Trademark law*, REUTERS (Mar. 9, 2012), http://blogs.reuters.com/alison-

---

[11]*See, e.g., Noxell Corp. v. Firehouse No. 1 Barbeque Rest.*, 771 F.2d 521, 526-27 (D.C. Cir. 1985) (plaintiff was large conglomerate; defendant was a firefighter trying to start a restaurant); *Ale House Mgmt. v. Raleigh Ale House*, 205 F.3d 137, 144 (4th Cir. 2000) (successful company tried to block a new venture); *Door Systems v. Pro-Line Door Systems,* 126 F.3d 1028, 1031 (7th Cir. 1997); *see also Nightingale Home Healthcare v. Anodyne Therapy*, 626 F.3d 958, 864 (7th Cir. 2010) ("Disparity in size will often be relevant in evaluating the legitimacy of the suit or defense").

frankel/2012/03/09/louis-vuitton-and-penn-offer-unintended-lesson-in-trademark-law/.     For

example, in 2002, LV sued dog toy maker Haute Diggity Dog over its "Chewy Vuiton" pet toys,

which were parodic and nondiluting as a matter of law. *Haute Diggity*, 507 F.3d 252. Haute Diggity

Dog was forced to incur hundreds of thousands of dollars in fees at the district court level to defend

against LV's claims, and its summary judgment win was affirmed by the Fourth Circuit. But, the

company's finances suffered greatly, losing distributors and having merchandise returned.[12]

In 2008, LV sued Danish artist Nadia Plesner over a t-shirt with an illustrated image of a

Darfurian child holding a bag whose design evoked LV. Plesner said she had used the bag design

to draw attention to society's misplaced priorities saying that "since doing nothing but wearing

designer bags . . . apparently is enough to get you in the news, maybe it is worth a try for people

who actually deserve and need attention."[13] Plesner yielded to the threat of liability. In 2011, LV

sued her again, this time for her painting "Darfurnica," which featured the same image as part of

a large homage to Picasso's Guernica, asking for an ex parte order against her in the Hague.

Plesner's Dutch attorney, Jens van den Brink, committed to protecting the freedom of expression

and stood by his client, who therefore was able to prevail in court and secure the right to exhibit

both the original image and Darfurnica.[14]

In 2010, LV sent a cease-and-desist letter to the Kobe Fashion museum over a series of

---

[12] Raymund Flandez, *Tiny Firm Wins 'Chewy Vuiton' Suit, But Still Feels a Bite*, PITTSBURGH POST-GAZETTE (Nov. 28, 2006), http://www.post-gazette.com/business/businessnews/2006/ 11/28/Tiny-firm-wins-Chewy-Vuiton-suit-but-still-feels-a-bite/stories/200611280148. The co-owner of Haute Diggity Dog, when asked whether the lawsuit was worth it, said they didn't have a choice because they had to "fight back" or "go out of business." *Id.*

[13] *Simple Living & Darfurnica*, PLESNER, http://www.nadiaplesner.com/simple-living--darfurnica1 (last visited Apr. 6, 2017).

[14] *Artist wins case against Louis Vuitton*, RNW MEDIA, https://www.rnw.org/archive/artist-wins-case-against-louis-vuitton (last visited Apr. 6, 2017).

locust-shaped sculptures called "BATTA Mon" (batta-mon means "knockoff") created by a Japanese artist. The works incorporated allegedly counterfeit LV bags, and were meant to "raise questions about the relationship between authenticity and imitation in a consumer driven society."[15] The museum removed the sculptures to avoid a legal dispute.[16]

The next year, LV sued Warner Brothers Entertainment over the appearance of a third party's knock-off bag, misidentified by a character as a "Lewis Vuitton," in the film *The Hangover: Part II*. Warner Brothers won the lawsuit on a motion to dismiss, with the court saying that "in a case such as this one, no amount of discovery will tilt the scales in favor of the mark holder at the expense of the public's right to free expression." *Louis Vuitton Malletier v. Warner Bros. Entm't*, 868 F. Supp. 2d 172, 184 (S.D.N.Y. 2012).

