**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| LOUIS VUITTON MALLETIER, S.A., | ) | |
| | ) | |
| | ) | No. 14-cv-3419 (JMF) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MY OTHER BAG, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
RENEWED MOTION FOR ATTORNEY'S FEES**

Dated: June 12, 2017

Robert E. Shapiro (admitted *pro hac vice*)
Wendi E. Sloane (admitted *pro hac vice*)
Sharon E. Calhoun (admitted *pro hac vice*)
Hannah Y. Jurowicz (admitted *pro hac vice*)
BARACK FERRAZZANO
KIRSCHBAUM & NAGELBERG LLP
200 W. Madison Street
Suite 3900
Chicago, IL 60606
(312) 984-3100 (phone)
(312) 984-3150 (facsimile)
rob.shapiro@bfkn.com
wendi.sloane@bfkn.com
sharon.calhoun@bfkn.com
hannah.jurowicz@bfkn.com

Theodore B. Olson (*pro hac vice* forthcoming)
Howard S. Hogan (HH-7995)
Amir C. Tayrani (*pro hac vice* forthcoming)
Christopher J. Baum (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5036
Tel:  (202) 955-8500
tolson@gibsondunn.com
hhogan@gibsondunn.com
atayrani@gibsondunn.com
cbaum@gibsondunn.com

*Attorneys for Louis Vuitton Malletier, S.A.*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT OF THE CASE ............................................................................................. 2

ARGUMENT ....................................................................................................................... 4

I.   Awarding Fees Under The Lanham Act Is Not Warranted Because This Is Not An
     "Exceptional Case." ..................................................................................................... 4

    A.   Louis Vuitton's litigation positions were objectively reasonable. .................................. 5

        1.   Louis Vuitton's trademark dilution claim was objectively reasonable.................. 7

        2.   Louis Vuitton's trademark infringement claim was objectively reasonable. ....... 13

    B.   Louis Vuitton litigated this case in an objectively reasonable manner. ........................ 15

        1.   Louis Vuitton did not mischaracterize the record or attempt to mislead the
     Court in any respect. ..................................................................................... 16

        2.   Louis Vuitton did not file any improper motions or otherwise multiply the
     cost of litigation. .......................................................................................... 18

    C.   Louis Vuitton did not assert its claims for an improper purpose. .................................. 19

II.  Awarding Fees Under The Copyright Act Is Not Warranted.................................................. 23

III. My Other Bag's Requested Hourly Rates Are Unreasonable................................................. 25

CONCLUSION .................................................................................................................... 28

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Antioch Co. v. Scrapbook Borders, Inc.*,
    291 F. Supp. 2d 980 (D. Minn. 2003) .................................................................25

*In re AOL Time Warner S'holder Deriv. Litig.*,
    No. 02-cv-6302, 2010 WL 363113 (S.D.N.Y. Feb. 1, 2010) ...........................27, 28

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany*
    *Cty. Bd. of Elections*,
    522 F.3d 182 (2d Cir. 2008)....................................................................25, 27, 28

*Avera v. Sec'y of Health & Human Servs.*,
    515 F.3d 1343 (Fed. Cir. 2008)..................................................................27, 28

*Balsley v. LFP, Inc.*,
    691 F.3d 747 (6th Cir. 2012) ..........................................................................25

*Beastie Boys v. Monster Energy Co.*,
    112 F. Supp. 3d 31 (S.D.N.Y. 2015).........................................................6, 7, 15, 24

*United States ex rel. Bisk v. Westchester Med. Ctr.*,
    No. 06-cv-15296, 2016 WL 8254797 (S.D.N.Y. Aug. 5, 2016)............................27

*BWP Media USA, Inc. v. Mishka NYC LLC*,
    No. 13-cv-4435, 2016 WL 8309676 (E.D.N.Y. Dec. 28, 2016)............................23

*C=Holdings B.V. v. Asiarim Corp.*,
    992 F. Supp. 2d 223 (S.D.N.Y. 2013)...................................................................15

*CafeX Comm'cs, Inc. v. Amazon Web Servs., Inc.*,
    No. 17-cv-1349 (S.D.N.Y. Mar. 30, 2017) ........................................................19

*Calibrated Success, Inc. v. Charters*,
    72 F. Supp. 3d 763 (E.D. Mich. 2014)................................................................25

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994)............................................................................................24

*Castle Rock Ent. Inc. v. Carol Publ'g Group, Inc.*,
    150 F.3d 132 (2d Cir. 1998) ..............................................................................24

*Chizmar v. Acco Brands Corp.*,
    No. 14-cv-2181, 2015 WL 4388326 (S.D.N.Y. Jul. 17, 2015)..............................12

*Convolve, Inc. v. Compaq Computer Corp.*,
  No. 00-cv-5141, 2007 WL 415145 (S.D.N.Y. Feb. 7, 2007) .................................................12

*Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*,
  246 F.3d 142 (2d Cir. 2001)......................................................................................................26

*Cross Commerce Media, Inc. v. Collective, Inc.*,
  No. 13-cv-2754, 2014 WL 7323419 (S.D.N.Y. Dec. 16, 2014) ....................................6, 14, 15

*Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*,
  169 F.3d 755 (D.C. Cir. 1999)..............................................................................................27, 28

*Deere & Co. v. MTD Prods., Inc.*,
  41 F.3d 39 (2d Cir. 1994)............................................................................................................9

*Designer Skin, LLC v. S & L Vitamins, Inc.*,
  560 F. Supp. 2d 811 (D. Ariz. 2008) .........................................................................................25

*Disney Enters., Inc. v. VidAngel, Inc.*,
  No. 16-cv-04109, 2016 WL 8292206 (C.D. Cal. Dec. 12, 2016)...............................................25

*Dombrowsky v. Hill*,
  No. 11-cv-3048, 2013 WL 12100113 (N.D. Ga. July 23, 2013) ...............................................25

*Emanuel v. Griffin*,
  No. 13-cv-1806, 2015 WL 1379007 (S.D.N.Y. Mar. 25, 2015)................................................19

*Epstein v. Kemper Ins. Cos.*,
  210 F. Supp. 2d 308 (S.D.N.Y. 2002)........................................................................................18

*Erickson Prods., Inc. v. Kast*,
  No. 13-cv-05472, 2014 WL 5474741 (N.D. Cal. Oct. 28, 2014)...............................................25

*Fresh Del Monte Produce Inc. v. Del Monte Foods, Inc.*,
  No. 15-cv-6820, 2016 WL 8379326 (S.D.N.Y. Mar. 25, 2016)...................................................7

*Gametek LLC v. Zynga, Inc.*,
  No. 13-cv-2546, 2014 WL 4351414 (N.D. Cal. Sept. 2, 2014)..................................................15

*Harley-Davidson, Inc. v. Grottanelli*,
  164 F.3d 806 (2d Cir. 1999)........................................................................................................9

*In re Terrorist Attacks on Sept. 11, 2001*,
  No. 03-md-1570, 2015 WL 6666703 (S.D.N.Y. Oct. 28, 2015) ...............................................27

*Innov. Ventures, LLC v. Ultimate One Distrib. Corp.*,
  176 F. Supp. 3d 137 (E.D.N.Y. 2016) .........................................................................................6

*K.L. v. Warwick Valley Cent. Sch. Dist.*,
  584 F. App'x 17 (2d Cir. 2014) ....................................................................28

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  136 S. Ct. 1979 (2016) ..........................................................................5, 23

*Larouche v. Webster*,
  175 F.R.D. 452 (S.D.N.Y. 1996) ...............................................................18

*Leadsinger, Inc. v. BMG Music Pub.*,
  512 F.3d 522 (9th Cir. 2008) ....................................................................25

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*,
  149 F.3d 987 (9th Cir. 1998) ....................................................................25

*Louis Vuitton Malletier, S.A. v. Abags.co.UK*,
  No. 14-cv-60288, 2015 WL 11197741 (S.D. Fla. Feb. 27, 2015) .........................22

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
  658 F.3d 936 (9th Cir. 2011) ....................................................................22

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
  507 F.3d 252 (4th Cir. 2007) .................................................1, 8, 9, 10, 11, 13

*Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*,
  No. 10-cv-1611, 2012 WL 1022247 (S.D.N.Y. Mar. 22, 2012).....................9, 10, 22

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
  676 F.3d 83 (2d Cir. 2012)......................................................................4, 22

*Louis Vuitton Malletier, S.A. v. Mosseri*,
  736 F.3d 1339 (11th Cir. 2013) ................................................................22

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
  --- F. App'x ---, 2016 WL 7436489 (2d Cir. Dec. 22, 2016)................................3, 8

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
  No. 16A1082 (U.S. Feb. 13, 2017) ...............................................................4

*Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*,
  No. 13-cv-5242, ECF No. 168 (S.D.N.Y. Oct. 19, 2015).....................................22

*Louis Vuitton Malletier v. Dooney & Bourke*,
  561 F. Supp. 2d 368 (S.D.N.Y. 2008)..........................................................11

*Louis Vuitton S.A., Gucci Shops, Inc. v. Bag Ctr.*,
  No. 85-cv-5675, 1986 WL 2611 (N.D. Ill. Feb. 21, 1986)....................................22

*Louis Vuitton, S.A. v. After Dark Boutique*,
    680 F. Supp. 1507 (N.D. Fla. 1988)..................................................................22

