USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/8/2018_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                     :

LOUIS VUITTON MALLETIER, S.A.,       :

                        Plaintiff,    :         14-CV-3419 (JMF)

                              :

        -v-              :       OPINION AND ORDER

                              :

MY OTHER BAG, INC.,                :

                              :

                     Defendant.    :

                              :
----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      In this action, familiarity with which is assumed, Louis Vuitton Malletier, S.A. ("Louis Vuitton") brought claims against My Other Bag, Inc. ("MOB") for trademark infringement, trademark dilution, and copyright infringement. Louis Vuitton's claims related to MOB's production and sale of canvas tote bags parodying Louis Vuitton's iconic handbags by evoking "the classic 'my other car . . . ' novelty bumper stickers." *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.* ("*MOB Dist. Ct. Op.*"), 156 F. Supp. 3d 425, 430 (S.D.N.Y. 2016). On January 6, 2016, the Court issued an Opinion and Order granting MOB's motion for summary judgment in its entirety. *See id*. The Second Circuit affirmed, *see Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 674 F. App'x 16 (2d Cir. 2016) (summary order), and the Supreme Court later denied Louis Vuitton's petition for the writ of certiorari, *see Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 138 S. Ct. 221 (2017). MOB now moves, pursuant to the Lanham Act and the Copyright Act, for attorney's fees and costs. (Docket No. 143). For the reasons that follow, that motion is denied.

# FEES UNDER THE LANHAM ACT

Section 35(a) of the Lanham Act provides that a district court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Applying that provision, the Second Circuit has long required that a prevailing defendant in a trademark infringement case show "fraud or bad faith" to receive attorney's fees. *See Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1383 (2d Cir. 1993); *see also Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003). In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), however, the Supreme Court rejected a similar standard in interpreting parallel language in the Patent Act, 35 U.S.C. § 285. Instead, relying in part on "the Lanham Act's identical fee-shifting provision," the Court concluded that an "exceptional case," given the "totality of the circumstances," is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756 (internal quotation marks omitted). Nonexclusive factors that may inform the "exceptional case" analysis include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)); *see also Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 46 (S.D.N.Y. 2015).

Most courts that have addressed the issue since *Octane Fitness*, including courts in this District, have held that the Supreme Court's decision applies to fee applications under the Lanham Act as well. *See, e.g.*, *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (en banc) (per curiam); *Baker v. DeShong*, 821 F.3d 620, 624 (5th Cir.

2016); *Georgia-Pac. Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir.

2015); *Slep-Tone Entm't Corp. v. Karaoke Kandy Store, Inc.*, 782 F.3d 313, 317-18 (6th Cir.

2015); *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314-15 (3d Cir. 2014); *VIDIVIXI, LLC*

*v. Grattan*, No. 15-CV-7364 (JGK), 2016 WL 4367972, at *3 (S.D.N.Y. Aug. 13, 2016); *Beastie*

*Boys*, 112 F. Supp. 3d at 46. The Second Circuit, however, has not resolved that question, opting

on two occasions to defer it to another day. *See Dynamic Concepts, Inc. v. Tri-State Surgical*

*Supply & Equip. Ltd.*, No. 15-0563-CV, 2017 WL 5176230, at *8 (2d Cir. Nov. 8, 2017)

(summary order); *Penshurst Trading Inc. v. Zodax L.P.*, 652 F. App'x 10, 12 (2d Cir. 2016)

(summary order). In theory, that raises the difficult question of whether the Second Circuit's

prior precedent remains good law or whether it has been superseded by *Octane Fitness*. The

Court, however, need not answer that question because, even if the more lenient *Octane Fitness*

standard applies, it concludes that MOB's application for fees and costs should be denied. *See,*

*e.g.*, *Penshurst Trading Inc. v. Zodax LP*, No. 14-CV-2710 (RJS), 2015 WL 4716344, at *2

(S.D.N.Y. Aug. 7, 2015) ("In any event, whether or not the Court applies the slightly more

lenient standard set forth in *Octane Fitness* to Plaintiffs [sic] Lanham Act claims, the Court

concludes that this case is not 'exceptional' as necessary to justify the award of attorneys'

fees."), *aff'd*, *Penshurst*, 652 F. App'x 10.

The Court reaches that conclusion for several reasons. First, and most significantly,

although the Court (and, by all appearances, the Second Circuit) did not find this case to be a

particularly close call, it cannot say that Louis Vuitton's arguments were so objectively

unreasonable (as either a legal or factual matter) that no party "could see an opening . . . through

which the argument[s] could be squeezed." *Small v. Implant Direct Mfg. LLC*, No. 06-CV-683

(NRB), 2014 WL 5463621, at *3 (S.D.N.Y. Oct. 23, 2014) (first alteration in original) (quoting

*EON Corp. IP Holdings LLC v. Cisco Sys. Inc.*, No. 12-CV-1011 (JST), 2014 WL 3726170, at

*5 (N.D. Cal. July 25, 2014)). Each of Louis Vuitton's trademark claims — dilution by blurring

and infringement — required the application of a fact-intensive, multifactor analysis, *see* 15

U.S.C. § 1125(c)(2)(B); *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.