Then again, the same year *Warner Brothers* was decided, LV sent a cease-and-desist letter to the dean of the University of Pennsylvania Law School, demanding that the school remove posters for a Fashion Law symposium that had a parody of the LV toile monogram on them.[17] Noted intellectual property scholar David Nimmer said that the LV letter elicited a "response of laughter." Frankel, *supra* at 18. After a lengthy response from the Associate General Counsel of the University of Pennsylvania[18] that was strikingly similar in content to MOB's response to LV's

---

[15]   *Mitsuhiro Okamoto: Batta Mon Returns*, DESIGNBOOM (Nov. 19, 2010), http://www.designboom.com/ art/mitsuhiro-okamoto-batta-mon-returns/.

[16] *See generally* Irina Makarova, *Louis Vuitton's Discriminating Support for Contemporary Art*, Art Asia Pacific, http://artasiapacific.com/Magazine/70/LouisVuittonSDiscriminatingSupportFor ContemporaryArt.

[17] Letter from Michael Pantalony, Director of Civil Enforcement, North America, Louis Vuitton Malletier, to Dean Michael A Fitts, Dean, University of Pennsylvania Law School (Feb. 29, 2012) (available at https://www.law.upenn.edu/fac/pwagner/DropBox/lv_letter.pdf).

[18] Letter from Robert F. Firestone, Associate General Counsel, University of Pennsylvania to Michael Pantalony, Director of Civil Enforcement, North America, Louis Vuitton Malletier (Mar. 2, 2012) (available at https://www.law.upenn.edu/fac/pwagner/DropBox/penn_ogc_letter.pdf).

initial cease-and-desist, LV declined to file suit. *Cf.* n. 19 *with* Philpott Decl., Ex. C.

To a company like LV, it almost doesn't matter if it succeeds in a particular case, because the chilling effect remains the same. When small companies, or artists, or others, receive threats, they cannot be sure that they will have the resources to litigate toe-to-toe with a litigant with the size and ferociousness of LV, and they have to worry that, as happened to MOB here, they may lose a substantial portion of their business as retailers hesitate to carry their products. LV doesn't need to win to have its way. As in this case, it doesn't even need to have evidence of confusion, dilution, or harm; it doesn't need to be able to establish even a single factor to the satisfaction of a court. Many victims cave because they cannot afford to fight. Circuit Judge Lynch was laser-focused on the bullying character of LV's claims here: "of course you just want to bully them into having to spend the money on a trial . . . if this were a real trial and you tried [an argument that MOB's bags gave its customers "caché"] out on a mock jury and you tried that out with some jury consultants, you would be laughed out of the room." Tr. at 76:15-23, audio at 01:00:17-01:00:33. Plaintiff's incessant abuse of the trademark laws and of judicial process provide compelling grounds for treating this lawsuit as exceptional.

## II.  MOB SHOULD BE AWARDED FEES FOR DEFENDING THE COPYRIGHT CLAIM.

The Supreme Court recently clarified the standard for granting attorney fees in copyright infringement cases, *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016) ("*Kirtsaeng*"): "fee awards under §505 should encourage the types of lawsuits that promote . . . [the Copyright Act's] purpose of enriching the general public through access to creative works . . . [and] encouraging and rewarding authors' creations while also enabling others to build on that work." *Id.* at 1986 (citations omitted). To determine whether the defense of a copyright claim promotes those purposes and warrants a fee award, courts are to consider the following non-exhaustive list

of factors: "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1985 (*quoting Fogerty*, 510 U.S. at 534) (correction in original). Objective reasonableness "can be only an important factor in assessing fee applications—not the controlling one." *Kirtsaeng*, 136 S. Ct. 1979 at 1988. Courts therefore must "give due consideration to all other circumstances relevant to granting fees," and while giving substantial weight to the reasonableness of a losing party's claims is appropriate, raising a presumption based on such a finding "goes too far." *Id.* at 1983, 1989.

The Supreme Court stated in *Kirtsaeng*, "a person defending against a patently meritless copyright claim has every incentive to keep fighting. . . . [This serves to] promote the Copyright Act's purposes, by enhancing the probability that both creators and users . . . will enjoy the substantive rights the statute provides." 136 S. Ct. at 1986-87. The Copyright Act's purposes are furthered by disincentivizing claims like LV's—"compensation and deterrence may be required where a party is forced to . . . defend against objectively unreasonable claims." *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 820 F. Supp. 2d 569, 574 (S.D.N.Y. 2011). "When a litigant— whether plaintiff or defendant—is clearly correct, the likelihood that he will recover fees from the opposing (*i.e.*, unreasonable) party gives him an incentive to litigate the case all the way to the end," and awarding fees to a party defending against such a claim "promote[s] the Copyright Act's purposes." *Kirtsaeng*, 136 S. Ct. at 1986-87.