*Louis Vuitton S.A. v. Downtown Luggage Ctr.*,
    706 F. Supp. 839 (S.D. Fla. 1988) ...................................................................22

*Louis Vuitton, S.A. v. EEJ Disc.*,
    No. 87-cv-7226, 1988 WL 74443 (N.D. Ill. July 12, 1988) ..............................22

*Malaco Leaf, AB v. Promotion In Motion, Inc.*,
    287 F. Supp. 2d 355 (S.D.N.Y. 2003)..............................................................19

*Malletier v. Artex Creative Int'l Corp.*,
    687 F. Supp. 2d 347 (S.D.N.Y. 2010)..............................................................22

*Malletier v. Burlington Coat Factory Warehouse Corp.*,
    No. 04-cv-2644, ECF No. 116 (S.D.N.Y. Nov. 16, 2007).................................22

*Medwig v. Long Island R.R.*,
    No. 06-cv-2568, 2007 WL 1659201 (S.D.N.Y. June 6, 2007) .............................5

*Mgmt. Inv. Funding Ltd. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    No. 93-cv-3004, 2000 WL 145461 (S.D.N.Y. Feb. 9, 2000) ............................13

*Microban Prods. Co. v. API Indus., Inc.*,
    No. 14-cv-41, 2014 WL 1856471 (S.D.N.Y. May 8, 2014) ..............................15

*Micro Star v. Formgen Inc.*,
    154 F.3d 1107 (9th Cir. 1998) .........................................................................25

*Minka Lighting, Inc. v. Bath Kitchen Decor, LLC*,
    No. 13-cv-02370, 2015 WL 12743863 (C.D. Cal. Feb. 13, 2015) .........................25

*Monge v. Maya Magazines, Inc.*,
    688 F.3d 1164 (9th Cir. 2012) .........................................................................25

*MWH Int'l, Inc. v. Inversora Murten, S.A.*,
    No. 11-cv-2444, 2013 WL 3717492 (S.D.N.Y. July 16, 2013)............................27

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*,
    704 F. Supp. 2d 305 (S.D.N.Y. 2010) ...............................................................12

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014)............................................................4, 5, 11, 15, 19, 23

*Parrish v. Sollecito*,
    280 F. Supp. 2d 145 (S.D.N.Y. 2003)...............................................................26

*Penshurst Trading Inc. v. Zodax LP*,
  652 F. App'x 10 (2d Cir. 2016) ...................................................................................4, 7

*Positive Software Sols., Inc. v. New Century Mortg. Corp.*,
  259 F. Supp. 2d 531 (N.D. Tex. 2003) ...........................................................................25

*Presse v. Morel*,
  645 F. App'x 86 (2d Cir. 2016) .......................................................................................26

*River Light V, L.P. v. Lin & J Int'l, Inc.*,
  No. 13-cv-3669, 2015 WL 3916271 (S.D.N.Y. June 25, 2015) ...........................6, 16

*Rivera v. Mendez & Compania*,
  988 F. Supp. 2d 159 (D.P.R. 2013) .................................................................................25

*Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*,
  925 F.2d 174 (7th Cir. 1991) ...........................................................................................19

*Romag Fasterners, Inc. v. Fossil, Inc.*,
  No. 10-cv-1827, 2014 WL 4073204 (D. Conn. Aug. 14, 2014).....................................4

*Rosebud Ent., LLC v. Prof'l Laminating LLC*,
  958 F. Supp. 2d 600 (D. Md. 2013) .................................................................................25

*Ryan v. Allied Interstate, Inc.*,
  882 F. Supp. 2d 628 (S.D.N.Y. 2012)..............................................................................27

*Salinger v. Colting*,
  607 F.3d 68 (2d Cir 2010) ...............................................................................................24

*Simmons v. N.Y. City Transit Auth.*,
  575 F.3d 170 (2d Cir. 2009).................................................................................25, 27, 28

*Small v. Implant Direct Mfg. LLC*,
  No. 06-cv-683, 2014 WL 5463621 (S.D.N.Y. Oct. 23, 2014)............................6, 15

*Sony Comp. Entm't Am., Inc. v. Gamemasters*,
  87 F. Supp. 2d 976 (N.D. Cal. 1999) ..............................................................................25

*Sprint Commc'ns Co. v. Chong*,
  No. 13-cv-3846, 2014 WL 6611484 (S.D.N.Y. Nov. 21, 2014)............................15

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
  588 F.3d 97 (2d Cir. 2009)................................................................................1, 8, 9, 14

*Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc.*,
  87 F.3d 654 (4th Cir. 1996) .............................................................................................12

*Varda v. Ins. Co. of N. Am.*,
    45 F.3d 634 (2d Cir. 1995)..................................................................................................19

*VIDIVIXI, LLC v. Grattan*,
    No. 15-cv-7364, 2016 WL 4367972 (S.D.N.Y. Aug. 13, 2016)...................................6, 14, 15

**Statutes**

15 U.S.C. § 1114.............................................................................................................................13

15 U.S.C. § 1125.......................................................................................................11, 12, 15, 23

15 U.S.C. § 1127.............................................................................................................................20

17 U.S.C. § 505.............................................................................................................................23

35 U.S.C. § 261.............................................................................................................................21

35 U.S.C. § 282.............................................................................................................................21

35 U.S.C. § 285.............................................................................................................................23

**Other Authorities**

S. Rep. No. 93-1400,
    1974 WL 11685, 1974 U.S.C.C.A.N. 7132(Dec. 17, 1974) ....................................................20

Stacey L. Dogan & Mark A. Lemley, *Parody As Brand*,
    47 U.C. Davis L. Rev. 473 (2013) ...........................................................................................7

*Trademark & Deceptive Advertising Surveys: Law, Science, & Design*
    (Shari Seidman Diamond & Jerre B. Swann eds. 2012).........................................................12

**Rules**

Fed. R. Civ. P. 8.............................................................................................................................15

Fed. R. App. P. 34.........................................................................................................................10

Fed. R. Civ. P. 56.........................................................................................................................18

L.R. 11.1.......................................................................................................................................18

L.R. 34.1.......................................................................................................................................10

L.R. 56.1.......................................................................................................................................18

## INTRODUCTION

By any objective standard, this case does not merit an award of attorney's fees under either the Lanham Act or the Copyright Act. Although My Other Bag ("MOB") ultimately prevailed at the summary judgment stage, there is no dispute that Louis Vuitton's trademarks and copyrights are valid and enforceable. Furthermore, there is also no question that Louis Vuitton brought this case for an objectively reasonable motive: to protect its trademarks and copyrights from being used on unauthorized products. Unlike a patent troll, Louis Vuitton has incontestable, world-famous, and valuable marks that it has the duty under trademark law to enforce against infringement and dilution or else risk losing its rights in future cases. Judging from the full universe of cases in which Louis Vuitton has been involved—rather than merely MOB's handful of cherry-picked examples—Louis Vuitton's protective approach to enforcing its rights has been overwhelmingly vindicated by the courts. This Court may have disagreed that MOB's products infringed or diluted, but that does not render a case "exceptional."

Louis Vuitton's position could not have been "objectively unreasonable" because there is no definitive rule that provides clear guidance as to when a parody defense like the one articulated in *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252 (4th Cir. 2007), will protect a commercial product like the bags at issue here, or when courts will find the parody to be too subtle to allow a commercial product to reference a famous trademark, as the Second Circuit found in *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97 (2d Cir. 2009). In fact, before this Court's decision, the Second Circuit had not—and still has not—adopted the standards set forth by the Fourth Circuit in *Haute Diggity Dog, LLC*, regarding the impact of parody on the elements of a dilution-by-blurring claim, and had not established a rule that makes clear when parody constitutes fair use under the Trademark Dilution Revision Act. *See Starbucks Corp.*, 588

1

F.3d at 112 (declining to decide both issues because the mark was being used as a "designation of source"). Numerous courts and commentators have noted the various tests that have been used in parody cases. Louis Vuitton's failure to anticipate the approach that this Court would take does not render its assertion of rights objectively unreasonable.

The record here also confirms that Louis Vuitton litigated this case in a reasonable manner. It shows that Louis Vuitton attempted in good faith to avoid litigation, and then propounded only limited discovery, did not delay this case, did not otherwise use its greater financial resources to increase the cost of litigation for MOB, and advanced arguments at the summary judgment stage that—even though rejected—were well within the bounds of permissible advocacy.

For all these reasons, a fee award would frustrate Congress's purpose in making fees available in the first instance: *to promote enforcement*. An award here would only create more uncertainty and discourage trademark owners and copyright holders from protecting their valuable intellectual property in all but the most clear-cut of cases. That is plainly not the result that Congress intended.

MOB's fee request is also unreasonable because the rates that it seeks bear no resemblance to the fees its counsel actually charged. Although MOB purports to rely on cases that have considered differences between prevailing rates in different jurisdictions, MOB ultimately turns the logic of those cases on its head and demands an unlawful windfall. Thus, to the extent the Court is inclined to award any fees, it would be error to award any more than the rates MOB agreed to pay its attorneys and what it initially requested, and awarding fees at those rates would result in a fee award that is hundreds of thousands of dollars less than what MOB now seeks.

### STATEMENT OF THE CASE

Louis Vuitton sued MOB in May 2014, seeking damages and injunctive relief based on MOB's production of handbags bearing Louis Vuitton's trademarks and copyrighted material.