1961), making it difficult for Louis Vuitton to predict the likelihood of success on the merits.

Indeed, as the Court noted in its opinion granting summary judgment to MOB, the blurring

analysis is generally "subtle," *MOB Dist. Ct. Op.*, 156 F. Supp. 3d at 432 (quoting *Tiffany (NJ)*

*Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 521-22 (S.D.N.Y. 2008)), leaving room for a range of

reasonable assessments about the merits of a given argument. Similarly, in part because "normal

application of the *Polaroid* test" to trademark infringement claims "is at best awkward in the

context of parody, which must evoke the original and constitutes artistic expression," *MOB Dist.*

*Ct. Op.*, 156 F. Supp. 3d at 441 (citation and internal quotation marks omitted), Louis Vuitton's

infringement arguments cannot be viewed as "frivolous or a mere shakedown," *Penshurst*, 652 F.

App'x at 12 (internal quotation marks omitted).

It is true that the Court ultimately found that MOB's totes were "obvious[ly]" parodies of

Louis Vuitton's handbags. *MOB Dist. Ct. Op.*, 156 F. Supp. 3d at 443, 445. Notably, however,

the use of a mark as parody does not necessarily resolve either a dilution or an infringement

claim. Significantly, on the dilution front, Louis Vuitton had obtained a prior decision in this

District that arguably supported its claim. *See Louis Vuitton Malletier, S.A. v. Hyundai Motor*

*Am.*, No. 10-CV-1611 (PKC), 2012 WL 1022247 (S.D.N.Y. Mar. 22, 2012). (*See also* Docket

No. 160 ("Pl. Mem."), at 10-11). The Court ultimately found that decision both flawed and

distinguishable, *see MOB Dist. Ct. Op.*, 156 F. Supp. 3d at 436 & n.4, but it plainly supports the

notion that Louis Vuitton's arguments were not objectively unreasonable. Additionally, parody

does not even constitute a "fair use" where the trademark is used as a designation of source, *see* 15 U.S.C. § 1125(c)(3); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 106 (2d Cir. 2009), and Louis Vuitton advanced colorable (albeit unsuccessful) arguments that MOB's tote bags designated Louis Vuitton as their source. Ultimately, "[m]ere assertions that a party's arguments were without merit are generally unavailing; rather, courts are more likely to award fees where a party knew or willfully ignored evidence of his claims' meritlessness, where such meritlessness could have been discovered by basic pre-trial investigation, or where such meritlessness is made clear to the court early in the litigation." *Small*, 2014 WL 5463621, at *3. The record here does not support such a finding about Louis Vuitton or its claims.

The Court is also unpersuaded by MOB's arguments that Louis Vuitton's claims were "factually untenable" because Louis Vuitton did not introduce evidence regarding the loss of sales or diminution of its iconic status, conduct surveys demonstrating actual consumer confusion, or retain expert witnesses. (Docket No. 154 ("Def. Mem."), at 14-15). Notably, MOB does not identify (and the Court has not found) any case in which a trademark plaintiff's claims have been found objectively unreasonable for failure to retain an expert or to submit survey evidence or the like. Nor is that surprising. For one thing, the Lanham Act provides that dilution is actionable "regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1). Indeed, the purpose of the dilution by blurring analysis is to ascertain whether a use is "likely" to cause dilution of the distinctiveness of a mark; it does not require proof that the mark has already become "less iconic." (Def. Mem. 14). Moreover, no one factor in either the blurring or the infringement test is controlling. *See, e.g.*, *Starbucks*, 588 F.3d at 107; *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir. 1993). Thus, Louis Vuitton was not required to put forth

any specific category of evidence, including proof of actual consumer confusion, to make its

case. The absence of such evidence certainly made Louis Vuitton less likely to prevail on the

merits, but it did not render its case so "untenable" that it would support an award of fees.