LV's actions check every box of the multi-factor *Kirtsaeng* framework: they were legally unreasonable (*supra* at 11-14), factually unreasonable (*supra* at 14-15), and improperly motivated (*supra* at 15-17). A fee award here would also advance considerations of compensation and deterrence. *Supra* at 17-21. This Court should grant fees because there is a strong copyright interest in such an award; without the prospect of such an award "[a defendant] might be forced into a

nuisance settlement." *Alliance for Water Efficiency v. Fryer*, No. 14-CV-115, 2017 WL 201358 at *6, *13 (N.D. Ill. Jan. 18, 2017) (quoting *Klinger v. Conan Doyle Estate*, 761 F.3d 789 (7th Cir. 2014)).

Further, LV took additional unreasonable actions specific to its copyright claims. For example, in its appellate papers, LV argued that this Court "ignored the rule" "that [e]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." Cir. Doc. 66 at 64, quoting *Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 562 (1985). But, the Supreme Court, in the most well-known parody decision of the twentieth century, overturned this so-called "rule" 23 years ago in *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 584 (1994):

> If, indeed, commerciality carried presumptive force against a finding of fairness, the presumption would swallow nearly all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting, comment, criticism, teaching, scholarship, and research, since these activities "are generally conducted for profit in this country." *Harper & Row*, *supra*, at 592 (Brennan, J., dissenting). Congress could not have intended such a rule.

*See* Cir. Doc. 80 at 59-60. LV's "reliance on a doctrine that was clearly rejected by the Supreme Court was objectively unreasonable." *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 668 (S.D.N.Y. 2001) (awarding attorneys' fees to defendants when finding plaintiff's copyright infringement claims unreasonable by relying on the "sweat of the brow" doctrine rejected by *Feist Publ'ns, Inc. v. Rural Tel. Ser. Co.*, 499 U.S. 340, 359-60 (1991)). "The denial of fees and costs to a prevailing defendant in an objectively unreasonable copyright case may spur additional frivolous lawsuits, of exactly the sort an award of fees and costs is designed to 'chill.'" *Briarpatch Limited L.P. v. Geisler Roiberdeau*, No. 99-CV-9623, 2009 WL 4276966 at *9 (S.D.N.Y. Nov. 30, 2009).

LV's other copyright arguments were also unreasonable. The copyright fair use arguments in LV's own motion for summary judgment rested on conclusory statements instead of contending

with MOB's substantial similarity analysis and the four fair use factors. DN 64 at 24. While fair use is an affirmative defense, failure to consider a strong fair use argument can make a copyright claim objectively unreasonable. *Mattel, Inc. v. Walking Mountain Prods.*, No. 99-CV-8543, 2004 WL 1454100, at *1 (C.D. Cal. June 21, 2004); *SOFA Entm't v. Dodger Prods.*, 709 F.3d 1273 (9th Cir. 2013) (awarding fees to fair use defendant). Similarly, LV's response to MOB's motion for summary judgment spent only one paragraph attempting to rebut defendant's fair use argument, inexplicably relying on *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), a trademark case. That brief performs the same sort of conclusory analysis as LV's own motion and again treats alleged commerciality as dispositive. *Compare* DN 64 at 21-23 *with* DN 86 at 12-14, 18-21.

In addition to the objective unreasonableness of LV's claims, its motivation in filing this suit supports an award of fees to advance the objectives of the Copyright Act. LV is a serial litigator with regard to its intellectual property rights, and often seeks to silence those who comment or parody it. *See, e.g. supra* pages 17-21. But as this Court noted, "[p]arody, like other forms of comment or criticism, 'has an obvious claim to transformative value' and may therefore be 'fair use' under the Copyright Act." Dist. Op. at 444 (citing *Campbell*, 510 U.S. at 579). Here, as in *Haute Diggity Dog*, LV attempted to abuse the judicial process to chill MOB's publicly beneficial fair use when it should have chosen to "smile or laugh [rather] than . . . to sue." Dist. Op. at 445.