Before filing suit against MOB, Louis Vuitton reached out to MOB and attempted a dialog in an effort to avoid litigation. *See* ECF No. 65, at ¶ 86; Maltbie Decl. ¶¶ 10-19. And even after it became clear that the dispute could not be resolved amicably, Louis Vuitton carefully avoided relying on its greater financial resources in litigating this case. *See* Maltbie Decl. ¶ 22. It coordinated with opposing counsel, *see* ECF Nos. 36, 43 (extending discovery deadlines through consent); it propounded reasonable and limited discovery requests, including only 13 interrogatories and 46 document requests (in contrast to MOB's 100 document requests), Shapiro Decl. ¶ 3; it incurred the additional expense to process MOB's non-compliant document production rather than filing a motion, *see* ECF No. 26, at 5, Shapiro Decl. ¶ 4; it initially sought only one deposition, and added one more deposition of a fact witness only when its necessity was revealed during the first deposition, Shapiro Decl. ¶ 5; it conducted the depositions in Los Angeles where MOB's witnesses and counsel live, *id.*; and it requested no unilateral time extensions, *id.* ¶ 9.

Louis Vuitton moved for partial summary judgment in April 2015 on its trademark dilution and copyright infringement claims. ECF No. 62. MOB moved for summary judgment on all of Louis Vuitton's claims. ECF No. 50. In January 2016, the Court denied Louis Vuitton's motion and granted MOB's motion. ECF No. 119; ECF No. 120.

MOB then filed a motion for attorney's fees and costs. ECF No. 124. Louis Vuitton appealed the judgment three days later, so the Court stayed MOB's motion pending appeal. ECF Nos. 132, 136. After holding oral argument, the Second Circuit affirmed on December 22, 2016. *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, --- F. App'x ---, 2016 WL 7436489 (2d Cir. Dec. 22, 2016). Louis Vuitton sought rehearing *en banc*, which the Second Circuit denied. Following the mandate's issuance on February 22, 2017, this Court ordered MOB to file any

renewed fee motion by April 7, 2017, and MOB did so. ECF No. 143; ECF No. 154 ("Mot."). On May 9, 2017, the Supreme Court extended Louis Vuitton's deadline to file a petition for a writ of certiorari to July 13, 2017. *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, No. 16A1082 (U.S. Feb. 13, 2017).

## ARGUMENT

**I.   AWARDING FEES UNDER THE LANHAM ACT IS NOT WARRANTED BECAUSE THIS IS NOT AN "EXCEPTIONAL CASE."**

Under the Lanham Act, courts may award attorney's fees to a prevailing party "only in 'exceptional cases.'" *Penshurst Trading Inc. v. Zodax LP*, 652 F. App'x 10, 11-12 (2d Cir. 2016) (quoting 15 U.S.C. § 1117(a)). In this Circuit, a case qualifies as "exceptional" under the Lanham Act only if it involves "fraud or bad faith or willful infringement." *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012) (internal quotation marks omitted). Although the Supreme Court's recent decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014), sets forth a different definition of when a case qualifies as "exceptional" under the Patent Act, *Octane Fitness* did not "supersed[e]" the Second Circuit's test for what qualifies as "exceptional" under the Lanham Act for the simple reason that "the Supreme Court was interpreting only the Patent Act and not the Lanham Act." *Romag Fasterners, Inc. v. Fossil, Inc.*, No. 10-cv-1827, 2014 WL 4073204, at *4-5 (D. Conn. Aug. 14, 2014). Because the Second Circuit has "not yet decided whether [the *Octane Fitness*] rule applies in the context of the Lanham Act," *Penshurst*, 652 F. App'x at 11-12, this Court remains bound to apply the Second Circuit's standard for what qualifies as exceptional, *see Romag*, 2014 WL 4073204, at *4-5 (explaining that "the Second Circuit cases interpreting the fee provision of the Lanham Act remain good law and

represent binding precedent").[1] Under that standard, awarding fees would be an abuse of discretion because this case does not involve fraud or bad faith. This Court need proceed no further to deny MOB's fee request under the Lanham Act.

Even under *Octane Fitness*, this is far from an "exceptional" case, and awarding attorney's fees would be inappropriate under that standard as well. To be "exceptional" under *Octane Fitness*, a case must "stan[d] out from others" with respect to either "the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." 134 S. Ct. at 1756. Under this standard, courts must consider "the totality of the circumstances," which include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need . . . [for] compensation and deterrence." *Id.* at 1756 & n.6 (internal quotation marks omitted). None of the circumstances in which courts have found cases to be "exceptional" is present here.

### A. Louis Vuitton's litigation positions were objectively reasonable.

Because Louis Vuitton's litigating positions were objectively reasonable, this case is not "exceptional." That Louis Vuitton's arguments were ultimately rejected does not qualify this case as exceptional; if that were sufficient, fees would be awarded to the prevailing party in every case. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988 (2016) (explaining that "if some court confuses the issue of liability with that of reasonableness, its fee award should be reversed for abuse of discretion"). Nor does the resolution of Louis Vuitton's claims on summary judgment make this case "exceptional," as trademark and copyright cases are frequently decided at the summary judgment stage. In the wake of *Octane Fitness*, "courts continue to hold claims of

---

[1] *See also Medwig v. Long Island R.R.*, No. 06-cv-2568, 2007 WL 1659201, at *4 (S.D.N.Y. June 6, 2007) (a district court is bound by "existing Second Circuit case law . . . unless and until they have been overruled by the Supreme Court or the law is otherwise changed").

baselessness [as a foundation for a fee award] to a high bar." *Small v. Implant Direct Mfg. LLC*, No. 06-cv-683, 2014 WL 5463621, at *3 (S.D.N.Y. Oct. 23, 2014), *aff'd*, 609 F. App'x 650 (Fed. Cir. 2015). Thus, "where a party has set forth some good faith argument in favor of its position, it will generally not be found to have advanced 'exceptionally meritless' claims," and fees will not be awarded. *Id.* That is the case here.

Since *Octane Fitness* was decided, courts in this Circuit have awarded fees under the Lanham Act based on the objective unreasonableness of a losing party's litigating position only in extreme circumstances, including where:

- In a case of "flagrant infringement," defendant refused to concede liability "until the brink of trial," obliging plaintiff "to prepare for trial" on a point that should have been conceded earlier, *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 42 (S.D.N.Y. 2015);

- Defendants "engaged in intentional infringement, perpetrated fraud and spoliation, pursued counterclaims grounded in that fraud, and . . . continued to sell their infringing merchandise throughout th[e] litigation, all with the intent to deceive and profit at the expense of the administration of justice," *River Light V, L.P. v. Lin & J Int'l, Inc.*, No. 13-cv-3669, 2015 WL 3916271, at *10 (S.D.N.Y. June 25, 2015);

- Plaintiff "never had a protectable mark . . . [and] never made any real effort to demonstrate otherwise," *Cross Commerce Media, Inc. v. Collective, Inc.*, No. 13-cv-2754, 2014 WL 7323419, at *2-3 (S.D.N.Y. Dec. 16, 2014), *vacated in part on other grounds*, 841 F.3d 155 (2d Cir. 2016);

- Plaintiff's claims were based on a void trademark filing, *VIDIVIXI, LLC v. Grattan*, No. 15-cv-7364, 2016 WL 4367972, at *3-4 (S.D.N.Y. Aug. 13, 2016); and

- Defendants willfully infringed, producing millions of infringing products, *Innov. Ventures,*

*LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 166-67 (E.D.N.Y. 2016).

By contrast, courts have refused to award fees where a party's "legal theory was not without arguable support" or where the party "raised a question of first impression" that was "not so facially meritless" as to be exceptional. *Fresh Del Monte Produce Inc. v. Del Monte Foods, Inc.*, No. 15-cv-6820, 2016 WL 8379326, at *2 (S.D.N.Y. Mar. 25, 2016). To avoid a fee award, it is enough to have raised an argument that is "something more than frivolous," even if "not . . . sufficient to prevail on the merits." *Penshurst*, 652 F. App'x at 12. In *Beastie Boys*, for example, the court rejected fees as to aspects of the case where defendant "made responsible arguments," even though the jury found that defendant's conduct was *willful, intentionally deceptive, and in bad faith*—a far cry from this Court's findings here. 112 F. Supp. 3d at 45-47. "To hold otherwise would risk stunting the development of the law by deterring attorneys from pressing creative theories and testing the boundaries of competing doctrines." *Fresh Del Monte*, 2016 WL 8379326, at *2. Considering these principles, this case does not qualify as "exceptional"—or even come close.

### 1.    Louis Vuitton's trademark dilution claim was objectively reasonable.

MOB argues first that Louis Vuitton's position with respect to its trademark dilution claim was "legally untenable." Mot. 11-14. Not so. "Courts have applied a variety of different theories" in cases involving parodies of trademarks. *See generally* Stacey L. Dogan & Mark A. Lemley, *Parody As Brand*, 47 U.C. Davis L. Rev. 473, 475 (2013). Here, the Court granted MOB summary judgment on not one but two issues on which the Second Circuit had not provided guidance.