Next, the Court rejects MOB's contention that Louis Vuitton litigated this case in an

exceptionally vexatious and coercive manner. As the Supreme Court noted in *Octane Fitness*, a

"district court may award fees in the rare case in which a party's unreasonable conduct — while

not necessarily independently sanctionable — is nonetheless so 'exceptional' as to justify an

award of fees." 134 S. Ct. at 1757. "[M]ost cases awarding fees," however, "involve *substantial*

litigation misconduct." *Small*, 2014 WL 5463621, at *4 (emphasis added) (citing cases); *see,*

*e.g.*, *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-0442 (DLC), 2016

WL 1328936, at *3 (S.D.N.Y. Apr. 5, 2016) (awarding fees where "bad faith litigation tactics"

necessitated "burdensome and time-consuming" responsive measures), *aff'd*, 679 F. App'x 33

(2d Cir. 2017). Louis Vuitton's tactics here did not rise to that level. MOB claims that its

adversary mischaracterized the deposition testimony of MOB's principal, Tara Martin;

improperly "include[d] long passages of argument about the evidence into its response to MOB's

Statement of Material Facts"; filed separate motions to strike MOB's fact and expert witnesses;

and "evaded the Court's page limits by squeezing extra text into its opposition to MOB's motion

for summary judgment." (Def. Mem. 15-17). Much of this behavior, however, was well within

the metes and bounds of acceptable, if aggressive, litigation tactics. And the conduct that

arguably crossed those metes and bounds — for example, purportedly filing oversize or

improperly spaced briefs without permission — is, in the Court's experience, not particularly

uncommon, even if it is regrettable. It follows that Louis Vuitton's conduct comes nowhere near

qualifying as "exceptional" for purposes of awarding attorney's fees.

In the final analysis, the strongest argument for awarding MOB attorney's fees and costs may be the need to deter litigation abuse. As MOB demonstrates, (Def. Mem. 18-21), Louis Vuitton's aggressive efforts to protect its trademarks have, on occasion, veered toward the unseemly, earning it a reputation in some quarters as a "trademark bully." Leah Chan Grinvald, *Shaming Trademark Bullies*, 2011 Wis. L. Rev. 625, 651 n.156 (2011); Alison Frankel, *Louis Vuitton and Penn Offer Unintended Lesson in Trademark Law*, Reuters (Mar. 9, 2012), http://blogs.reuters.com/alison-frankel/2012/03/09/louis-vuitton-and-penn-offer-unintended-lesson-in-trademark-law. (*See also* Docket No. 151, Ex. A, at 9). Moreover, overzealous enforcement raises special concerns where, as here, litigation is brought by the proverbial Goliath against the proverbial David. *See, e.g.*, *Leibovitz v. Paramount Pictures Corp.*, No. 94-CV-9144 (LAP), 2000 WL 1010830, at *5 (S.D.N.Y. July 21, 2000); *Littel v. Twentieth Century-Fox Film Corp.*, No. 89-CV-8526 (DLC), 1996 WL 18819, at *3 (S.D.N.Y. Jan. 18, 1996). Several considerations, however, weigh against awarding MOB fees and costs on that basis. First and foremost, the Court is sensitive to the fact that the law compels trademark owners to police their marks or risk losing their rights. *See, e.g.*, *Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 364-65 (S.D.N.Y. 2003) (noting that an owner's trademark "may become generic, meaning commonly used and not entitled to protection, as a result of the trademark owner's failure to police [it]" (alteration in original) (internal quotation marks omitted)). That is, there is good reason for Louis Vuitton to aggressively seek enforcement of its marks, and a court should proceed cautiously before imposing fees on a trademark owner, lest it present trademark owners with the Hobson's Choice of either defending their marks and risking punitive attorney's fee awards or turning a blind eye to infringement and dilution and risking the loss of their rights.

Second, the Court would need a far better record before adding its judicial imprimatur to the "trademark bully" label. That is, given the size and nature of Louis Vuitton's business, it is no surprise that the company is involved in a lot of trademark litigation. Notably, however, Louis Vuitton has prevailed in much of that litigation. (*See* Pl. Mem. 22 & n.13). Thus, MOB's ability to cite a few isolated examples of arguable overreach — some of which were resolved amicably, no less — does not provide a statistically significant basis to conclude that Louis Vuitton has engaged in litigation abuse on a systemic level. Finally, its conclusory aspersions regarding Louis Vuitton's motives aside, MOB does not point to any concrete evidence suggesting that Louis Vuitton was solely, or even primarily, motivated *in this case* by an improper desire to chill parody or stamp out a smaller competitor. *Cf. Gust, Inc. v. AlphaCap Ventures, LLC*, 226 F. Supp. 3d 232, 245 (S.D.N.Y. 2016) ("The boilerplate nature of [Plaintiff's] complaint, the apparent absence of any reasonable pre-suit investigation, and the number of substantially similar lawsuits filed within a short time frame, suggest that [Plaintiff's] instigation of baseless litigation is not isolated to this instance, but is instead part of a predatory strategy aimed at reaping financial advantage from the inability or unwillingness of defendants to engage in litigation when faced with even frivolous patent lawsuits."), *reconsideration denied*, No. 15-CV-6192 (DLC), 2017 WL 2875642 (S.D.N.Y. July 6, 2017).