Moreover, in copyright cases as under the Lanham Act, considering economic disparity between parties serves the "need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng*, 136 S. Ct. at 1985 (*quoting Fogerty*, 510 U.S. at 534).[19]

---

[19] *See e.g., Toliver v. County of Sullivan,* 957 F.2d 47, 49 (2d Cir. 1992) (noting that because fee awards are equitable, "courts should not hesitate to take the relative wealth of the parties into account.") (quoting *Faraci v. Hickey-Freeman*, 607 F.2d 1025, 1028 (2d Cir. 1979); *Littel v. Twentieth Century-Fox Film Corp.*, No. 89-CV-8526, 1996 WL 18819, at *3 (S.D.N.Y. Jan. 18, 1996), aff'd sub nom. *DeStefano v. Twentieth Century Fox Film Corp.*, 100 F.3d 943 (2d Cir. 1996) (ordering "struggling artists" to submit evidence of "their net worth, current salaries, other sources

In deciding *Kirtsaeng* on remand, the court considered, *inter alia*, the prevailing party's argument that a fee award was necessary to "incentiviz[e] impecunious defendants to stand up to corporate goliaths." No. 08-CV-7834, 2016 WL 7392210, at *3 (S.D.N.Y. Dec. 21, 2016). Fees were ultimately denied, but the court stated, "[i]n a closer case for an award of attorneys' fees, this argument might have greater weight." *Id. See also Torah Soft Ltd. v. Drosnin*, No. 00-CV-5650, 2001 WL 1506013, at *10 (S.D.N.Y. Nov. 27, 2001) ("relative financial resources of the parties is an appropriate factor to be considered in awarding fees under the Copyright Act"). The fact that a fashion giant has picked on a small company, bringing to bear its oft-employed bullying tactics, supports an award of fees.

Finally, an award to MOB for advancing a fair use defense is consistent with the purposes of the Copyright Act. "[T]he goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works." *Campbell,* 510 U.S. at 584. MOB's "other bags" are transformative parodies of a popular work, Dist. Op. at 444, and an award of fees incentivizes the creation of such works and thus serves the purposes of the Copyright Act. MOB should be awarded attorney fees for its successful defense on summary judgment and appeal.

## III.  FEES AND EXPENSES SHOULD BE AWARDED IN THE AMOUNT OF $802,939.05.

The Second Circuit, like most circuits, determines attorney fee awards according to the lodestar method, or reasonable hours times reasonable rate. *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("the product of a reasonable hourly rate and the reasonable number of

---

of income, and any other financial information" for use in determining whether to award fees); *Leibovitz v. Paramount Pictures Corp.*, No. 94-CV-9144, 2000 WL 1010830, at *5 (considering financial disparity between parties).

hours required by the case—creates a 'presumptively reasonable fee'") (citation omitted).[20] It is the prevailing hourly rate in the district where the district court sits that governs the presumptively reasonable rate for attorneys. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Albany*, 522 F.3d 182, 190 (2d Cir. 2007). Consequently, defendant is seeking an award of attorney fees at hourly rates exceeding the normal billing rates of its suburban Los Angeles attorneys, Philpott Decl. ¶ 6 and 9, which are lower than the hourly rates typical of the rates for lawyers in Manhattan. Similarly, defendant is seeking an award at full market billing rates for its New York attorneys, even though those attorneys as a matter of course charge lower rates in order to provide defense legal services to clients who could not otherwise afford them. Korzenik Decl. ¶¶ 7-8. Those attorneys' support for their clients does not mean that, when it is seeking an award of attorney fees against a market giant such as LV, the defendant is obligated to give the plaintiff a similar windfall; rather, defendant is entitled to fees awarded at full and fair market rates. *Central States Pension Fund v. C. Cartage Co.*, 76 F.3d 114, 116-17 (7th Cir. 1996); *Cadle Co., II, Inc. v. Chasteen*, 991 F.2d 805 (10th Cir. 1993); *Islamic Ctr. of Miss. v. City of Starkville, Miss.*, 876 F.2d 465, 469 (5th Cir. 1989); *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516 (D.C. Cir.1988) (en banc).