To succeed on a trademark dilution by blurring claim under the TDRA, Louis Vuitton had to establish "(1) that [its] trademark is truly distinctive or has acquired secondary meaning, and (2) a likelihood of dilution . . . as a result of 'blurring.'" ECF No. 119, at 7 ("SJ Order"). This Court found that "there is – and can be – no dispute that Louis Vuitton's trademarks are famous and

distinctive," and thus that Louis Vuitton had established the first element. SJ Order 16 n.5. Although the Court ultimately rejected Louis Vuitton's dilution claim, the Court did find it "readily apparent" that Louis Vuitton had made a factual showing as to *all* the factors listed in the dilution statute, concluding "that [Louis Vuitton's] marks are distinctive, famous, and strong," and that there was no "serious question that the drawings on MOB's totes are similar to Louis Vuitton's bags (factor (i)) in a way that was intended to create an association with Louis Vuitton's bags (factors (v) and (vi))." SJ Order 18. Louis Vuitton thus easily made out a prima facie case.

Even so, the Court held that Louis Vuitton "fail[ed] to establish that the distinctiveness of its marks was likely to be impaired" by MOB's products because they constituted parody. SJ Order 19. The Court found that the purportedly parodic nature of MOB's bags was "specifically relevant" to the statutory blurring factors, in that Louis Vuitton's strong showing on the factors "ma[d]e it *less likely* that MOB's use would impair the distinctiveness of Louis Vuitton's marks." SJ Order 18. In using parody to inform application of the statutory blurring factors, the Court chiefly relied on *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252 (4th Cir. 2007), a non-binding precedent from outside of this Circuit. SJ Order 17-18. Indeed, the Second Circuit had (and has still) expressly declined to adopt *Haute Diggity Dog*'s holding that parody informs application of the statutory blurring factors. *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 112 (2d Cir. 2009) ("[W]e need not adopt or reject [the Fourth Circuit's] parody holding."). Even on appeal in this case, the Second Circuit declined—again—to reach the issue, instead affirming only this Court's fair use holding. *My Other Bag*, 2016 WL 7436489, at *2. As a result, Louis Vuitton could not have known for certain that this Court would view *Haute Diggity Dog* as supplying the rule of decision in this case on the application of the statutory blurring factors—it was a question that the Second Circuit had expressly not decided.

This Court also made new law in accepting MOB's claim that its bags constitute parody, and thus qualified as fair use. Until issuing its opinion here, the Second Circuit had never reached the issue of when parody constitutes fair use under the TDRA. Nor had the Second Circuit reached the issue of whether a use similar to the use here (the purportedly humorous use of trademarks that are famously used on handbags to create a competing, less luxurious handbag) constituted parody as a matter of law. Indeed, the Second Circuit had expressly rejected parody defenses when defendants used variations on famous marks to promote commercial products.[2] Given these open issues of law, Louis Vuitton's position was at least reasonable. And both this Court and the Second Circuit chose to use a different analysis than the Fourth Circuit's approach in *Haute Diggity Dog*. As will be detailed in Louis Vuitton's forthcoming petition for a writ of certiorari, this difference in the two approaches proved to be outcome determinative here. In light of this uncertainty in the law, and because the Court's parody standard conflicts with the text of the TDRA and the Fourth Circuit's approach, Louis Vuitton's position was anything but "legally untenable."[3]

MOB offers a flurry of arguments to the contrary. None has merit.

*First*, MOB argues that this case is remarkable because "*not a single one of the factors* that courts use to help assess" Louis Vuitton's claims "favored the plaintiff." Mot. 12. Yet as explained above, that is true in the trademark dilution context *only* because of this Court's parody finding and its adoption of the Fourth Circuit's view that parody informs application of the statutory blurring factors. Had the Court not adopted that standard—a standard that the Second Circuit still has yet to adopt—it would have had to conclude that each of the factors favored Louis Vuitton.

---

[2] *See, e.g., Starbucks Corp.*, 588 F.3d at 113; *Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 812-13 (2d Cir. 1999) (applying New York's anti-dilution statute); *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 42-45 (2d Cir. 1994) (same).

[3] The court in *Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*, No. 10-cv-1611, 2012 WL 1022247 (S.D.N.Y. Mar. 22, 2012*)*, also did not adopt *Haute Diggity Dog*'s analysis.

*Second*, MOB maintains that the Second Circuit's summary affirmance somehow makes this case exceptional. But whether a decision from the Second Circuit is a summary order or published opinion—or whether it was issued 15 days or 150 days after argument—has no bearing on whether Louis Vuitton's argument was objectively reasonable. It shows only that the decision was unanimous and that the panel did not believe that the opinion should be precedential. *See* 2d Cir. IOP 32.1.1(a). The Second Circuit issues published decisions in less than 10% of cases,[4] and takes on average less than a month to issue an opinion after oral argument.[5] An exceptional case would be one that was published or took longer to decide, not the other way around. And that the Second Circuit heard oral argument at all indicates that Louis Vuitton's position was objectively reasonable. It hears oral argument in only 29% of cases[6]—and rarely hears oral argument for over an hour, as it did here.[7] *See* 2d Cir. L.R. 34.1(b); Fed. R. App. P. 34(a)(2).

*Third*, MOB contends that Louis Vuitton might have "hope[d]" that *Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*, No. 10-cv-1611, 2012 WL 1022247 (S.D.N.Y. Mar. 22, 2012), "might make its dilution theory . . . at least *appear* colorable." Mot. 12. *Hyundai*, however, did provide Louis Vuitton with at least a good-faith belief in the merits of its claims here. MOB argues that *Hyundai* is distinguishable, but whether that is true is irrelevant—as even MOB acknowledges, *Hyundai* provided at least some support for Louis Vuitton's position regarding fair use. Mot. 12 ("*Hyundai* at best aided plaintiff's response to MOB's fair use defense"). Citing persuasive authority in the hopes that it will be persuasive to the Court (and chiefly on the "mark-to-mark" issue that the Court did not reach, *see* SJ Order 9 n.2) is not unreasonable, even if the

[4] http://www.uscourts.gov/sites/default/files/statistics_import_dir/B12Sep14.pdf (last visited June 12, 2017).

[5] http://www.uscourts.gov/sites/default/files/statistics_import_dir/B04Sep14.pdf (last visited June 12, 2017).

[6] http://www.uscourts.gov/sites/default/files/statistics_import_dir/B10Sep14.pdf (last visited June 12, 2017).

[7] http://www.ca2.uscourts.gov/oral_arguments.html (last visited June 12, 2017).

Court ultimately finds it unpersuasive.

MOB also cites *Haute Diggity Dog* and *Louis Vuitton Malletier v. Dooney & Bourke*, 561 F. Supp. 2d 368 (S.D.N.Y. 2008), for the proposition that Louis Vuitton unreasonably asserts its rights. But those cases, involving different facts and circumstances, do not shed any light on whether Louis Vuitton's position was reasonable here. *Dooney & Bourke* did not even involve parody, and the analysis MOB quotes (Mot. 13-14) on what suffices to establish dilution relies on the outdated "actual dilution" standard, which Congress superseded by passing the TDRA. 561 F. Supp. 2d at 376 (noting that the case "continues to be governed by the standard set forth in the FTDA rather than its replacement the Trademark Dilution Revision Act of 2006"). Moreover, neither case is binding on this Court or the Second Circuit. *See Octane Fitness*, 134 S. Ct. at 1756 (explaining that courts consider "the governing law" in this context). Indeed, the Second Circuit not only refused to adopt the Fourth Circuit's approach in this case, but it also affirmatively established a split with the parody standard applied in *Haute Diggity Dog*.

*Fourth*, MOB argues that Louis Vuitton's case was "factually untenable," stating that one of Louis Vuitton's witnesses "could not point to any loss of sales attributable to MOB's products." Mot. 14. But the TDRA expressly provides that dilution is actionable "regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1). Relatedly, MOB argued that Louis Vuitton's witnesses could not point "to any facts demonstrating that LV's brand was any less iconic as a result of MOB's products." Mot. 14. That may have been a valid argument *before* Congress passed the TDRA, but under the TDRA, plaintiffs need only show that a use is "*likely* to cause dilution." 15 U.S.C. § 1125(c)(1) (emphasis added); *see also* Maltbie Decl. ¶ 20. Louis Vuitton had no obligation to proffer facts unnecessary to establish its dilution claim.

*Fifth*, MOB posits that Louis Vuitton's claim was untenable because Louis Vuitton did not retain an expert. MOB does not, however, identify any case in which a court held that a party's choice not to retain an expert caused its position to be objectively unreasonable. *Cf. Chizmar v. Acco Brands Corp.*, No. 14-cv-2181, 2015 WL 4388326, at *2 (S.D.N.Y. July 17, 2015) (rejecting argument that failure to secure expert testimony made patent infringement claim "exceptional"). Congress certainly did not require parties to hire experts to assist courts in evaluating the statutory blurring factors. *See* 15 U.S.C. § 1125(c)(2)(B). Although MOB argues that because Louis Vuitton did not retain an expert, it had "[n]o evidence" and no "facts to bring forth to support its claims" (Mot. 15), that is simply incorrect for at least two reasons:  (a) It is black-letter law that surveys are not required in trademark infringement cases, and, indeed, scholars have recognized that there is no "survey design that directly measures likelihood of dilution (as opposed to actual dilution)."[8] (b) Even without an expert survey, Louis Vuitton proffered evidence of MOB's intentions, MOB's advertisements, and the reactions of consumers to MOB's products, all of which were probative as to dilution. *See* ECF No. 65, at ¶¶ 53-85.