In short, considering the totality of the circumstances — including Louis Vuitton's nonfrivolous arguments in support of its trademark claims, the minimal evidence of improper conduct throughout the litigation, and the absence of proof that Louis Vuitton brought its claims solely because of an improper motive — the Court finds that this case is not "exceptional" within the meaning of *Octane Fitness* and that fees under the Lanham Act are therefore unwarranted.

## FEES UNDER THE COPYRIGHT ACT

MOB also seeks attorney's fees under the Copyright Act, which provides that a district court may "award a reasonable attorney's fee to the prevailing party" in a copyright action. 17 U.S.C. § 505. Fee awards are not "automatic" or granted as "a matter of course," but rather are committed to the discretion of the court. *Fogerty*, 510 U.S. at 520, 533. A fee award may be appropriate when it serves copyright law's ultimate purpose of "'enriching the general public through access to creative works'" by "encouraging and rewarding authors' creations while also enabling others to build on that work." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016) (quoting *Fogerty*, 510 U.S. at 527). The inquiry is guided by the same nonexclusive factors cited by the Supreme Court in *Octane Fitness*: frivolousness, motivation, unreasonableness, and the need for compensation and deterrence. *See Fogerty*, 510 U.S. at 534 n.19. Although a district court should "give substantial weight to the objective reasonableness of the losing party's position" in determining whether attorney's fees are appropriate, it "must also give due consideration to all other circumstances relevant to granting fees; and it retains discretion, in light of those factors, to make an award even when the losing party advanced a reasonable claim or defense." *Kirtsaeng*, 136 S. Ct. at 1983.

The analysis and conclusions above with respect to MOB's application under the Lanham Act all but compel denial of its application under the Copyright Act. Indeed, only a few additional comments are in order. First, as the Court noted in its summary judgment opinion, the fact that MOB's works were clear parodies of Louis Vuitton's works was not dispositive. *See MOB Dist. Ct. Op.*, 156 F. Supp. 3d at 444 ("[P]arody, 'like any other use, has to work its way through the relevant factors, and be judged case by case, in light of the ends of the copyright law.'" (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 581 (1994))). Instead, as with

its trademark claims, Louis Vuitton's copyright claim turned on the application of a fact-intensive, multifactor test. *See* 17 U.S.C. § 107. In part for that reason, the Court cannot say that Louis Vuitton's arguments were frivolous or baseless, let alone that the company itself believed them to be so. In fact, one prong of the inquiry, commerciality, favored Louis Vuitton (although the Court did not ultimately weigh that factor heavily in its analysis). *See MOB Dist. Ct. Op.*, 156 F. Supp. 3d at 444-45. Nor can the Court say that Louis Vuitton pressed its copyright arguments in a way that would justify a fee award. MOB properly takes Louis Vuitton to task for urging the Second Circuit to apply a rule (namely, that commercial uses of copyrighted material are presumptively unfair) that was abrogated by the Supreme Court in 1994. *See Campbell*, 510 U.S. at 584. But that impropriety does not, by itself, call for the draconian shifting of fees. *See, e.g.*, *Leibovitz*, 2000 WL 1010830, at *2-4 (declining to find that a plaintiff's arguments opposing a fair use defense were objectively unreasonable where the plaintiff primarily cited "easily distinguishable cases" and "relied largely on pre-*Campbell* case law which held that every commercial use was presumptively unfair"). And finally, MOB's own contentions that Louis Vuitton dedicated insufficient space in its briefs and performed a conclusory analysis to rebut MOB's fair use defense are unavailing. "[A]t its core," this case may well have been more of a trademark case than a copyright case. *MOB Dist. Ct. Op.*, 156 F. Supp. 3d at 443 (internal quotation marks omitted). But Louis Vuitton's copyright claim was not so weak as to render its pursuit exceptional, thereby warranting a fee award.

## CONCLUSION

As this Court's decision granting summary judgment to MOB made clear, Louis Vuitton certainly needs to learn how to take a joke. *See MOB Dist. Ct. Op.*, 156 F. Supp. 3d at 446 ("In some cases . . . it is better to accept the implied compliment in a parody and to smile or laugh

than it is to sue.  This . . . is such a case." (citations, brackets, and internal quotation marks

omitted)).  Its lack of a refined sense of humor, however, is not a reason to pile on further by

awarding MOB — however sympathetic its cause may be — attorney's fees and costs.

Accordingly, and for the reasons stated above, MOB's motion for attorney's fees is denied.

     The Clerk of Court is directed to terminate Docket No. 124.

     SO ORDERED.

Date:   January 8, 2018
       New York, New York

                                      JESSE M. FURMAN
                             United States District Judge