Moreover, in assessing the proper hourly rates in this case, "[t]rademark litigation is a particularly difficult field of specialization and is recognized as meriting greater than average rate of pay." *Toys 'R' Us v. Abir*, No. 97-CV-8673, 1999 WL 61817 at *2 (S.D.N.Y. Feb. 10, 1999) (quoting *Dunkin' Donuts Inc. v. Mercantile Ventures, Inc.*, No. 91-CV-154, 1994 WL 720236, at *4 (W.D. Tex. Aug. 11, 1994)). "In recent years, New York district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour." *Regulatory Fundamentals*

---

[20] Fees are awarded for time spent on fee litigation. *Trichilo v. Sec'y of Health & Human Servs.*, 823 F.2d 702, 708 (2d Cir.), *supplemented*, 832 F.2d 743 (2d Cir. 1987); *Donovan v. CSEA Local Union 1000*, 784 F.2d 98, 106 (2d Cir. 1986).

*Grp. v. Governance Risk Mgmt. Compliance*, No. 13-CV-2493, 2014 WL 4792082, at *2 (S.D.N.Y. Sept. 24, 2014) (collecting authorities). Several recent rulings in this district have upheld awards of attorney fees at hourly rates in that range for partners and associates in law firms. For example, in *River Light V, L.P. v. Lin & J Int'l, Inc.*, No. 13-CV-3669, 2015 WL 3916271, at *11 (S.D.N.Y. June 25, 2015), the court approved hourly rates of $720-$725 for partners and $450-$500 for associates with four-six years of practice, citing several other recent cases as support.

Particularly probative are hourly rates both sought and approved in this district in cases involving plaintiff LV. Nine years ago, LV secured a large attorney fee award in a case where it was represented by Michael Allan, a senior associate who moved from Arnold and Porter to Steptoe and Johnson during the litigation. *Louis Vuitton Malletier v. LY USA*, No. 06-CV-13463, 2008 WL 5637161 (S.D.N.Y. Oct. 3, 2008). By the time of the fee application, he had been practicing law for ten years. Mr. Allan's affidavit, Levy Decl. Ex. 6, recited his qualifications and those of the other lawyers on the plaintiff team, as well as providing data about the range of hourly rates for New York and DC lawyers at Steptoe (ranging from $525 to $895 for partners, from $450 to $845 for counsel, and from $275 to $550 for associates). The rates sought in the application ranged from $685 to $720 for partners and $355 to $440 for associates (plus $255 for a first-year associate). Mr. Allan sought fees at $440 per hour. Fees were granted in their entirety, *LY*, 2008 WL 5637161, at *3, and upheld on appeal. *Louis Vuitton v. LY USA*, 676 F.3d 83 (2d Cir. 2012). The hourly rates for defendant's merits counsel are considerably lower than what LV was willing to pay its own trademark litigators between 2006 and 2008, and what the company was awarded in that case.

Also pertinent are the hourly rates awarded **against** LV ten years ago, after it lost a discovery motion during its suit against Dooney and Bourke. *Louis Vuitton Malletier v. Dooney &*

27

*Bourke*, No. 04-CV-5316, 2007 WL 1284013, at *4 (S.D.N.Y. Apr. 24, 2007). Partners of varying seniority were awarded fees at the hourly rates of $600 and $700; associates' fees were awarded at the rates of $250 (for an associate who had just graduated) to $400. Again, the hourly rates sought for defendants' merits counsel are well within the range awarded against plaintiff in 2007.

The propriety of the hourly rates on which this application is based is confirmed further by market survey evidence. The annual survey of billing rates conducted by the National Law Journal, Levy Decl. Ex. 4, reveals that for the 23 New York firms in the survey, billing rates for partners averaged between $640 and $990, and between $340 and $678 for associates. The AIPLA's survey, Levy Decl. Ex. 5, reveals that the mean billing rate for private firm associates was $343, and in the New York metropolitan area was $481 (the 10th percentile was $272 and the 90th percentile was $690); and among private firm partners, a mean of $471 nationwide and $530 in New York (the 10th percentile was $337, and the 90th percentile was $995). The hourly rates sought for the work of defendant's counsel are consistent with these surveys. Finally, the $775 per hour sought for Mr. Levy's time is supported by the "Laffey Matrix," a listing of the appropriate hourly rates updated annually to account for the inflation rates for legal services, and used by many courts in Washington and elsewhere to identify the appropriate hourly rates for lawyers practicing in D.C., *Salazar ex rel. Salazar v. D.C.*, 809 F.3d 58, 65 (D.C. Cir. 2015); *Interfaith Community Org. v. Honeywell Int'l*, 726 F.3d 403, 417 (3d Cir. 2013). Levy Decl. ¶ 10-12, Exs. 2, 3.