*Sixth*, MOB inappropriately relies on comments made by the panel during oral argument before the Second Circuit. *See* Mot. 1-2, 3, 6, 14, 21. Courts have rejected reliance on questions posed during oral argument in comparable contexts because of the potential to undermine the purpose of holding oral argument in the first place. "If such comments were routinely cited as precedent, the consequence would be to chill the unfettered intellectual sparring that takes place during argument." *Convolve, Inc. v. Compaq Computer Corp.*, No. 00-cv-5141, 2007 WL 415145,

---

[8] *See Trademark & Deceptive Advertising Surveys: Law, Science, & Design* 159-160 (Shari Seidman Diamond & Jerre B. Swann eds. 2012); *Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc.*, 87 F.3d 654, 661 (4th Cir. 1996) (citations omitted) ("[S]urvey evidence is not necessarily the best evidence of actual confusion and 'surveys are not required to prove likelihood of confusion.'"); *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 339 (S.D.N.Y. 2010*)* (finding plaintiff likely to succeed on federal trademark infringement and New York state law infringement claims without a consumer confusion survey).

12

at *2 (S.D.N.Y. Feb. 7, 2007). Relying on those statements would also be misleading because "[j]udicial statements during argument are often intended to be provocative and do not necessarily reflect the considered opinion of the speaker, let alone a formal ruling of the court." *Id.* Indeed, "[m]any judges use oral argument as an opportunity to play devil's advocate to focus the argument, or to test the extreme implications of a litigant's position." *Mgmt. Inv. Funding Ltd. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 93-cv-3004, 2000 WL 145461, at *5 n.6 (S.D.N.Y. Feb. 9, 2000), *overruled on other grounds sub nom. Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153 (2d Cir. 2000). Thus, it is well settled that "[a] court speaks authoritatively . . . only in its opinions, orders, and judgments." *Id.* at *5.[9]

### 2. Louis Vuitton's trademark infringement claim was objectively reasonable.

MOB next argues, briefly, that Louis Vuitton's position with respect to its trademark infringement claim was "legally untenable" because "not a single one of the *Polaroid* factors weighed in LV's favor."[10] Mot. 11-12. But as with Louis Vuitton's trademark dilution claim, the Court's analysis was heavily influenced by its parody finding and relied again on *Haute Diggity Dog*. *See* SJ Order 20 ("Louis Vuitton's infringement claims fail for much the same reasons that its dilution claims failed."). And as with the trademark dilution claim, it was reasonable for Louis Vuitton to argue that it met the *Polaroid* factors (notwithstanding any claim of parody) because

---

[9] MOB also argues that it presented "multiple additional grounds which this court did not reach." Mot. 11. But because the Court never assessed the merits of those arguments, the mere fact that MOB asserted them has no bearing on whether Louis Vuitton's position was objectively reasonable—and Louis Vuitton maintains that each additional ground to which MOB refers is meritless, as explained in its summary judgment briefing. ECF No. 90; ECF No. 99.

[10] As with its trademark dilution claims, Louis Vuitton was not required to prove any economic loss, 15 U.S.C. § 1114(a), and neither expert testimony nor survey evidence is required to prove infringement. As MOB concedes, failing to offer a survey is at best "evidence that the likelihood of confusion cannot be shown"; it is not dispositive as to that showing, nor does it demonstrate that the claim is objectively unreasonable. Mot. 15.

under Second Circuit precedent, "a strong mark may nonetheless weigh against the likelihood of

confusion *in the limited circumstance* where the defendants' mark is a clear parody and there is

widespread familiarity with the parody." *Starbucks*, 588 F.3d at 116 (emphasis added).

This is not a case where, for example, plaintiff had no basis to assert that it had a valid

mark, which is the kind of objective unreasonableness that courts look for in assessing fees. *See*

*Cross Commerce Media*, 2014 WL 7323419, at *3 (counterclaim plaintiff's position "lacked any

merit" because "[i]t never had a protectable mark in the word 'collective,' and indeed never made

any real effort to demonstrate otherwise"); *VIDIVIXI*, 2016 WL 4367972, at *4 ("plaintiffs pursued

baseless claims such as trademark remedies on a void trademark filing"). The Court's analysis of

the *Polaroid* factors shows that Louis Vuitton's position was anything but objectively

unreasonable—Louis Vuitton plainly owns the marks and had colorable arguments on most, if not

all, of the *Polaroid* factors. *See* SJ Order 20-21 (noting that "it is undisputed (indeed, indisputable)

that Louis Vuitton's marks are famous," and finding that the first factor is at most neutral); *id.* at

21 (noting that "[t]here are, to be sure, similarities – intended similarities – between" MOB's

products and Louis Vuitton's marks); *id.* at 23 (agreeing that "MOB intentionally designed its totes

to evoke Louis Vuitton's bags, as to which there is – and can be – no dispute"); *id.* at 24 ("the

seventh factor . . . is at best a wash"). MOB provides no support for the proposition that a case is

"exceptional" or that a plaintiff's position should be considered objectively unreasonable merely

because all of the *Polaroid* factors favor the defendant (unlike here), much less in cases like this

one where the Court ultimately concluded that several of the *Polaroid* factors were neutral. Here,

where Louis Vuitton at least asserted non-frivolous arguments on the *Polaroid* factors (ECF No.

86, at 21-25), its position cannot be considered "objectively unreasonable."[11]

**B.      Louis Vuitton litigated this case in an objectively reasonable manner.**

Under *Octane Fitness*, a case may be "exceptional" when it is litigated in an "unreasonable manner." 134 S. Ct. at 1756. But truly extreme or egregious misconduct is required. *Beastie Boys*, 112 F. Supp. 3d at 46 ("courts in this District typically award Lanham Act fees based on extreme misconduct during litigation"); *Small*, 2014 WL 5463621, at *3-4 ("most cases awarding fees continue to involve substantial litigation misconduct" (citing cases)); *see also Gametek LLC v. Zynga, Inc.*, No. 13-cv-2546, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) ("post-*Octane* decisions awarding fees have concerned egregious behavior"). Courts have awarded fees based only on severe misconduct, including asserting claims "for an 'improper purpose,'" *Microban Prods. Co. v. API Indus., Inc.*, No. 14-cv-41, 2014 WL 1856471, at *23 (S.D.N.Y. May 8, 2014); engaging in "outrageously deceptive litigation tactics" and demonstrating a "complete lack of respect for the judicial process," *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 251 (S.D.N.Y. 2013); engaging in egregious discovery misconduct, such as taking the position that a witness "did not have relevant information when she clearly did" and failing to maintain that witness's documents, *Cross Commerce*, 2014 WL 7323419, at *3; engaging in "bald action[s] of self-help," *VIDIVIXI*, 2016 WL 4367972, at *4; "frustrat[ing] the litigation process by failing to participate . . . [and] obstruct[ing] the plaintiffs and caus[ing] unnecessary delay," *Sprint Commc'ns Co. v. Chong*, No. 13-cv-3846, 2014 WL 6611484, at *5 (S.D.N.Y. Nov. 21, 2014); or "perpetrat[ing] fraud and spoliation, pursu[ing] counterclaims grounded in that fraud, and . . .

---

[11] MOB cites Louis Vuitton's explanation (Mot. 14) that in trademark dilution cases, as distinct from trademark infringement cases, confusion is irrelevant, but that explanation simply reflects the TDRA's text—it is not an "admi[ssion] that consumers were not confused." *See* 15 U.S.C. § 1125(c)(3). It was reasonable to press claims that MOB's use was either infringing or dilutive; plaintiffs may maintain alternative theories of liability. *E.g.*, Fed. R. Civ. P. 8(d)(2).

continu[ing] to sell the[ ] infringing merchandise throughout th[e] litigation, all with the intent to deceive and profit at the expense of the administration of justice." *River Light*, 2015 WL 3916271, at *10.

Louis Vuitton did not engage in anything approaching egregious or extreme litigation misconduct. To the contrary, Louis Vuitton gave MOB every opportunity to avoid litigation in the first place. *See* ECF No. 65, at ¶ 86; Maltbie Decl. ¶¶ 10-19. And after it became clear that the dispute could not be resolved amicably, Louis Vuitton carefully avoided relying on its greater financial resources in litigating this case by: coordinating with opposing counsel, *see* Maltbie Decl. ¶ 22; ECF Nos. 36, 43 (extending discovery deadlines through consent); propounding reasonable and limited discovery requests, including only 13 interrogatories and 46 document requests (in contrast to MOB's 100 document requests), Shapiro Decl. ¶ 3; incurring the additional expense to process MOB's non-compliant document production rather than filing a motion, *see* ECF No. 26, at 5, Shapiro Decl. ¶ 4; initially seeking only one deposition, and adding one more deposition of a fact witness only when its necessity was revealed during the first deposition, Shapiro Decl. ¶ 5; conducting the depositions in Los Angeles where MOB's witnesses and counsel live, *id.*; and requesting no unilateral time extensions, *id.* ¶ 9. Louis Vuitton's reasonable conduct in this litigation stands in stark contrast to the egregious misconduct in cases where courts awarded fees.