The vast majority of fees incurred by defendant's LA and New York counsel has not been paid, because the cost of standing up to LV's bullying quickly outstripped the defendant's ability to pay. As a practical matter, all counsel for defendant have been providing pro bono legal services, making collection of fees entirely contingent not only on defendant's prevailing but also on defendant's success on this attorney fee application. When payment of fees is contingent, courts

28

fix hourly rates higher than might otherwise apply when fees are paid up front. *U.S. v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107 (9th Cir. 2015); *U.S. v. Overseas Shipholding Group*, 625 F.3d 1, 13 (1st Cir. 2010) ("the fact that the attorney is willing to take an all-or-nothing arrangement might justify a fee which is higher than the going hourly rate in the community"). And further, LV's massive budget and MOB's inability to pay should be considered: "the court must . . . consider whether an adjustment of the fee is warranted based on factors such as financial disparities between the parties." *Harrell v. van der Plas*, No. 08-CV-8252, 2009 WL 3756327, at *2 (S.D.N.Y. Nov. 9, 2009) (Lynch, J., sitting by designation) (internal quotes omitted).

In sum, the evidence supports the following proper hourly rates for defendant's counsel:

| LA-Area Counsel | | NY Counsel | |
|---|---|---|---|
| Philpott | $450 | Korzenik | $625 |
| Kent | $550 | Keegan | $375 |
| Donaldson | $375 | **DC Counsel** | |
| Law Clerks | $150 | Levy | $775 |
| Lynch (Legal Extern) | $100 | Albert (Clerk) | $150 |

New York counsel has allocated 80% and California counsel 90% to the Lanham Act claims, and New York counsel has allocated 20% and California counsel 10% to the copyright claims. Costs are also shown below.

| Lawyer | Rate / hr | TM Time | TM Amount | © Time | © Amount | Total Fee |
|---|---|---|---|---|---|---|
| Philpott | $450 | 192.1 | 86427.00 | 21.3 | 9603.00 | 96030.00 |
| Kent | $550 | 144.0 | 79175.25 | 16.0 | 8797.25 | 87972.50 |
| Donaldson | $375 | 746.3 | 251876.25 | 74.6 | 27986.25 | 279862.50 |
| Cal. Clerks | $150 | 64.4 | 9665.00 | 7.2 | 1074.00 | 10739.00 |
| Lynch | $100 | 54.4 | 5436.00 | 6.0 | 604.00 | 6040.00 |
| Korzenik | $625 | 116.9 | 73062.50 | 29.3 | 18312.50 | 91375.00 |
| Keegan | $375 | 310.1 | 116287.50 | 77.8 | 29175.00 | 145462.50 |

| Levy | $775 | 49.3 | 38207.50 | 4.0 | 3100.00 | 41307.50 |
|---|---|---|---|---|---|---|
| Albert | $150 | 14.4 | 2160.00 | 3.4 | 510.00 | 2670.00 |
| TOTAL | | 1691.9 | 662117 | 239.6 | 99162 | 761459.00 |
| Korzenik Declaration Costs | | | | | | 279.00 |
| Philpott Declaration Costs | | | | | | 13853.03 |
| Martin Declaration Costs | | | | | | 27348.02 |
| TOTAL | | | | | | 802939.05 |

Consequently, defendant asks the Court to award $802,939.05 in attorney fees and costs.[21]

## CONCLUSION

Defendant's motion for an award of attorney fees and expenses should be granted.

Respectfully submitted,

/s/ Corey A. Donaldson
Brian J. Philpott
Corey A. Donaldson
Koppel Patrick Heybl & Philpott
2815 Townsgate Road, Suite 215
Westlake Village, California 91361
805.373.0060
cdonaldson@koppelip.com

/s/ David S. Korzenik
David S. Korzenik
Terence P. Keegan
Miller Korzenik Sommers Rayman LLP
488 Madison Avenue, Suite 1120
New York, New York 10022
(212) 752-9200
dkorzenik@mkslex.com

/s/  Paul Alan Levy
Paul Alan Levy
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, D.C. 20009
202.588.7725
plevy@citizen.org

---

[21] Fee entries are through April 5, 2017 for CA counsel; February 28, 2017 for NY counsel; and April 6, 2017 for D.C. counsel. MOB intends to update these entries upon the filing of its reply.