Although MOB cites a purported "litany of litigation abuses" that "amounts to vexatious litigation" (Mot. 16, 17), none of the purported "abuses" constituted misconduct, let alone misconduct that could be characterized as extreme or egregious.

### 1.    Louis Vuitton did not mischaracterize the record or attempt to mislead the Court in any respect.

MOB contends that "LV mischaracterized record evidence" by "misquot[ing]" the record. Mot. 15. Not true. This is merely an attempt to recover fees as punishment for zealous advocacy:

MOB points only to a dispute over the correct interpretation of testimony, but Louis Vuitton presented an interpretation that was well within the bounds of permissible advocacy. The example MOB cites (Mot. 15-16) shows only that MOB and the Court disagreed with Louis Vuitton's characterization of the facts, and courts disagree with one party's characterization of the facts in nearly every case decided on summary judgment.

In a similar vein, citing Louis Vuitton's Statement of Facts, MOB maintains that Louis Vuitton "attempted to mislead the Court by arguing it previously produced a 'bag-on-bag' design . . . , yet failed to produce any substantive documents illustrating any such design." Mot. 17. MOB is wrong on both counts. Louis Vuitton's Statement of Facts notes that the Cabas Monogram Eponge bag "included, on one of its two large exterior surfaces, an artistic rendering of a Louis Vuitton handbag." ECF No. 65, at ¶ 31. The bag *did* include such a rendering, and Louis Vuitton cited and produced a photograph showing that it did, both in its statement of facts and in its appellate brief:



*See* ECF No. 66-23; *My Other Bag*, No. 16-241, Dkt. No. 66, at 9 (2d Cir. May 16, 2016). That MOB disputed Louis Vuitton's characterization of that bag (suggesting "the rendering *appears* to mimic a pocket," ECF No. 92, at ¶ 31 (emphasis added)) does not amount to an attempt by Louis Vuitton to "mislead" the Court.

2.    **Louis Vuitton did not file any improper motions or otherwise multiply the cost of litigation.**

Citing the motions Louis Vuitton filed with its summary judgment motion, MOB asserts that Louis Vuitton "multiplied its arguments" by filing "groundless motions." Mot. 16-17. MOB is incorrect.

There is no reasonable dispute that motions to strike are procedurally proper at the summary judgment stage. *E.g.*, *Epstein v. Kemper Ins. Cos.*, 210 F. Supp. 2d 308, 313 (S.D.N.Y. 2002); *Larouche v. Webster*, 175 F.R.D. 452, 455 (S.D.N.Y. 1996). The Court denied Louis Vuitton's motions as moot, not as improper, because the Court "did not rely on any of the disputed submissions in resolving the parties' summary judgment motions." SJ Order 28. And in response to the motions, MOB was required only to respond with a combined ten-page memorandum of law. ECF No. 104.

Louis Vuitton's response to MOB's Rule 56.1 Statement was also appropriate. Pages 1-4 of that response contained Louis Vuitton's general objections to MOB's Rule 56.1 Statement, and nothing in this Court's local rules prohibits such objections. *See* L.R. 56.1. Pages 10-14 of Louis Vuitton's response contained its specific objections to MOB's proposed statements of fact— objections authorized by Federal Rule of Civil Procedure 56(c)(2) and Local Rule 56.1(b)— supported in each instance by "citation to evidence which would be admissible." L.R. 56.1(d).

Although MOB also contends that Louis Vuitton "evaded the Court's page limits by squeezing extra text into its opposition to MOB's motion for summary judgment" (Mot. 17), trial counsel had been (incorrectly) informed by local counsel that 24-point font spacing—the spacing to which MOB refers—qualified as "double-spaced" under Local Rule 11.1(b)(3). Shapiro Decl. ¶ 8. In any event, no court has awarded fees under the Lanham Act or the Copyright Act for noncompliance with line spacing rules. To the extent MOB was concerned about the pagination

issue, the correct response would have been to seek a remedy *at the time*, when the Court could have considered means to redress the line spacing issue, such as by awarding MOB extra pages to respond or by requiring reimbursement for the incremental cost of responding to the additional argument—as the cases cited by MOB demonstrate.[12] A fees motion at the end of the litigation is not the appropriate time to raise this issue. And it does not somehow transform this case into an "exceptional" case under the Lanham Act.

### C.   Louis Vuitton did not assert its claims for an improper purpose.

The only other potential basis for concluding that this case is exceptional would be to find that Louis Vuitton's motive was somehow improper, such that deterrence is necessary. *See Octane Fitness*, 134 S. Ct. at 1756 & n.6. But it is black-letter law that trademark owners have a duty to defend their marks. *See, e.g., Malaco Leaf, AB v. Promotion In Motion, Inc.*, 287 F. Supp. 2d 355, 364-65 (S.D.N.Y. 2003) (owner's trademark "may become generic, meaning commonly used and not entitled to protection, as a result of the trademark owner's failure to police it") (citation and quotation marks omitted); *see also Hermes Intern. v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 110 (2d Cir. 2000) (rejecting knock-off manufacturer's argument that "Hermés abandoned its marks by failing to police infringement of those marks" because "Hermés vigorously pursued manufacturers of knockoff goods in an effort to protect its mark"). If a trademark owner does not "take reasonable efforts to police infringements of his mark," "the mark is likely to be deemed abandoned, or to become generic or descriptive (and in either event be unprotectable)." *Rockwell*

---

[12] *See Emanuel v. Griffin*, No. 13-cv-1806, 2015 WL 1379007, at *18 (S.D.N.Y. Mar. 25, 2015) (court "would have been on firm ground ordering Plaintiffs' counsel to reimburse Defendants for the fees and costs associated with the extra work that his deficient filings required in preparing their reply memoranda"); *Varda v. Ins. Co. of N. Am.*, 45 F.3d 634, 640 (2d Cir. 1995) (denying costs on appeal to a successful respondent who "brazenly used textual footnotes to evade page limits") (internal quotation omitted); *see also CafeX Comm'cs, Inc. v. Amazon Web Servs., Inc.*, No. 17-cv-1349, ECF No. 43, at 2 (S.D.N.Y. Mar. 30, 2017) (sanction of $1,048.09 for the cost of preparing a compliant memorandum).

*Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 179 (7th Cir. 1991); *see also* 15 U.S.C. § 1127. Thus, if this Court were to find that Louis Vuitton's attempt to prevent the use of its intellectual property by others renders this case "exceptional," trademark owners will have to choose between defending their marks (and risking punitive attorney's fee awards) or allowing infringers and diluters to diminish or deplete altogether the value of the marks.

The fee-shifting provision in the Lanham Act was not designed to whipsaw trademark owners in this fashion. In fact, Congress's primary purpose in providing for the recovery of fees in exceptional cases was *to encourage enforcement*. S. Rep. No. 93-1400, 1974 WL 11685, 1974 U.S.C.C.A.N. 7132, 7136 (Dec. 17, 1974) (explaining that trademark owners "should, in the interest of preventing purchaser confusion, be encouraged to enforce trademark rights"). Encouraging enforcement was necessary to "discourag[e]" the "[d]eliberate and flagrant infringement of trademarks . . . in view of the public interest in the integrity of marks as a measure of quality of products." *Id.* Congress also intended to "permit prevailing defendants to recover attorney fees in exceptional cases" but only to "provide protection against unfounded suits brought by trademark owners *for harassment and the like*." *Id.* (emphasis added). Here, where it is undisputed that Louis Vuitton was asserting valid and enforceable IP rights, that concern is absent.

Indeed, had Congress intended to put trademark owners to the choice of defending their marks or avoiding payment of attorney's fees for pursuing unsuccessful litigation, it would have simply provided that the prevailing party shall be awarded attorney's fees. Instead, Congress required that fees be awarded only in "exceptional cases," not simply where a trademark owner loses—even a trademark owner that, because of the fame and cachet of its marks, frequently has to litigate to defend those marks. Simply put, awarding fees here would deter not only Louis Vuitton but all trademark owners from defending their trademarks, a result plainly at odds with

20

Congress's purpose.

Thus, MOB is simply incorrect to compare Louis Vuitton to a patent troll. Unlike trademark owners, patent owners do not risk losing their patent altogether for lack of enforcement. *See* 35 U.S.C. §§ 261, 282. In contrast with patent trolls, Louis Vuitton makes products that consumers want, and uses the trademark to make the source of those products clear to consumers. Thus, litigation is not Louis Vuitton's business—it is the cost of doing business. *See* Maltbie Decl. ¶¶ 5-8.

In apparent recognition of the weakness of its arguments under the factors set forth in *Octane Fitness*, MOB instead focuses much of its brief on trying to characterize Louis Vuitton as a "trademark bully." MOB's argument, however, is both legally and factually incorrect. First, as a legal matter, MOB cites no cases that have ever considered the litigation history of a major brand like Louis Vuitton and found—based on a high-level description of prior cases that were resolved in different courts and countries—that the brand's overall enforcement record rises to a level of unreasonableness sufficient to justify an award of fees. If this Court were to entertain MOB's argument, it will open the floodgates to satellite litigation over the trademark owner's enforcement history in every case where a defendant prevails, requiring a careful review of the brand owner's enforcement history over years or even decades, as well as a factual and legal analysis of prior cases like those cited by MOB here. Nothing in the text of the Lanham Act or any of the cases that MOB cites suggests that actions taken by a major brand to enforce its rights in other contexts—in many cases in other countries—can, by itself, render the present case "extraordinary" under the Lanham Act.

Furthermore, as a factual matter, there is also no basis for MOB's contention that Louis Vuitton has enforced its rights improperly in other contexts. As noted previously, there is no

question that the trademarks and copyrights that Louis Vuitton asserted here are valid and enforceable. Courts routinely conclude that Louis Vuitton has enforced the same IP rights at issue here appropriately. *See* Maltbie Decl. ¶¶ 5, 7.[13] MOB, by contrast, has done nothing more than cherry-pick a handful of examples where Louis Vuitton did not prevail. All of these cases, however, were brought in good faith. *Id.* ¶ 21. And it would be improper for this Court to encourage the relitigation of matters decided in other jurisdictions or (in some instances) resolved amicably.

Critically, none of the cases cited by MOB suggested that Louis Vuitton did not own the marks it was asserting; that it was asserting marks as a business strategy; that it litigated in an unreasonable or financially burdensome manner; or that its conduct was egregious or extreme. Indeed, several cases settled or were resolved before litigation ensued, demonstrating Louis Vuitton's reasonable approach to protecting its valuable intellectual property. *See id*. Louis Vuitton takes seriously its obligation to protect consumers from being confused or defrauded into buying products where no affiliation or association with Louis Vuitton exists.

Nor is it an answer to point to the relative size of the parties in either this case or (some of)

---

[13] *See also Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013) (affirming judgment of $336,206.60 to Louis Vuitton); *LY USA*, 676 F.3d 83 (affirming award to Louis Vuitton of $500,000 in fees and $3 million in damages); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936 (9th Cir. 2011) (affirming judgment in favor of Louis Vuitton and remanding with instructions to award $10,800,000 in damages); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, No. 13-cv-5242, ECF No. 168 (S.D.N.Y. Oct. 19, 2015) (entering consent judgment and permanent injunction in favor of Louis Vuitton); *Louis Vuitton Malletier, S.A. v. Abags.co.UK*, No. 14-cv-60288, 2015 WL 11197741 (S.D. Fla. Feb. 27, 2015) (awarding Louis Vuitton $6,732,000 in damages); *Hyundai*, 2012 WL 1022247 (granting Louis Vuitton summary judgment on trademark dilution claims); *Malletier v. Burlington Coat Factory Warehouse Corp.*, No. 04-cv-2644, ECF No. 116 (S.D.N.Y. Nov. 16, 2007) (entering consent judgment and permanent injunction in favor of Louis Vuitton); *Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347 (S.D.N.Y. 2010) ($102,542.90); *Louis Vuitton S.A. v. Downtown Luggage Ctr.*, 706 F. Supp. 839 (S.D. Fla. 1988) ($19,082.73); *Louis Vuitton, S.A. v. After Dark Boutique*, 680 F. Supp. 1507 (N.D. Fla. 1988) ($24,994.25); *Louis Vuitton, S.A. v. EEJ Disc.*, No. 87-cv-7226, 1988 WL 74443 (N.D. Ill. July 12, 1988) ($8,380.93); *Louis Vuitton S.A., Gucci Shops, Inc. v. Bag Ctr.*, No. 85-cv-5675, 1986 WL 2611 (N.D. Ill. Feb. 21, 1986) ($7,923.28).

the others MOB cites. To the contrary, several of the alleged "victims," such as Warner Brothers film studio and the University of Pennsylvania, had more than sufficient resources to seek remediation if Louis Vuitton had in fact asserted a claim in bad faith. Furthermore, a dilution claim is only available to a nationally famous mark in the first place. *See* 15 U.S.C. § 1125(c)(1) & (2)(A). If this Court were to find that having scale sufficient to sustain a nationally famous mark justifies an award of fees, it would undermine the statutory basis of the dilution claim.

For all of these reasons, an award of attorney's fees in this case would be a grave error of both fact and law.

## II.   AWARDING FEES UNDER THE COPYRIGHT ACT IS NOT WARRANTED.

As the Supreme Court recently explained, "objective reasonableness" is "an important factor in assessing fee applications" under the Copyright Act, even if it is "not the controlling one." *Kirtsaeng*, 136 S. Ct. at 1988. Other factors include the same considerations as in the trademark context. *See id.* at 1985 (citing *Fogerty*, 510 U.S. at 519); *Octane Fitness*, 134 S. Ct. at 1756 (comparing "exceptional cases" provision of the Patent Act, 35 U.S.C. § 285 to 17 U.S.C. § 505). Fees might be warranted "because of a party's litigation misconduct" or "to deter *repeated* instances of copyright infringement or overaggressive assertions of copyright claims." *Kirtsaeng*, 136 S. Ct. at 1989 (citing *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 593-595 (6th Cir. 2008) (affirming fee award against copyright holder who filed "hundreds of suits on an overbroad legal theory")) (emphasis added); *see also BWP Media USA, Inc. v. Mishka NYC LLC*, No. 13-cv-4435, 2016 WL 8309676, at *3 (E.D.N.Y. Dec. 28, 2016), *report & rec. adopted sub nom. BWP Media USA Inc. v. Death Adders Inc.*, No. 13-cv-4435, 2017 WL 880855 (E.D.N.Y. Mar. 3, 2017) (even litigation conduct that was "far from ideal" did not merit attorney's fees). But court typically refuse to award fees except where the outcome is clear on its face, such as where a defendant has engaged in "flagrant infringement," *and* where that party forces the other party to

incur unnecessary costs litigating that issue, such as by refusing to concede liability "until the brink of trial." *See*, *e.g.*, *Beastie Boys*, 112 F. Supp. 3d at 42.

MOB does not seriously dispute that the copyrights that Louis Vuitton asserted were valid and enforceable. ECF No. 92, at ¶ 14. The question whether MOB's use of Louis Vuitton's copyright constitutes fair use under the Supreme Court's decision in *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994), moreover, is a deeply factual "case-by-case" inquiry that requires the application of a statutory four-factor test and defies "bright-line rules." As the Supreme Court made clear, "[t]he fact that parody can claim legitimacy for some appropriation does not, of course, tell either parodist or judge much about where to draw the line." *Id.* at 578-81; *id.* at 599 (Kennedy, J., concurring) ("doubts about whether a given use is fair should not be resolved in favor of the self-proclaimed parodist"). Louis Vuitton could not have predicted this Court's conclusion that the use here was excusable parody—particularly in the absence of similar cases involving the use of imitation copyright patterns on handbags.[14] Furthermore, as explained previously, Louis Vuitton conducted this litigation in an objectively reasonable fashion (*see supra* Part I.B), and its motivation was proper (s*ee supra* Part I.C). MOB argues that Louis Vuitton "took additional unreasonable actions specific to its copyright claims" (Mot. 23), but MOB is wrong.

MOB first cites Louis Vuitton's argument in its appellate brief that this Court "ignored the rule . . . that [e]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." Mot. 23. MOB asserts that the Supreme Court "overturned this so-called 'rule' 23 years ago in *Campbell*." *Id.* Presumably, this would come as a surprise to the more-than-dozen courts that have cited, as authoritative, the

---

[14] *Cf. Salinger v. Colting*, 607 F.3d 68, 83 (2d Cir 2010) (affirming finding that claim of parody was "simply not credible"); *Castle Rock Ent. Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 142-143 (2d Cir. 1998) (also rejecting parody claim).

very same statement from *Harper & Row* since *Campbell* was decided.[15] MOB may debate the strength of that principle given *Campbell*'s comment on it, but that it exists seems an unremarkable proposition; Louis Vuitton's citing it thus hardly qualifies as an "unreasonable actio[n]." Mot. 23.

MOB also cites Louis Vuitton's summary judgment arguments, contending that they "rested on conclusory statements instead of contending with MOB's substantial similarity analysis and the four fair use factors," and that Louis Vuitton "spent only one paragraph attempting to rebut defendant's fair use argument." Mot. 23-24. But MOB is not entitled to fees because Louis Vuitton's briefs did not conform to MOB's subjective views on how to present arguments and how to allocate space in responding to the various points raised by MOB.

## III.    MY OTHER BAG'S REQUESTED HOURLY RATES ARE UNREASONABLE.

Even if a fees award were appropriate—and it is not—MOB seeks manifestly unreasonable rates. The "reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). The "touchstone of the doctrine" is "that district courts should award fees just high enough to attract competent counsel." *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 176 (2d Cir. 2009) (internal quotation marks omitted).

In an unsupported attempt to secure a windfall, MOB seeks fees well in excess of that

---

[15] *Balsley v. LFP, Inc.*, 691 F.3d 747, 760 (6th Cir. 2012); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1176 (9th Cir. 2012); *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008); *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1113 (9th Cir. 1998); *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 994 (9th Cir. 1998); *Calibrated Success, Inc. v. Charters*, 72 F. Supp. 3d 763, 771 (E.D. Mich. 2014); *Rivera v. Mendez & Compania*, 988 F. Supp. 2d 159, 170 (D.P.R. 2013); *Rosebud Ent., LLC v. Prof'l Laminating LLC*, 958 F. Supp. 2d 600, 606 (D. Md. 2013); *Designer Skin, LLC v. S & L Vitamins, Inc.*, 560 F. Supp. 2d 811, 823 (D. Ariz. 2008); *Antioch Co. v. Scrapbook Borders, Inc.*, 291 F. Supp. 2d 980, 988 (D. Minn. 2003); *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 259 F. Supp. 2d 531, 536 (N.D. Tex. 2003); *Sony Comput. Entm't Am., Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 989 (N.D. Cal. 1999); *Disney Enters., Inc. v. VidAngel, Inc.*, No. 16-cv-04109, 2016 WL 8292206, at *9 (C.D. Cal. Dec. 12, 2016); *Minka Lighting, Inc. v. Bath Kitchen Decor, LLC*, No. 13-cv-02370, 2015 WL 12743863, at *3 (C.D. Cal. Feb. 13, 2015); *Erickson Prods., Inc. v. Kast*, No. 13-cv-05472, 2014 WL 5474741, at *2 (N.D. Cal. Oct. 28, 2014); *Dombrowsky v. Hill*, No. 11-cv-3048, 2013 WL 12100113, at *9 (N.D. Ga. July 23, 2013).

amount. *See Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001) ("in no event should the fees awarded amount to a windfall for the prevailing party"). At some point after it filed its initial motion for fees, MOB concocted the argument that it should recover rates substantially higher than actually charged and initially requested. In MOB's initial fee application, it requested $424,266.94. ECF No. 134-4, at 22. Multiplying the hours billed since then by the rates MOB initially requested (plus additional declaration costs), MOB's attorneys have since billed $243,204.13. Yet instead of requesting $667,471.10 ($424,266.94 plus $243,204.13), MOB requests $802,939.05—an increase of $135,468. The difference is explained by the substantial and unjustified increases in the rates that MOB now requests. *Compare* Mot. 29 *with* ECF No. 134-4, at 21 (e.g., requesting $625/hr for Korzenik after initially requesting $450/hr).

The rates MOB previously requested were based on what MOB, a reasonable, paying client, had actually agreed to pay. *See* ECF No. 127, at 1 (New York attorneys have "charged MOB fixed rates of $450 per hour for partners . . . and $350 per hour for associates"); ECF No. 134-4, at 21 (requesting $450 for Korzenik and $350 for Keegan). But now MOB seeks "an award at full market billing rates for its New York attorneys, even though those attorneys as a matter of course"—and in this very case—"charge lower rates" than the prevailing market rate. Mot. 26. MOB's fee agreements, though, are prima facie evidence of the reasonable hourly rate in this case. "The actual billing arrangement certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded." *Crescent Publ'g*, 246 F.3d at 151; *Presse v. Morel*, 645 F. App'x 86, 87 (2d Cir. 2016).[16] And MOB's submissions make clear that its counsel have charged MOB lower rates in return for non-monetary returns such as reputational and experiential

---

[16] *See also Parrish v. Sollecito*, 280 F. Supp. 2d 145, 170 (S.D.N.Y. 2003) ("In the absence of language in a retainer agreement indicating that the rates referred to were in some way reduced in light of the financial circumstances of the plaintiff, or for whatever reason not the normal market rate the attorney[s] receive, the retainer agreement is an appropriate reflection of the reasonable, and expected hourly rate."). MOB identifies no such language.

benefits, including their "good business relationship with the client," their "believing firmly in the case," their "believing MOB's cause was worthy, in the public interest as well as its own," and their acting "in defense of the underlying free speech principles at stake." ECF No. 144, at 2; ECF No. 149, at 2; ECF No. 152, at 3.[17] A reasonable hourly rate must reflect that MOB was apparently "able to negotiate with [them], using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Arbor Hill*, 522 F.3d at 190.

Aside from exceeding the agreed-upon fees, the rates that MOB requests for its out-of-district attorneys are unreasonable for additional reasons. MOB "seek[s] an award of attorney fees at hourly rates exceeding the normal billing rates of its suburban Los Angeles attorneys . . . , which are lower than the hourly rates typical of the rates for lawyers in Manhattan." Mot. 26. But "[t]o the extent the reasonable hourly rate for an out-of-district lawyer is less than the billing rate in the district where the court sits, the *lower* rate should apply." *Ryan v. Allied Interstate, Inc.*, 882 F. Supp. 2d 628, 633 (S.D.N.Y. 2012) (emphasis added).[18] Under the forum rule, expensive out-of-district attorneys will have their fees *reduced* to ensure that fees are "just high enough to attract competent counsel." *Simmons*, 575 F.3d at 176; *see In re AOL Time Warner S'holder Deriv. Litig.*, No. 02-cv-6302, 2010 WL 363113, at *13 (S.D.N.Y. Feb. 1, 2010) (the forum rule "is consistent

---

[17] MOB's assertion that its attorneys "[a]s a practical matter . . . have been providing pro bono legal services" (Mot. 28) is misleading: Its attorneys have billed MOB over $500,000. What MOB means to say is that it has not yet paid its attorneys in full.

[18] *E.g.*, *United States ex rel. Bisk v. Westchester Med. Ctr.*, No. 06-cv-15296, 2016 WL 8254797, at *7 (S.D.N.Y. Aug. 5, 2016) (awarding only lower, out-of-district rates); *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570, 2015 WL 6666703, at *5 (S.D.N.Y. Oct. 28, 2015), *report & rec. adopted*, 2015 WL 9255560 (S.D.N.Y. Dec. 18, 2015) (same); *MWH Int'l, Inc. v. Inversora Murten, S.A.*, No. 11-cv-2444, 2013 WL 3717492, at *4 (S.D.N.Y. July 16, 2013) (same); *see also Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1350 (Fed. Cir. 2008); *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999). *Arbor Hill* is not to the contrary; the court there noted that it has "urged district courts where appropriate to employ out-of-district rates in calculating the fee due." *Id.* at 193. The court also explained that "[w]ere a strict forum rule the settled law of this circuit, [it] could not have used a lower hourly rate than the hourly rate prevailing in the district where the district court sat to calculate the presumptively reasonable fee" in an earlier case. *Id.* at 193 n.8.

27

with the contemporary preference that fee awards mimic the market, with a hypothetical 'thrifty,' empowered client as the measuring proxy" and "the Second Circuit has used this doctrine to limit fees"). MOB's request thus turns upside down the animating principle of the forum rule that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," *Arbor Hill*, 522 F.3d at 190, and it would create "an unintended windfall," *AOL Time Warner*, 2010 WL 363113, at *13.[19] A "reasonable, paying client" (*Arbor Hill*, 522 F.3d at 193) would not pay New York rates to suburban Los Angeles attorneys.

In an effort to maximize fees, MOB also seeks a rate for Paul Levy, a D.C. attorney brought in solely for the fee litigation (ECF No. 134-4, at 20), that is higher than the New York rates it seeks for everyone else. *See* Mot. 28. But MOB has not—and could not have—provided any basis to conclude that the prevailing rate in D.C. is higher than that in Manhattan, much less make the "particularized showing" required to award a higher, out-of-district rate under the forum rule. *See Simmons*, 575 F.3d at 176.

## CONCLUSION

For the foregoing reasons, this Court should deny MOB's petition for attorney's fees. In this case, Louis Vuitton was attempting—in good faith—to enforce its trademark and copyright properties, properties that are indisputably valuable. That Louis Vuitton must take steps to protect its valuable marks is similarly indisputable, and it did so here in a reasonable and measured fashion, even if it did not ultimately succeed—an outcome it could not have predicted based on existing precedent. This is not the exceptional case where purported rights are asserted to harass; it is a case where undisputed rights were asserted to protect against diminishment and dilution. Holding

---

[19] Unlike the D.C. and Federal Circuits, the Second Circuit has identified, but not decided, this issue. *K.L. v. Warwick Valley Cent. Sch. Dist.*, 584 F. App'x 17, 19 n.3 (2d Cir. 2014); *see Avera*, 515 F.3d at 1350 (adopting lower-rate exception to forum rule); *Davis Cty.*, 169 F.3d at 758 (same).

otherwise, and awarding fees, would frustrate Congress's purpose by deterring owners of valuable

marks everywhere from protecting them.


Dated: June 12, 2017                           By: /s/ Howard S. Hogan

Robert E. Shapiro (admitted *pro hac vice*)      Theodore B. Olson (*pro hac vice* forthcoming)
Wendi E. Sloane (admitted *pro hac vice*)        Howard S. Hogan (HH-7995)
Sharon E. Calhoun (admitted *pro hac vice*)      Amir C. Tayrani (*pro hac vice* forthcoming)
Hannah Y. Jurowicz (admitted *pro hac vice*)     Christopher J. Baum (*pro hac vice* forthcoming)
BARACK FERRAZZANO                                GIBSON, DUNN & CRUTCHER LLP
KIRSCHBAUM & NAGELBERG LLP                       1050 Connecticut Avenue, N.W.
200 W. Madison Street                            Washington, D.C. 20036-5036
Suite 3900                                       Tel:  (202) 955-8500
Chicago, IL  60606                               tolson@gibsondunn.com
(312) 984-3100 (phone)                           hhogan@gibsondunn.com
(312) 984-3150 (facsimile)                       atayrani@gibsondunn.com
rob.shapiro@bfkn.com                             cbaum@gibsondunn.com
wendi.sloane@bfkn.com
sharon.calhoun@bfkn.com
hannah.jurowicz@bfkn.com


*Attorneys for Louis Vuitton Malletier, S.A.*